IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF  MASSACHUSETTS

_____

| | |
|---|---|
| SAVANT SYSTEMS, LLC )<br>Plaintiff, )<br> )<br> )<br>v. )<br> )<br> )<br> )<br> )<br> )<br>CRESTRON ELECTRONICS, INC. )<br>Defendant. )<br> )<br> )<br> )<br> )<br>_____) | Civil Action No.<br><br>(Sherman Act and Clayton Act<br>Antitrust, Lanham Act<br>Unfair Competition,<br>M.G.L.A. c. 93 and c. 93A,<br>Common Law Unfair Competition)<br><br>**COMPLAINT AND DEMAND**<br>**FOR JURY TRIAL** |

## I.     NATURE OF THIS ACTION

1.     This is an action by plaintiff Savant Systems, LLC ("Savant"), a new entrant into
the manufacture and sale of programmable controller systems for residential and commercial
automation for controlling high-end audio-visual, lighting, climate control, communication and
security systems, against defendant Crestron Electronics, Inc. ("Crestron"), the world's largest
supplier of competitive systems in that market.  This action seeks, based on Sections 1 and 2 of the
Sherman Act, 15 U.S.C. §§1, 2, Section 3 of the Clayton Act, 15 U.S.C. §14, Section 43(a) of the
Lanham Act, 15 U.S.C. §1125(a), as well as state and common law, to restrain certain
anticompetitive, unfair and deceptive conduct by Crestron calculated to preclude or delay Savant's
entry into the market, and to remedy the damaging effects of Crestron's past unlawful conduct.

## II.    PARTIES

2.      Savant is a limited liability company organized and existing under the laws of the Commonwealth of Massachusetts with its principal place of business located at 770 Main Street, Osterville, Massachusetts 02655.

3.      Savant was founded in 2005 on Cape Cod, Massachusetts by a core group of technology pioneers and business executives for the purpose of developing programmable controllers for home automation, particularly for controlling high-end home audio-visual, lighting, climate control, communication, and security systems.  The group brings together literally hundreds of years of combined real-world success in varied technology fields such as programmable systems, digital signal processing, video processing, telephony switching systems and home electronics integration.  Prior to founding Savant, core members of the group (operating as Excel Corporation, also of Cape Cod) had designed and developed a successful series of programmable telecommunication switches; the business was subsequently acquired in its entirety by Lucent Technologies, Inc.

4.      Crestron is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business located at 15 Volvo Drive, Rockleigh, New Jersey 07647.

5.      By Crestron's own admission:

 "With over 40 years in business and 57 offices worldwide, Crestron Electronics is the leading provider of control and automation systems for homes, offices, schools, hospitals, hotels and more."

"Crestron Company Overview" at http://www.crestron.com. (Exhibit A hereto).

### III.  THE PRODUCTS AT ISSSUE

6.      Savant's programmable controllers are designed to run on  the Mac OS® platform of Apple, Inc.  This unique design approach has allowed Savant to develop user-friendly and reliable control and automation components which are easily integrated into total control and automation systems for residential and commercial environments, and to provide such systems at a price significantly less than heretofore obtainable.  Using Savant-originated application programs available for purchase from Apple, Inc., Savant's controllers can be complemented by the world's most popular phone and portable media devices, including Apple's i-Pod, i-Phone and i-Pad devices.  Savant's controllers are programmable by the local installers of the systems to be controlled, and thus can be customized and particularized to the individual installation.

### IV.     JURISDICTION AND VENUE

7.      Jurisdiction over Savant's claims under the Sherman Act, Clayton Act and Lanham Act is proper under 28 U.S.C. §1331 and 1337(a), as well as under 15 U.S.C. §15 with respect to the Sherman and Clayton Acts.  Jurisdiction over Savant's state and common law claims is proper under 28 U.S.C. §1367(a) and the principle of supplemental jurisdiction.

8.      This Court also has jurisdiction pursuant to 28 U.S.C. §1332 in that this action is between citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs

9.      Venue is proper in this District pursuant to any one or more of 28 U.S.C. §1391, 15 U.S.C. §15 and 15 U.S.C. §22, because Crestron transacts business and is found within this District and a substantial part of the events giving rise to the claims herein were intended to cause effects in this District.

## V.    THE RELEVANT  MARKETS

10.    The relevant product market ("The Market") for purposes of this action is the distribution and sale of programmable controllers for residential and commercial automation, particularly for controlling high-end audio-visual, lighting, climate control, communication and security systems ("The Products").  (A "high-end" system typically costs the end-user in excess of twenty-five thousand dollar for purchase and installation, and may well extend into in excess of one-hundred thousand dollars). The relevant submarket ("The Submarket")  comprises the distribution and sale of The Products for residential automation for controlling high-end home audio-visual, lighting, climate control, communication and security systems ("The Residential Products").  The market for The Products is substantial.  On information and belief, it accounts for in excess of seven hundred million dollars of business in the United States each year, of which it is estimated that on the order of two-thirds are of The Residential Products.

11.    The geographic market is both local and nationwide.  High-end residential systems tend to be purchased locally; they are typically sold and serviced by dealers in communities having a population in excess of one hundred thousand inhabitants.  Commercial systems are purchased both locally and nationally.

12.    Crestron is the largest supplier of The Products in the United States.  On information and belief, its sales of The Products are on the order of four hundred million dollars annually, of which it is estimated that approximately 50% are residential sales.  Through its size and its long-standing dealings in the market, Crestron presently dominates The Market and The Submarket for the sale of The Products throughout the United States.

13.    On information and belief, there are on the order of three thousand independent dealers (i.e., not affiliated with a manufacturer of The Products) throughout the United States who

are engaged in the sale of The Products to end-users and their subsequent installation in the end-user's homes and commercial facilities. On information and belief, on the order of twenty-five hundred of these deal in Crestron products.

14.   Access to these dealers by those, such as Savant, who wish to compete with Crestron, is essential. The dealers not only provide information and demonstrations to customers wishing to automate their home or office, and thereby play a significant role in the sales effort, but also provide, or arrange for, skilled technicians to install The Products in the customer's premises. Additionally, the dealers train the customers in the use of the equipment, and provide maintenance and repair services for the customers. Without fair access to the dealers, Savant is significantly impeded in its access to the market, particularly to The Submarket.

15.   Access to the dealers is especially critical in connection with The Submarket, where the cost of maintaining a staff of technicians for installation and maintenance of The Products throughout the United States would be economically unfeasible because of the typically smaller size of residential sales.

16.   By virtue of its dominant size, Crestron has substantial control over dealers in The Products. Withdrawal from the dealers of access to Creston products, and of parts and components for them, would cause a significant economic loss to dealers, and the threat of such withdrawal provides Crestron with power to significantly control their actions.

17.   Through the acts discussed more fully below, Crestron has established, and is improperly attempting to maintain, monopoly power in The Market and the Submarket.

## VI.    CRESTRON'S UNLAWFUL CONDUCT

### A.    Crestron's Exclusionary Practices

18.    Crestron has not been willing simply to compete with Savant on the relative merits of its and Crestron's competitive products.  Instead, shortly after Savant entered the market, Crestron began, and continues today, a pattern of anticompetitive, unfair and deceptive practices designed to thwart competition from Savant on the merits, to prevent and/or disincentivize dealers from carrying Savant products, to deprive end user customers of a choice between Savant and Crestron products, and to exclude Savant from the market.

19.    Crestron's conduct with respect to dealers is a prominent and immediate example of the pattern of anticompetitive, unfair and deceptive practices undertaken by Crestron with the purpose and effect of acquiring, maintaining and/or expanding its monopoly in The Market and The Submarket.

20.    More specifically, Crestron has unlawfully required dealers, as a condition of maintaining their relationship with Crestron and their access to Crestron's products for resale, to agree not to offer, resell, install or distribute Savant products.  In a series of "Comparison Guides" recently published to dealers and others by Crestron, purporting to compare Crestron's products to Savant's product for competitive selling purposes, Crestron boldly proclaims:  "**Remember, you can't be a Crestron dealer and also sell Savant products!**"  See Exhibits B-E hereto.

21.    Crestron has also misused, and continues to misuse, its  monopoly position in The Market and The Submarket by offering dealers who express an interest in carrying  Savant products substantial discounts on the pricing of Crestron's products provided that the dealers agree not to resell or offer, and in fact refrain from reselling or offering, Savant's competing products.

22.     Crestron has also misused and continues to misuse, its monopoly position in The Market and The Submarket by penalizing dealers that offer Savant products for resale, by voiding warranties on Crestron products also offered by such dealers and/or by voiding cash back offers made by Crestron with regard to the resale of Crestron products.

23.     Dealers have accepted Crestron's demands and restrictions, and agreed to refrain from offering Savant's products in exchange for the right to continue to offer Crestron's products, to receive pricing discounts on Crestron products and/or to avoid being penalized by Crestron by voiding of warranties and cash back offers on Crestron products.

24.     Through such exclusionary agreements, and other anticompetitive policies and practices with dealers, Crestron has sought to deprive dealers of the freedom to make competitive choices about which products should be offered to their end user customers, the ability to determine for themselves the design and configuration of the systems they sell, and the ability to diversify their products to best serve end user consumers' needs.

25.     On information and belief, Crestron has entered, or attempted to enter, into such exclusionary agreements with virtually all of the dealers who carry and have carried Crestron's products.  These agreements have effectively foreclosed Savant's competing products from this major channel of distribution, severely impairing Savant's good faith attempts to enter the market.

26.     Collectively, Crestron's anticompetitive practices have unreasonably restrained, and, unless enjoined by this Court, will continue to unreasonably restrain, competition in The Market and The Submarket.  There are no business justifications for Crestron's practices. Crestron's acts threaten to artificially increase its share of these markets and "tip" them permanently to Crestron because of its illegal exercise of monopoly power.

27.     Neither the antitrust laws nor this action seeks to inhibit Crestron from competing on the merits with Savant by innovation or otherwise.  Rather, this Complaint challenges only Crestron's concerted attempts to acquire, maintain and/or expand its monopoly through exclusionary agreements with dealers,  and other anticompetitive conduct, that deter innovation, exclude competition, and rob end user customers of their right to choose among competing alternatives.

28.     Crestron's conduct adversely affects innovation by, among other things,

    a.      impairing the incentive of Savant and likely other competitors and potential competitors to undertake research and development on new products, because they know that Crestron will be able to limit the rewards to them from any resulting innovation;

    b.      inhibiting Savant and other competitors that nevertheless succeed in developing promising innovations from effectively marketing their innovative products to dealers and ultimately to end user customers;

    c.      reducing the incentive and ability of dealers to diversify the products they offer in ways that would appeal to end user customers; and

    d.      reducing competition and the spur to innovation by Crestron that only competition can provide.

29.     The purpose and effect of Crestron's conduct with respect to The Market and The Submarket have been and, if not restrained by this Court, will be:

    a.      to preclude or lessen competition on the merits between the products of Crestron and Savant;

b.      to preclude or lessen potential competition with Crestron products from new products to be developed by Savant in the future; and

c.      to enable Crestron to acquire, maintain and/or expand its market share and monopoly power in The Market and the Submarket; and

d.      to preclude or delay Savant's successful entry into The Market and the Submarket.

As a result of these practices, numerous dealers have in fact refused to handle Savant's products for fear of termination by Crestron.

**B.      Crestron's Other Acts of Unfair Competition**

30.     In addition to its exclusionary agreements with dealers, as alleged above, Crestron has also engaged in a campaign of making false and misleading statements orally and in Sales Guides, Comparison Guides, press releases and other documents distributed to dealers, end user customers, the press and others in the industry:

a.      disparaging Savant personnel and staff and their ability to service, support and honor warranties with respect to Savant products;

b.      disparaging Savant products in regard to characteristics, features and capabilities allegedly lacking in them and in regard to their alleged non-compliance with applicable standards; and

c.      falsely asserting that only Crestron  has an exclusive relationship with Apple, Inc., when in fact Savant is an authorized reseller of Apple products.

31.     The false and misleading statements made by Crestron have deceived, and have the tendency to deceive, dealers, end user customers and others regarding Savant and its products and their ability to effectively compete with Crestron and Crestron's products.

32.     The false and misleading statements by Crestron are material in that they have influenced, and are likely to influence, decisions by dealers, end user customers and others who wish to offer or purchase Savant's products.


## VII.    CLAIMS FOR RELIEF

### A.     First Claim for Relief:  Unlawful Exclusionary Agreements in Violation of Section 1 of the Sherman Act

33.     Plaintiff incorporates the allegations of paragraphs 1 through 32 above as if expressly realleged herein.

34.     Crestron's exclusionary agreements with dealers pursuant to which dealers agree, are incentivized or threatened and thereby coerced by Crestron, not to offer Savant's competing products, or to do so only on terms that materially disadvantage such products, unreasonably restrict competition.  These agreements unreasonably restrain trade and restrict Savant's access to essential channels of distribution, thereby restraining competition in The Market and The Submarket.

35.     The purpose and effect of these agreements are to restrain trade and competition in The Market and The Submarket.  These agreements thus constitute contracts, combinations and/or conspiracies in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

**B.      Second Claim for Relief:  Monopolization of The Market and The Submarket in Violation of Section 2 of the Sherman Act**

36.      Plaintiff incorporates the allegations in paragraphs 1 through 35 above as if expressly realleged herein.

37.      On information and belief, Crestron possesses monopoly power in The Market and The Submarket.

38.      Through the anticompetitive, unfair and deceptive conduct described herein, Crestron has willfully achieved and maintained, and unless restrained by the Court, will continue to willfully maintain and expand, that monopoly power.

39.      Crestron has acted with an intent illegally to maintain its monopoly power in the The Market and The Submarket, and its illegal conduct has enabled it to do so, in violation of Section 2 of the Sherman Act, 15 U.S.C. §2.

**C.      Third Claim for Relief:  Attempted Monopolization of The Market and The Submarket in Violation of Section 2 of the Sherman Act**

40.      Plaintiff incorporates the allegations of Paragraphs 1 through 39 above as if expressly realleged herein.

41.      Crestron has willfully engaged, and is engaging, in a course of conduct, including a pattern and practice of seeking unreasonable exclusionary agreements with dealers in The Market and The Submarket, as alleged above, in an attempt to monopolize those markets.

42.      Crestron has acted with a specific intent to monopolize, and to destroy effective competition in, The Market and The Submarket.

43.     There is a dangerous probability that, unless restrained by this Court, Crestron will succeed in acquiring, maintaining and/or expanding its monopoly power in The Market and The Submarket, in violation of Section 2 of the Sherman Act, 15 U.S.C. §2.

**D.      Fourth Claim for Relief:  Exclusive Dealing Agreements In Violation of Section 3 of the Clayton Act**

44.     Plaintiff incorporates the allegations of Paragraphs 1 through 43 above as if expressly realleged herein.

45.     Crestron's agreements with dealers, by which dealers undertake to carry products only from Crestron and not from Savant, have lessened, and are likely to lessen, competition between Crestron and Savant.

46.     Crestron's exclusive dealing agreements with dealers tie up a significant portion of The Market and The Submarket, effectively foreclosing Savant from reasonable and fair access to the markets for these systems.

47.     Crestron's exclusive dealing agreements with dealers violate Section 3 of the Clayton Act, 15 U.S.C. §14.

48.     Unless enjoined from continuing its exclusive dealing agreements with dealers, Savant will suffer further and irreparable harm for which there is no adequate remedy at law.

**E.      Fifth Claim for Relief:  Unfair Competition Under Section 43(a) of the Lanham Act**

49.     Plaintiff incorporates the allegation of Paragraphs 1 through 48 above as if expressly realleged herein.

50.     Savant's products are sold in interstate commerce in competition with Crestron's products.

51.     The false and misleading statements made by Crestron, as alleged above, have been made by Crestron in bad faith.

52.     The false and misleading statements by Crestron violate Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

53.     As a direct and proximate result of Crestron's false and misleading statements, Savant has suffered and continues to suffer actual damages, including lost prospective and actual business, lost profits, loss of goodwill and damage to its reputation and the reputation of its products, and out-of-pocket and other related costs and expenses to be determined at trial.

54.     Unless the acts complained of are enjoined by this Court, Savant will suffer further and irreparable injury for which Savant has no adequate remedy at law.


**F.      Sixth Claim for Relief:  Restraint of Trade Or Commerce Under M.G.L.A. c. 93, §3.**

55.     Plaintiff incorporates the allegations of paragraphs 1 through 54 above as if expressly realleged herein.

56.     Crestron's exclusionary agreements with dealers pursuant to which dealers agree, are incentivized or threatened and thereby coerced by Crestron not to offer Savant's competing products, or to do so only on terms that materially disadvantage such products, unreasonably restrict competition.  These agreements unreasonably restrain trade and restrict Savant's access to essential channels of distribution, thereby restraining competition in The Market and The Submarket.

57.     The purpose and effect of these agreements are to restrain trade and competition in The Market and The Submarket.  These agreements thus constitute contracts, combinations and/or conspiracies in restraint of trade or commerce in violation of Section 3 of the Massachusetts Antitrust Act, c.93, M.G.L.A.

G.     **Seventh Claim for Relief:  Monopolization And Attempt To Monopolize Under M.G.L.A. c. 93, §4.**

58.     Plaintiff incorporates the allegations of paragraphs 1 through 57 above as if expressly realleged herein.

59.     Crestron's exclusionary agreements with dealers pursuant to which dealers agree, are incentivized or threatened and thereby coerced by Crestron not to offer Savant's competing products, or to do so only on terms that materially disadvantage such products, unreasonably restrict competition.  These agreements unreasonably restrain trade and restrict Savant's access to essential channels of distribution, thereby restraining competition in The Market and The Submarket.

60.     The purpose and effect of these agreements are to restrain trade and competition in The Market and The Submarket.  These agreements thus constitute monopolization or attempts to monopolize in violation of Section 4 of the Massachusetts Antitrust Act, c.93, M.G.L.A.

H.     **Eighth Claim for Relief:  Unfair and Deceptive Acts or Practices In the Conduct of Trade Under M.G.L.A. c.93A**

61.     Plaintiff incorporates the allegations of Paragraphs 1 through 60 above as if expressly realleged herein.

62.     Savant and Crestron are, and have been, engaged in trade and commerce with their products within the Commonwealth of Massachusetts.

63.     Crestron's exclusionary agreements and pricing policies and practices with dealers, acts of monopolization and attempts to acquire, maintain and/or expand its monopoly in The Market and The Submarket, and false and misleading statements to dealers, end user customers and others in the industry regarding Savant and Savant's products and Crestron and Crestron's products, constitute unfair and deceptive acts or practices in the conduct of trade declared unlawful by M.G.L.A. c. 93A, §2.

64.     Crestron's unfair and deceptive acts or practices in the conduct of trade have been committed in substantial part in the Commonwealth of Massachusetts and have been performed willfully by Crestron with the intent to cause injury to Savant in the Commonwealth of Massachusetts.

65.     Savant has been injured by Crestron's unfair and deceptive acts or practices, and, unless such acts or practices are enjoined by this Court, Savant will likely suffer further and irreparable injury for which Savant has not adequate remedy at law.


I.       **Ninth Claim For Relief:  Common Law Unfair Competition**

66.     Plaintiff incorporates the allegations of Paragraphs 1 through 65 above as if expressly reallged herein.

67.     Crestron's exclusionary agreements and pricing policies and practices with dealers, acts of monopolization and attempts to acquire, maintain and/or expand its monopoly in The Market and The Submarket, and false and misleading statements to dealers, end user customers

and others in the industry regarding Savant and Savant's products and Crestron and Crestron's

products, constitute unfair competition under the common law.

68.     Crestron's acts of common law unfair competition have been committed willfully

with the intent to injure Savant.

69.     Savant has been injured by Crestron's acts of common law unfair competition, and,

unless such acts are enjoined by the Court, Savant will suffer further and irreparable injury for

which Savant has no adequate remedy at law.


## VIII.   PRAYERS FOR RELIEF

WHEREFORE, PLAINTIFF PRAYS FOR RELIEF AS FOLLOWS:

1.     That the Court enter a judgment finding that:

    a.     Crestron's conduct in requiring and/or inducing dealers not to offer and
resell Savant products as a condition of being able to offer and resell
Crestron products violates Sections 1 and 2 of the Sherman Act, 15 U.S.C.
§§1 and 2; Section 3 of the Clayton Act, 15 U.S.C. §14; and sections 3 and
4 of the Massachusetts Antitrust Act, M.G.L.A. c. 93, §§3 and 4;

    b.     Crestron agreements to provide dealers with substantial discounts in pricing
of Crestron products on the condition that such dealers not resell or offer
Savant products violate Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§1
and 2; Section 3 of the Clayton Act, 15 U.S.C. §14; and sections 3 and 4 of
the Massachusetts Antitrust Act, M.G.L.A. c. 93, §§3 and 4;

    c.     Crestron's voiding of warranties on Crestron products, and/or voiding of
cash back offers on Crestron products, when dealers offer or sell Savant

products, violate Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§1 and 2;

Section 3 of the Clayton Act, 15 U.S.C. §14; and sections 3 and 4 of the

Massachusetts Antitrust Act, M.G.L.A. c. 93, §§3 and 4;

d.      Crestron has attempted to monopolize The Market and The Submarket as

defined herein in violation of Section 2 of the Sherman Act, 15 U.S.C. §2,

and sections 3 and 4 of the Massachusetts Antitrust Act, M.G.L.A. c. 93,

§§3 and 4;

e.      Crestron has willfully maintained its monopoly in The Market and The

Submarket as defined herein in violation of Section 2 of the Sherman Act,

15 U.S.C. §2, and sections 3 and 4 of the Massachusetts Antitrust Act,

M.G.L.A. c. 93, §§3 and 4;

f.      Crestron's exclusive dealing agreements and arrangements with dealers

violate Section 3 of the Clayton Act, 15 U.S.C. §2, and sections 3 and 4 of

the Massachusetts Antitrust Act, M.G.L.A. c. 93, §§3 and 4;

g.      Crestron's false and misleading statements regarding Savant and Savant's

products and Crestron and Crestron products constitute unfair competition

in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §2;

h.      Crestron has engaged in unfair and deceptive acts or practices in the

conduct of trade in the Commonwealth of Massachusetts in violation of

M.G.L.A. c. 93A, §2; and

i.      Crestron has engaged in acts of common law unfair competition.

2.      That the judgment entered by the Court order that Crestron, its officers, directors, employees, agents and attorneys, and all persons acting on its behalf or under its direction or control, and all successors thereto, be preliminarily and permanently enjoined from:

      a.      Requiring or inducing any dealer or other person or entity, as a condition to be able to offer, or continue to offer, Crestron products to refrain from offering Savant products;

      b.      Taking or threatening any action adverse to any dealer or other person or entity in whole or in part as a direct or indirect consequence of such dealers offering of any Savant products;

      c.      Requiring maintaining or continuing any exclusive dealing agreements with dealers calculated to preclude such dealers from carrying Savant products;

      d.      Making any false or misleading statements to dealers, end user customers or others in the industry regarding Savant, any of Savant's products, Crestron and/or any of Crestron's products;

      e.      Engaging in any unfair and deceptive acts or practices in the conduct of trade as they relate to Savant or Savant's products in violation of M.G.L.A. c. 93A, § 2; and

      f.      Engaging in any acts of common unfair competition as they relate to Savant to Savant's products.

3.      That the judgment entered by the Court also order that:

      a.      Crestron pay Savant damages in an amount to be determined at trial to compensate Savant for the injury caused by Crestron's unlawful acts and practices;

b.      Savant's damages be trebled pursuant to the Federal antitrust laws, the

Lanham Act, the Massachusetts Antitrust Act, M.G.L.A. c. 93 §1, et seq.,

and The Massachusetts Unfair and Deceptive Trade Practices Law,

M.G.L.A. c. 93A §1, et seq.

c.      Crestron pay Savant punitive damages in an amount to be determined at

trial for Crestron's unlawful and malicious conduct, which was intended to

harm Savant in the conduct of its business;

d.      Crestron pay Savant's attorneys' fees and costs incurred in connection with

this action; and

e.      Savant have such other and further relief as the Court deems just and

proper.

## JURY DEMAND

Savant demands a trial by jury of all claims in this action so triable.

Respectfully submitted,

SAVANT SYSTEMS, LLC

By Its Attorneys,

Dated:  Sep. 22, 10                    /Thomas C. O'Konski/
                                       Thomas C. O'Konski
                                       Martin J. O'Donnell
                                       Michael E. Attaya
                                       CESARI and MCKENNA, LLP
                                       88 Black Falcon Avenue
                                       Boston, MA 02210
                                       (617) 951-2500