# EXHIBIT 500

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAVANT SYSTEMS, LLC<br>Plaintiff,<br><br>v.<br><br>CRESTRON ELECTRONICS, INC.<br>Defendant<br><br>CRESTRON ELECTRONICS, INC.<br>Counterclaim-Plaintiff,<br>v.<br><br>SAVANT SYSTEMS, LLC<br>Counterclaim-Defendant | Civil Action No. 10-cv-11622- MLW |

**DECLARATION OF BRUCE P. MYERS**

I, Bruce P. Myers, declare as follows:

1. I am Chief Financial Officer of Savant Systems, LLC ("Savant").

2. I understand that Crestron Electronics, Inc. ("Crestron") has requested that Savant specify its annual revenues based on United States, Residential sales for each calendar year from 2008 through 2013.

3. Savant does not track its revenues based on United States, Residential sales, so those revenues need to be estimated.

4. I estimate that Savant's annual revenues based on United States, Residential sales for each calendar year from 2008 through 2013 were as follows:

| **2008** | **2009** | **2010** | **2011** | **2012** | **2013** |
|---|---|---|---|---|---|
| 1,380,413 | 5,157,465 | 12,175,938 | 24,265,302 | 37,988,165 | 37,595,033 |

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 18th day of April, in Hyannis, Massachusetts.

Bruce P. Myers

# EXHIBIT 501

RESTRICTED CONFIDENTIAL

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAVANT SYSTEMS, LLC,<br>Plaintiff,<br>v.<br>CRESTRON ELECTRONICS, INC.,<br>Defendant.<br><br>CRESTRON ELECTRONICS, INC.<br>Counterclaim-Plaintiff,<br>v.<br>SAVANT SYSTEMS, LLC,<br>Counterclaim-Defendant. | Civil Action No.: 1:10-cv-11622 (EFH) |

**DEFENDANT AND COUNTERCLAIM PLAINTIFF CRESTRON ELECTRONICS, INC.'S RESPONSE TO PLAINTIFF AND COUNTERCLAIM DEFENDANT'S SECOND SET OF INTERROGATORIES**

Defendant and Counterclaim Plaintiff Crestron Electronics, Inc. ("Crestron"), in accordance with Rule 26 and 33 of the Federal Rules of Civil Procedure, hereby serves this Response to Plaintiff and Counterclaim Defendant Savant Systems, LLC's ("Savant") Second Set of Interrogatories.

**GENERAL OBJECTIONS**

Crestron's responses to Savant's interrogatories are subject to the General Objections set forth below. The specific responses to each interrogatory are made subject to and without

RESTRICTED CONFIDENTIAL

**RESPONSE TO INTERROGATORY NO. 12**:

Rob Christensen distributed a copy of Exhibits E, F, G and H on April 13, 2010 to:

Kelsey Bailey
Home Theatre Design
567 W. 19th St.
Idaho Falls, ID 83402

Rob Christensen distributed a copy of Exhibits E, F, G, H and K on April 30, 2010 to:

Carter Rains, Dan Ray
S3 US Inc.
6415 N Business Park Loop Rd., Ste. K
Park City, UT 84098

Arthur Mayo
S3 US Inc.
60 N Cutler Dr. Bldg. 202
North Salt Lake City, UT 84054

Mark Blundell
New York
mblundell@S3us.com

Rob Christensen distributed a copy of Exhibits E, F, G, H and K on December 2, 2010 to:

Taylor Syphus, Kevin Barnes, Dave Lukan
Lifestyle Electronics
2078 Prospector Ave.
Park City, UT 84060

Brian Lewis distributed a copy of Exhibits E, F, G, and H on March 30, 2011 to:

Dan Milligan
Acme Integration Co.
7689 East Paradise Lane, Suite 4
Scottsdale, AZ 85260

Brian Nachum distributed a copy of Exhibits E, F, G, and H on May 11, 2009 to:

Xeven Zorza
ArchiTechKnowlogy Design Group
P O Box 4766
Laguna Beach, CA 92652

RESTRICTED CONFIDENTIAL

Brian Nachum distributed a copy of Exhibits E, F, G and H on May 13, 2009 to:

Ken Hoffman
Digital Home Design
2 Eastbourne Bay
Laguna Niguel, CA 92677

Craig Gulley distributed a copy of Exhibits E, F, G and H on June 16, 2009 to:

John Selby
Stereo One
345 S Kingshighway St
Cape Girardeau, MO 63703

Craig Gulley distributed a copy of Exhibits E, F, G and H on July 27, 2009 to:

Bill Green
Q Audio Video
1733 N Kingshighway St
Cape Girardeau, Missouri 63701

Craig Gulley distributed a copy of Exhibits E, F, G and H on April 23, 2010 to:

Jerry Cook
Audio Video Integrations
623 S Lyons Ave Suite 300
Sioux Falls, SD 57106

Craig Gulley distributed a copy of Exhibit K on April 23, 2010 to:

Amos Anson
Famos Construction, Inc.
1212 Sagewood Ave.
Grand Island, NE 68803

Andy Wiatrak
Sensation Design Group
5892 Sunnybrook Lane
Minnetrista, MN 55364

Barry Shaw
Acorn Audio Inc.
1709 W Main St.
Rapid City, SD 57702

Bill Green
Q Audio Video
1733 N Kingshighway St
Cape Girardeau, Missouri 63701

Blake Ertel, Felix Williams, Owain Price, Robert Puthoff
The Screening Room LLC
10301 Clayton Rd
St Louis, MO 63131

Bob Christensen
AVI-SPL
1427 Energy Park Dr.
St. Paul, MN 55108

Brian Ginkens, Tim Osborne, Juli Palmer
Technology By Design
3956 Northwest Urbandale Drive
Urbandale, IA 50322

Brian Shaw
Maximum Sight & Sound
4017 University Ave
Waterloo, IA 50701

Bridgid Miller
August Systems
1715 Paris Road
Columbia, MO 65201

Charlie Santmire, Gale Cooper, Joel Chandler, Noel Huff
The Sound Environment
11021 Elm St
Rockbrook Village Shopping Center
Omaha, NE 68144

Clint Miller, Michael Gray
DataUnite llc
790 SW US Hwy 40 #114
Blue Springs, MO 64015

Dan Ward, Joel Ward, Tom Ward, Tony Tamberine, Russ Neil
American Electronics
4760 S. 135th St.
Omaha, NE. 68137

Dan Woody, Alec Schwadt, Mike Klinger, Kevin Ruddy, Joe Boler, Jerimy Stremikis, Daniel Malat, Brian Martineau, Chad Moore, Chris Farkas, Austin Figgins, Bob Woods, Matt Thompson, Jesse Korsbon, Kevin Olstad, Thom Ott, Tim Doyle
Appollo Systems
181 Cheshire Lane N Suite 300
Minneapolis, MN 55441

Dave Ault, Justin Bresnahan
Audio Video Planners
434 Hale Ave, Suite 160
Oakdale, MN 55128

Dave Bunce
Audio Room
88 Blairs Ferry Rd
Marion, IA 52302

David Young, Dennis Hickman, Ross Cook, Tony Vieira, Nick Tipton, Jerry Boer, Mike Dolan
The Sound Room
1661 Clarkson Rd.
Chesterfield, MO 63017

Deanna Ginkens
Technology By Design
3956 NW Urbandale Drive
Urbandale, Iowa 50322

Eric Lee, Jeff Bartels, Jennifer Oplt, Scott Markovich
MBD Electronics
220 West Highway 40
Troy, IL. 62294

Eric Wing, Jason Swenson, Brad Odegard, Mark Kurilla
CS Media
6101 Baker Road #202
Minnetonka, MN 55345

Sales Team
Home Technology Systems
2400 Kerper Blvd.
Dubuque, IA 52001

Jason Brewer
Automated Lifestyles, Inc
1737 State St
Bettendorf, IA 52722

Jason Shaw, John Shaw, Matt Bolton
Digital Theater Experts
5601 O Street
Lincoln, NE 68510

Jay Rice, Larry Badson, Mike Elsberry
SCS Home Entertainment
2868 S. Glenstone
Springfield MO 65804

Jeff Erickson, Mark Clark, Janice Wilson
Elite Home Systems
1250 Jungermann Road
St. Peters, MO 63376

Jerry Cook
Audio Video Integrations LLC (AVI)
623 S Lyons Ave Suite 300
Sioux Falls, SD 57106

Jim White
Sound Pro
1709 West Main Street
Rapid City, SD 57702

John Deering
John Deering Theater Design, Inc.
International Market Square
275 Market Street, Suite 556
Minneapolis, MN 55405

John Selby, John Tiffany, Jason, Joe Belcher, Jim Adams, David Collins, Scott Siebert
Stereo One
345 S Kingshighway St
Cape Girardeau, MO 63703

Jonathan Kessler
Kreissler Electric Inc
1204 South Main Street, Lockwood, MO 65682

RESTRICTED CONFIDENTIAL

Keith Axe, Zac Besse, Derrick Potts
Integrated Electronics
660 N. Lindenwood Drive
Olathe, KS 66062

Mark Balkowitsch
Audio Perfection
7401 Lyndale Ave South
Minneapolis, MN 55423

Patrick Cain
Front Row Audio Video
PO. BOX 3151
Lawrence, Kansas 66046

Paul Larson
Alchemy Sound and Vision
404 3rd Ave. North Suite 205
Minneapolis, MN 55401

Perry Workman
Audio Input
7462 E 7th St.
Duenweg, Missouri 64841

Philip Stegman
Stegman Audio and Video
2605 Northridge Pkwy
Ames, IA 50010

Randy Sparks
21st Century Automation
73 Evergreen Condo Dr., Unit 1B
Sunrise Beach, MO 65079

Rob Roessler
Audio Video Concepts
204 South Main Street
Columbia, IL 62236

Rob Zurn, Russell Iverson
Audio Video Dimensions
1695 Hwy 169
North Plymouth, MN 55441

RESTRICTED CONFIDENTIAL

Ron Weiskopf, Todd McNurlin
Audio Video Planners
434 Hale Ave
Oakdale, MN 55128

Ryan Hofer, Darin Guthmiller
Unlimited Audio
3511 W 57th St
Sioux Falls, SD 57108

Scott VandeVegte, Sarah Aukes
Amani
387 7th Street NW
Sioux Center, IA 51250

Steven D. Anderson, Jamie Anderson, Daniel De Longe
TKFast, Inc.
437 S. Hydraulic St.
Wichita, KS 67211

Terry Baer
PC Parts and Supplies
1335 2nd Avenue North, Suite N
Fargo, ND 58102

Terry Dahl, Tom Barna, Joe DuBord
VSI
1227 Caledonia Street
Mankato, MN 56001

Tom Brandabur, Elizabeth Hegi
Clarity AV
15831 Highway 55 # C
Minneapolis, MN 55447

Tony Dollar, Mat Heldenbrand, Paul Doneff
Hi Fi Fo Fum
1155 S Big Bend Blvd
Saint Louis, MO 63117

Craig Tiefenbrun, Daniel Gauvain, John Schmitz, Brad Amling
Audio Video Innovations, Inc.
145 Centre Pointe Drive, Suite B
Saint Peters, MO 63376

Eric Degonia, John Gabler
Come Alive Integration
6402 Redruth Street
Duluth, MN 55807

Jay Johnson, Thomas Shafer
Audio Dimensions
2222 West Hefner Road,
Suite E, Oklahoma City, OK 73120

Jimmy Coiner, Chris Isom
Media One
11263 Strang Line Rd
Lenexa, KS 66215

Levi Angst
Integration Excellence
430 South Jefferson Avenue
Lebanon, MO 65536

Nathan R., Jesse Splichal, Don Plew, Jamie DeJean, Adam Hoffman, Tom Glick, Tony Berg, Kevin Fleck, Brent Sanden, Jared Steiner, Ryan Stuart, Travis Rixen
Pacific Sound and Video
2306 15th Street Northwest
Bismarck, ND 58503

Ryan Zimmerman
AVP, Inc.
10133 Josephine Ave.
La Vista, NE 68128

Sam Guarino, Todd Pierson
Custom Electronics
7511 Pacific Street
Omaha, NE 68124

Steve Spurgeon
CI Select
1716 Hidden Creek Court
St. Louis, MO 63131

Thomas Ondov
Domus Vita Consortium, LLC.
6250 Sycamore Lane
Suite 500B
Maple Grove, MN 55369

Andy Jones
Automated Living
30 Street of Dreams
Loch Lloyd, MO 64012

Chris
(Unknown recipient)

Derek Benz
Mystic Smarthomes LLC
1853 Victoria Road S.
Saint Paul, MN 55118

Gary Fish
FishNet Security
6130 Sprint Parkway
Suite 400
Overland Park, KS 66211

Jeff Steen
The Audio Room
855 Blairs Ferry Road
Marion, IA 52302

Tom Sampson
Tom's TV
25 NE Washington St.
Brainerd, MN 56401

Craig Gulley distributed a copy of Exhibit K on June 29, 2010 to:

Marathon Office Interiors (August Systems)
1715 Paris Road
Columbia, MO 65201

Craig Gulley distributed a copy of Exhibit K on March 30, 2011 to:

Jordan Erdman
The J. Edison Group LLC
355 Deer Valley Dr.
Hudson, WI 54016

Craig Gulley distributed a copy of Exhibit K on April 11, 2011 to:

Cinetic (Audio Video Design Center)
11324 Southwest Hwy
Palos Hills, IL 60465

Craig Gulley distributed a copy of Exhibit K on July 30, 2011 to:

The Audio Room
855 Blairs Ferry Road
Marion, IA 52302

Craig Gulley distributed a copy of Exhibit K on January 25, 2012 to:

Tunnelvision
1640 W. Hubbard, Ste. 200
Chicago, IL 60622

Dated: April 18, 2012

Respectfully Submitted,

CRESTRON ELECTRONICS, INC.

*/s/ Chong S. Park*

Chong S. Park (admitted *pro hac vice*)
John J. Kavanagh (admitted *pro hac vice*)
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036-1795
Tel.: 202.429.3000
Fax: 202.429.3902
cpark@steptoe.com

Michael J. Pineault (BBO #555314)
CLEMENTS & PINEAULT, LLP
24 Federal Street
Boston, MA 02110
Tel.: 857.445.0135
Fax: 857.366.5404
mpineault@clementspineault.com

## CERTIFICATE OF SERVICE

I hereby certify that Creston Electronics, Inc.'s Response to Savant Systems, LLC's Second Set of Interrogatories was served on this 18th day of April 2012 by email and U.S. mail on:

Thomas O'Konski
Martin J. O'Donnell
William J. Mostyn IV
CESARI and MCKENNA, LLP
88 Black Falcon Avenue
Boston, MA 02210
Counsel for Savant Systems, LLC

/s/ *John J. Kavanagh*
John J. Kavanagh

CONFIDENTIAL

CERTIFICATION OF RANDY KLEIN

I am Executive Vice President of Crestron Electronics, Inc. I believe, based on reasonable inquiry, that the foregoing Response to Savant Systems, LLC's Second Set of Interrogatories is true and correct to the best of my knowledge, information, and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Dated: April 18, 2012

Randy Klein

# EXHIBIT 502

RESTRICTED CONFIDENTIAL – OUTSIDE COUNSEL ONLY

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAVANT SYSTEMS, LLC,<br>Plaintiff,<br>v.<br>CRESTRON ELECTRONICS, INC.,<br>Defendant.<br><br>CRESTRON ELECTRONICS, INC.,<br>Counterclaim-Plaintiff,<br>v.<br>SAVANT SYSTEMS, LLC,<br>Counterclaim-Defendant. | Civil Action No.: 1:10-cv-11622 (EFH) |

**DEFENDANT AND COUNTERCLAIM PLAINTIFF CRESTRON ELECTRONICS, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFF AND COUNTERCLAIM DEFENDANT SAVANT SYSTEM, LLC's FIFTH SET OF INTERROGATORIES**

Defendant and Counterclaim Plaintiff Crestron Electronics, Inc. ("Crestron"), in accordance with Rule 26 and 33 of the Federal Rules of Civil Procedure, hereby serves these Objections and Responses to Plaintiff and Counterclaim Defendant Savant Systems, LLC's ("Savant") Fifth Set of Interrogatories.

**GENERAL OBJECTIONS**

Crestron's responses to Savant's interrogatories are subject to the General Objections set forth below. The specific responses to each interrogatory are made subject to and without waiving these Objections, which are incorporated by reference into each of these responses. The

[redacted]

**INTERROGATORY NO. 80**: Identify each program implemented or sponsored by Crestron from January 1, 2007, to the present that involved Crestron providing discounts and/or rebates to Dealers in exchange for the Dealers' agreement or commitment to exclusively support Crestron Products in their businesses.

**RESPONSE TO INTERROGATORY NO. 80**: Crestron objects to this request for the reasons stated in the General Objections, including General Objections Nos. 1, 6, 7 and 17. Crestron objects to this request to the extent that it seeks information that is not relevant to the subject matter of this action or reasonably calculated to lead to the discovery of admissible evidence, such as that relating to commercial or international sales. Crestron further objects to this request because the term "program" is vague and ambiguous, the term "Products" is vague, ambiguous and overbroad, and the phrase "exclusively support" is vague and ambiguous. In addition, Crestron objects to this request to the extent that the definition of "Dealer" is vague, ambiguous and overbroad, and incorporates Savant's definition of the word "Products." Crestron also objects to this request to the extent that is predicated upon an erroneous assumption.

Subject to and without waiving the foregoing general and specific objections, Crestron responds as follows: When Crestron withdrew from the HTSA organization, it desired to continue to offer its dealers who were still HTSA members benefits similar to those under the previous HTSA arrangement. Therefore, through the Partnership Rewards Program, Crestron offered certain of its dealers who were still HTSA members certain discounts and rebates in

exchange for the Dealers' exclusive support of Crestron control systems in their businesses for a one-year period.

**INTERROGATORY NO. 81**: Identify each Dealer who participated in any program identified in response to Interrogatory No. 80 and state the time period during which each Dealer participated.

**RESPONSE TO INTERROGATORY NO. 81**: Crestron objects to this request to the extent that it is predicated on Interrogatory No. 80, to which Crestron has objected. Crestron incorporates all objections set forth in its response to Interrogatory No. 80.

Subject to and without waiving the foregoing general and specific objections, Crestron responds as follows: Audio Advice Inc., Audio Advisors Inc., Audio Craft Company Inc., Audio Dimensions, Inc., Audio Video Design, Audio Video Environments, Audio Video Excellence Inc., Audio Video Systems Inc., Audio Visions South, Audiovisions Inc., Aurant, Barney Miller's Inc., Cyber Sound & Security, Definitive Audio Inc., Domes Incorporated, Engineered Environments, Future Home Systems & Design Inc., Georgia Home Theater, Gramophone Limited, High Fidelity House, Inc., Summit Electronic Systems Inc., Integrated Media Systems., Paradyme Inc., Paragon Technology Group, Shimek's Audio, Sound Components Inc., Soundvision Marin, Stereo Exchange Inc., The Sound Room, Wilshire Home Entertainment, Barrett's Technology Solutions, Hargate Theatre Vision, Tune Street, Pacific Sound & Video, Synergy Audio Video Systems, Crescendo Designs Ltd., Wow Electronics, Stereo One, Hippo's Home Entertainment, Stereo East Home Theater, and Paulsons Audio & Video participated in the program identified in the response to Interrogatory No. 80, in fiscal year 2008-2009.

**INTERROGATORY NO. 82**: For each Dealer identified in response to Interrogatory No. 81, state the revenue derived by Crestron from the sale of Products to the Dealer during the time period of the Dealer's participation in the program.

EXHIBIT 503

RESTRICTED CONFIDENTIAL – OUTSIDE COUNSEL ONLY

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAVANT SYSTEMS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CRESTRON ELECTRONICS, INC.,<br><br>Defendant.<br><br>CRESTRON ELECTRONICS, INC.,<br><br>Counterclaim-Plaintiff,<br><br>v.<br><br>SAVANT SYSTEMS, LLC,<br><br>Counterclaim-Defendant. | Civil Action No.: 1:10-cv-11622 (MLW) |

**DEFENDANT AND COUNTERCLAIM PLAINTIFF CRESTRON ELECTRONICS, INC.'s OBJECTIONS AND RESPONSES TO PLAINTIFF AND COUNTERCLAIM DEFENDANT SAVANT SYSTEM, LLC's SIXTH SET OF INTERROGATORIES**

Defendant and Counterclaim Plaintiff Crestron Electronics, Inc. ("Crestron"), in accordance with Rule 26 and 33 of the Federal Rules of Civil Procedure, hereby serves these Objections and Responses to Plaintiff and Counterclaim Defendant Savant Systems, LLC's ("Savant") Sixth Set of Interrogatories.

**GENERAL OBJECTIONS**

Crestron's responses to Savant's interrogatories are subject to the General Objections set forth below. The specific responses to each interrogatory are made subject to and without waiving these Objections, which are incorporated by reference into each of these responses. The

Theatron Home Theater admitted in his deposition that he flipped a year's worth of Crestron jobs to Savant. *See* 5/16/2012 R. Smith Dep. Tr. at 135:17-136:10, 137:6-23. Savant encouraged such "flips" through a "Competitive Flip Program.' Thus, Crestron was deprived of the benefit of its investment in its dealers and their performance of their existing agreements with Crestron.

**INTERROGATORY NO. 95**: Identify with particularity all facts supporting Your claims in Paragraphs 45 and 53 of the Answer that You have "been damaged," and identify the scope of damages and relief to which You contend You are entitled.

**RESPONSE TO INTERROGATORY NO. 95**: Crestron objects to this interrogatory for the reasons stated in the General Objections, including General Objections Nos. 8, 10, 11 and 12. Discovery in this case is ongoing, and the response to this interrogatory depends on documents and information exclusively in the possession of Savant or other parties. In addition, Savant already has obtained extensive discovery concerning the effects of Savant's unlawful trade practices. The interrogatory also requires an unduly burdensome search for information, most or all of which is already within Savant's possession, custody or control. As such, Savant is equally or better positioned to identify the information responsive to this interrogatory, as reflected by Savant's supplemental responses to Crestron's Interrogatories, including but not limited to Interrogatory No. 4. Finally, the scope and calculation of Crestron's damages are properly the subject of expert testimony, discovery and disclosure.

Subject to and without waiving the foregoing general and specific objections, Crestron responds as follows: Savant's business strategy to develop its dealer base was to specifically target established Crestron dealers that had existing dealer contracts with Crestron and seek to convert them to become Savant dealers. Because Crestron already had selected, trained and supported these dealers, Savant gained an unfair advantage from Crestron's substantial investment in such dealers without making any comparable investment of its own. Moreover, to

the extent Savant successfully converted Crestron dealers to become Savant dealers and shift their business to Savant, Savant intentionally induced those dealers to violate their existing agreements with Crestron, including but not limited to "flipping" projects that were intended to use Crestron products to projects that used Savant products. For example, Rick Smith of Theatron Home Theater admitted in his deposition that he flipped a year's worth of Crestron jobs to Savant. *See* 5/16/2012 R. Smith Dep. Tr. at 135:17-136:10, 137:6-23. Savant encouraged such "flips" through a "Competitive Flip Program.' Thus, Crestron was deprived of the benefit of its investment in its dealers and their performance of their existing agreements with Crestron. Further, Crestron was harmed through damage to its reputation resulting from Savant's filing and publicizing of its lawsuit against Crestron.

**INTERROGATORY NO. 96**: Identify each individual You are aware of that claims to have been misled or deceived based on the alleged acts of Savant and/or Cyber Sound and Security, Inc. as set forth in Paragraphs 37 and 38 in the Answer, and for each such individual explain with particularity how You came to learn that each individual was misled or deceived.

**RESPONSE TO INTERROGATORY NO. 96**: Crestron objects to this interrogatory for the reasons stated in the General Objections, including General Objections Nos. 8, 10, 11 and 12. The response to this interrogatory depends on documents and information in the possession of Savant or other parties and, as such, is not within Crestron's possession, custody or control. In addition, Savant already has obtained extensive discovery concerning the effects of Savant's and Cyber Sound's activities. As such, Savant is equally or better positioned to identify the information responsive to this interrogatory. The interrogatory also requires an unduly burdensome search for information, most or all of which is already within the possession, custody or control of Savant or its counsel. Indeed, counsel for Savant, Cesari & McKenna, also

EXHIBIT 504

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAVANT SYSTEMS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CRESTRON ELECTRONICS, INC.,<br><br>Defendant.<br><br>CRESTRON ELECTRONICS, INC.<br><br>Counterclaim-Plaintiff,<br><br>v.<br><br>SAVANT SYSTEMS, LLC,<br><br>Counterclaim-Defendant. | Civil Action No.: 1:10-cv-11622 (MLW) |

**DEFENDANT CRESTRON ELECTRONICS, INC'S FURTHER SUPPLEMENTAL RESPONSES TO PLAINTIFF'S INTERROGATORIES**

Defendant, Crestron Electronics, Inc. ("Crestron") hereby submits its third supplemental response to Plaintiff Savant Systems, LLC's ("Savant") First Set of Interrogatories; its first supplemental response to Savant's Second Set of Interrogatories; and its third supplemental response to Savant's Third Set of Interrogatories.

**THIRD SUPPLEMENTAL RESPONSE TO**
**FIRST SET OF INTERROGATORIES**

Subject to the general and specific objections set forth in Crestron's second supplemental Objections and Responses to Savant's First Set of Interrogatories, dated January 25, 2012, Crestron supplements its response as follows:

**INTERROGATORY NO. 4**: State Crestron's total revenue from the sale and distribution of Products in the United States in each of the past six (6) years.

**RESPONSE TO INTERROGATORY NO. 4**: Crestron objects to this interrogatory on the grounds that it is overbroad in time and scope and because the term "Products" is overbroad, vague and ambiguous. Crestron further objects to this interrogatory to the extent that it seeks information that is not relevant to the subject matter of this action or reasonably calculated to lead to the discovery of admissible evidence.

Subject to, and without waiving the foregoing general and specific objections, Crestron responds as follows: Crestron's total revenue from the sale of products to residential dealers in the United States not classified as House Sales for the period July 2006 to June 2012 is:

Fiscal Year Ending June 2012: $89,686,508.42

Fiscal Year Ending June 2011: $89,411,896.90

Fiscal Year Ending June 2010: $90,318,885.32

Fiscal Year Ending June 2009: $101,865,862.24

Fiscal Year Ending June 2008: $103,751,808.41

Fiscal Year Ending June 2007: $135,316,237.95

**SUPPLEMENTAL RESPONSE TO**
**SECOND SET OF INTERROGATORIES**

Subject to the general and specific objections set forth in Crestron's Objections and Responses to Savant's Second Set of Interrogatories, dated April 18, 2012, Crestron supplements its response as follows:

**INTERROGATORY NO. 12**: Identify each person not employed by Crestron to whom Crestron distributed a copy of any of Exhibits E, F, G, H, I and K to the Amended Complaint, and for each copy so distributed, state whether the copy was of Exhibit E, F, G, H, I or K to the Amended Complaint, who at Crestron distributed the copy to the person, and when it was distributed.

**RESPONSE TO INTERROGATORY NO. 12**: In addition to the instances listed in Crestron's Objections and Responses to Savant's Second Set of Interrogatories, dated April 18, 2012:

Thomas Oliver distributed a copy of either Exhibit E, F, G, H, I or K in August 2010 to

Dave Gold
DeVincio
6585 North Avondale Ave
Chicago, IL 60631

Dave Koller distributed a copy of Exhibit K on April 26, 2010 to

Ed Trauth
GFI's Home Technology Solutions, Inc.
1007 Plank Road
Naperville, IL 60563

Ken Vanemon distributed a copy of Exhibit I on October 25, 2010 to

Andrew Vaccaro
Phoenix Systems
39 Morningside Ave.
North Haledon, NJ 07450

Rob Christensen distributed a copy of Exhibit K on April 14, 2010 to

Kelsey Bailey
Shay Taylor
Home Theatre Design
567 W. 19th St.
Idaho Falls, ID 83402

Vincent Bruno sent a copy of Exhibit K on May 6, 2011 to

Steven Aquino
Michael F. Roger
Jason Briggs
Giovatto Advertising
95 Route 17 South
Paramus, NJ 07652

Adam Griffin distributed a copy of Exhibit K on April 19, 2010 to

Gordon Stroud
Joshua Blanton
Digital Bel-Air
9872 Pacific Ave.
Anaheim, CA 92804

Adam Griffin distributed a copy of Exhibit K on April 27, 2010 to

Pueata Auva'a
Kiwi Audio Visual
1950 Kellogg Ave
Carlsbad, CA 92008

Adam Griffin distributed a copy of Exhibit K on May 3, 2010 to

Christina Smolskis
Experience Audio Video, Inc.
18451 Buena Vista Ave
Yorba Linda, CA 92886

Adam Griffin distributed a copy of Exhibit K on June 10, 2010 to

Doug Amos
Victor Link
Totally Wired Networks, Inc.
3315 E Miraloma Ave Ste 111
Anaheim, CA 92806

Adam Griffin distributed a copy of Exhibit K on June 16, 2010 to

Marcos Lipkovicius
Ryan Lipkovicius
Audio Impact, Inc.
P.O. Box 2948
La Jolla, CA 92038

Adam Griffin distributed a copy of Exhibit K on July 19, 2010 to

Tom Farinola
Atlantic Stereo
445 East 17th Street, Suite A
Costa Mesa, CA 92627

Adam Griffin distributed a copy of Exhibit K on August 9, 2010 to

Sam F. Harb
One'Sphere A/V, Inc.
2011 Palomar Airport Road
Suite 112
Carlsbad, CA 92011

Adam Griffin distributed a copy of Exhibit I on August 23, 2010 to

Sam F. Harb
One'Sphere A/V, Inc.
2011 Palomar Airport Road
Suite 112
Carlsbad, CA 92011

Adam Griffin distributed a copy of Exhibit I on August 30, 2010 to

Tom Farinola
Atlantic Stereo
445 East 17th Street, Suite A
Costa Mesa, CA 92627

Joe Laurin distributed a copy of Exhibit I on August 23, 2010 to

Barry Newton
Interactive Automation, LLC
5593 Peachtree Road
Atlanta, GA 30341

Craig Gulley distributed a copy of Exhibit K on June 29, 2010 to

Bridgid Miller
August Systems
124 E. Nifong Blvd, Suite C
Colombia, MO 65203

Craig Gulley distributed a copy of Exhibits E-I and K on March 3, 2011 to

Bill Green
Q Audio Video
1733 N Kingshighway St
Cape Girardeau, Missouri 63701

Jordan Erdman
The J. Edison Group LLC
355 Deer Valley Dr.
Hudson, WI 54016

Craig Gulley distributed a copy of Exhibits I and K on April 11, 2011 to

George Georgiou
Cinetec
11324 Southwest Highway
Palos Hills, IL 60465

Craig Gulley distributed a copy of Exhibit I on April 11, 2011 to

Mark Kolda
The Audio Room, Ltd.
855 Blairs Ferry Road
Marion, IA 52302

Craig Gulley distributed a copy of Exhibit K on September 22, 2011 to

Kevin Olstad
Appollo Systems
181 Cheshire Lane N Suite 300
Minneapolis, MN 55441

Craig Gulley distributed a copy of Exhibit K on September 22, 2011 to

Ben Forrester
Forrester Tech LLC
606 W. McDaniel Street
Springfield, MO 65806

Matthew Lien distributed a copy of Exhibit I on August 30, 2010 to

Kevin Lambidonis
Digital Entertainment Systems
2349 W Hudson Road
Rogers, AR 72756

Rodger Owings
Phonograph
3939 S. Harvard Ave., Suite 201
Tulsa, OK 74135

**THIRD SUPPLEMENTAL RESPONSE TO**
**THIRD SET OF INTERROGATORIES**

Subject to the general and specific objections set forth in Crestron's Objections and First Supplemental Responses to Savant's Third Set of Interrogatories, dated September 21, 2012, except as limited by the Court's Order of August 12, 2013, Crestron further supplements its response as follows:

**INTERROGATORY NO. 15**: Identify all contract manufacturers with whom Crestron has communicated concerning the contract manufacturer performing contract manufacturing services for Savant.

**RESPONSE TO INTERROGATORY NO. 15**: Crestron objects to this interrogatory to the extent that it seeks information the disclosure of which would violate its privacy rights or

the privacy rights of third parties.

Subject to and without waiving the foregoing general and specific objections, Crestron responds as follows: Crestron has communicated with SMTC Corporation and MC Assembly concerning the contract manufacturer performing contract manufacturing services for Savant.

Respectfully submitted,

CRESTRON ELECTRONICS, INC.

By its attorneys,

*/s/ Chong S. Park*

Chong S. Park (admitted *pro hac vice*)
John J. Kavanagh (admitted *pro hac vice*)
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036-1795
Tel.: 202.429.3000
Fax: 202.429.3902
cpark@steptoe.com
jkavanagh@steptoe.com

Michael J. Pineault (BBO #555314)
CLEMENTS & PINEAULT, LLP
24 Federal Street
Boston, MA 02110
Tel.: 857.445.0135
Fax: 857.366.5404
mpineault@clementspineault.com

Dated: January 31, 2014

**CERTIFICATE OF SERVICE**

I hereby certify that Creston Electronics, Inc.'s Further Supplemental Responses to Plaintiff's Interrogatories were served on this 31st day of January 2014 by email and U.S. Mail to:

Thomas C. O'Konski
Aaron S. Jacobs
William J. Mostyn IV
Michael E. Attaya
Michael R. Reinemann
CESARI and MCKENNA, LLP
88 Black Falcon Avenue
Boston, MA 02210
(617) 951-2500 (Telephone)
(617) 951-3927 (Facsimile)
tok@c-m.com
ajacobs@c-m.com
wjm@c-m.com
mattaya@c-m.com
mreinemann@c-m.com

Paul J. Hayes
Kevin Gannon
HAYES MESSINA GILMAN & HAYES LLC
300 Brickstone Square, Suite 901
Andover, MA 01810
(978) 809-3850 (Telephone)
(978) 809-3869 (Facsimile)
phayes@hayesmessina.com
kgannon@hayesmessina.com

*Counsel for Plaintiff Savant Systems, LLC*

*/s/ Caroline Aiello*
Caroline Aiello

# CERTIFICATION OF RANDY KLEIN

I am Executive Vice President of Crestron Electronics, Inc. I believe, based on reasonable inquiry, that the foregoing further supplemental responses to Plaintiff's Interrogatories are true and correct to the best of my knowledge, information, and belief.

I verify under the penalty of perjury that the foregoing is true and correct.

Dated: January 31, 2014

Randy Klein

# EXHIBIT 505

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAVANT SYSTEMS, LLC<br>Plaintiff,<br><br>v.<br><br>CRESTRON ELECTRONICS, INC.<br>Defendant. | Civil Action No. 10-cv-11622 EFH<br><br>(Sherman Act and Clayton Act Antitrust, Lanham Act False Advertising and Unfair Competition, Federal Copyright Infringement, M.G.L.A. c. 93 and c. 93A)<br><br>**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

## I. NATURE OF THIS ACTION

1. This is an action by plaintiff, Savant Systems, LLC ("Savant"), a new entrant into the manufacture and sale of high-end programmable controller systems for residential automation for controlling home audio-video, lighting, climate/environmental control, communication and security subsystems, against defendant, Crestron Electronics, Inc. ("Crestron"), the world's largest supplier of competitive systems in that market. This action seeks, based on Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§1, 2, Section 3 of the Clayton Act, 15 U.S.C. §14, Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), Section 501, et seq. of the Copyright Act, 17 U.S.C. §501, et seq., as well as state law, to restrain certain anticompetitive, unfair and deceptive conduct by Crestron calculated to preclude or delay Savant's entry into the market, and to remedy the damaging effects of Crestron's past unlawful conduct.

District and a substantial part of the events giving rise to the claims herein occurred or were intended to cause effects in this District.

## IV. THE RELEVANT MARKET

10. The relevant product market ("The Market") for purposes of this action is the distribution and sale of high-end programmable controller systems for residential automation, particularly for controlling home audio-video, lighting, climate/environmental control, communication and security subsystems. Such systems typically consist of a control platform component for switching and processing audio-video content and control signals, and a plurality of user interface components, such as touch panels or pads, together with docking stations for the interface components ("The Products"). A "high-end" programmable controller system is typically sold to a dealer by the manufacturer for, on average, approximately twenty-five thousand dollars and may well extend into in excess of one-hundred thousand dollars. The cost to the end user customer is higher, due to dealer mark-ups, and installation and programming costs.

11. The Market for the supply of The Products by manufacturers to dealers in the United States is substantial. On information and belief, it accounts for in excess of two hundred million dollars of business in the United States each year.

12. The geographic market is both local and nationwide. High-end residential systems tend to be purchased locally; they are typically sold and serviced by dealers in communities having a population in excess of one hundred thousand inhabitants.

13. Crestron is the largest supplier of The Products in The Market in the United States. According to an industry report published by Parks Associates, Home Systems: Home Control, 2007 Update, Resource Book (excerpt attached as Exhibit B hereto), page 58: "Today

18. By virtue of its dominant size, Crestron has substantial control over dealers in The Products. Withdrawal from the dealers of access to Creston products, and of parts and components for them, would cause a significant economic loss to dealers, and the threat of such withdrawal provides Crestron with power to significantly control their actions, including the power to force dealers to exclude competitors' products and the power to raise prices that Crestron charges dealers substantially above competitive levels.

19. Through the acts discussed more fully below, Crestron has established, and is improperly attempting to maintain, monopoly power in The Market .

## V. CRESTRON'S UNLAWFUL CONDUCT

### A. Crestron's Exclusionary Practices

20. Crestron has not been willing simply to compete with Savant on the relative merits of its and Crestron's competitive products. Instead, shortly after Savant entered the market, Crestron began, and continues today, a pattern of anticompetitive, unfair and deceptive practices designed to thwart competition from Savant and others on the merits, to prevent and/or disincentivize dealers from carrying Savant products, to deprive end user customers of a choice between Savant and Crestron products, and to exclude Savant from The Market.

21. Crestron's conduct with respect to dealers is a prominent and immediate example of the pattern of anticompetitive, unfair and deceptive practices undertaken by Crestron with the purpose and effect of acquiring, maintaining and/or expanding its monopoly in The Market.

22. More specifically, Crestron has unlawfully required dealers, as a condition of maintaining their relationship with Crestron and their access to Crestron's products for resale, to agree not to offer, resell, install or distribute Savant products. In a series of "Comparison

# EXHIBIT E

CRESTRON

# Comparison Guide

Multi-Room/Surround Sound

Crestron vs. Savant



CRESTRON



savant

## Savant Comparison Guide:

On the following page is a comparison between a Crestron System and a particular type of system recently "packaged" and specially priced by Savant. These systems have been packaged by Savant and are targeted for lower end smaller/startup types of projects. These comparisons are intended to illustrate in a simplified manner the main reasons why a Crestron System is better, and to show that overall we have more "check marks" than they do. When a system needs to grow larger than the types shown, Savant becomes very expensive.

- Savant is a startup company with no support network (have your dealer ask their Savant Rep to show them some large-scale successful Savant installations, or ask them how many customer/tech-support employees/locations they have?)
- For larger systems, using Savant is an integration nightmare requiring primary and secondary controllers, host servers, and separate touchpanel and keypad server/extender boxes…all done by Crestron in a single unit. This method of infrastructure adds hidden costs to your installation (for the units themselves, as well as the extra wiring/connectors, and labor), not to mention extra troubleshooting headaches due to their being the increased possibility for miswiring and connections to fail. Plus, when you are dealing with a project with multizones and many touchpanels and keypads, think about all the extra real-estate (i.e. where are you going to put all these extra boxes, power supplies, and wires?) and cost/labor required by a Savant system!
- Savant does not have any technology comparable to DigitalMedia
- Unlike what you may have been hearing from Apple Kool-Aid drinkers, Savant programming software and touchpanel graphics are very visually un-sophisticated
- Savant does not have products that offer a whole-house total solution via a single platform… no amplifiers, tuners, lighting, hvac, shade controllers, e-Control, etc.

**Remember, you can't be a Crestron Dealer and also sell Savant products!**



All brand names, product names and trademarks are the property of their respective owners. ©2009 Crestron Electronics, Inc. 03.27.09

CRESTRON

# Comparison Guide

## Multi-Room/Surround Sound
Crestron vs. Savant

The Crestron System is lower cost, and yet includes amplifiers and tuners built into the package shown. With the Savant system, you would need to add-on separate expansion modules and/or 3rd party equipment to complete the system and be equal to the one shown by Crestron.



Crestron AMS-AIP and TPMC-8X



Savant Rosie System 2 and Rosie Touch 13

| Feature Comparison | Crestron | Savant |
|---|---|---|
| Serial Control Ports | ● | ● |
| IR Control Ports | ● | ● |
| Relay Ports | ● | ● |
| Digital Input Ports | ● | ● |
| Ethernet | ● | ● |
| Wireless Touchpanel | ● | ● |
| iPhone Control | ● | ● |
| Xpanel | ● | |
| HDMI Inputs | ● | ● |
| HDMI Output | ● | ● |
| Component/S-Video/Composite Inputs | ● | ● |
| Digital Audio Inputs | ● | ● |
| Analog Audio Inputs | ● | |
| Surround Sound Pre-Amp | ● | ● |
| Surround Sound Amplifiers (7 channels) | ● | |
| Amplified Audio Distribution | ● | |
| AM/FM Tuner Included | ● | |
| Optional XM and/or Sirius Tuners | ● | |
| Optional Zone Expansion Amplifiers | ● | |
| On-Screen Navigation | ● | ● |
| Built-In Video Processing | ● | ● |
| System Integrated audio server | ● | ● |
| System Integrated video server | ● | |
| iTunes Integration | ● | ● |
| Integrated Ports for optional keypads and touchpanels (No additional intermediate hardware servers required) | ● | |
| Over 10,000 3rd party device drivers (FREE) | ● | |
| Programming and Configuration software (FREE) | ● | |

| Key Touchpanel Features | Crestron | Savant |
|---|---|---|
| Stylish and compact ergonomic design | ● | |
| Onboard PC applications for Web browsing, streaming media, conferencing, VoIP, & remote computer access | ● | |
| Built-in biometric fingerprint scanner | ● | |
| External "booster" battery pack available | ● | |
| Optional desktop and wall mount docking stations | ● | |

| Expansion Options | Crestron | Savant |
|---|---|---|
| Touchpanels | ● | ● |
| Keypads | ● | ● |
| Shade controller | ● | |
| Scheduling and management software | ● | |
| Single platform lighting solution | ● | |
| Single platform HVAC Control | ● | |
| Crestron Integration Ready (hundreds of Crestron devices) | ● | |
| Digital Media HDMI switching and distribution solution with HDCP support | ● | |
| Amplifiers & Expansion Amplifiers | ● | |
| SDK available for cross platform compatibility | ● | |

| Pricing | Crestron | | Savant | |
|---|---|---|---|---|
| Control system | AMS-AIP | $5500 | LCC-2100 | $5894 |
| Wireless touchpanel | TPMC-8X | $1900 | WTP-113 | $3157 |
| Touchpanel dock | TPMC-8X-DS | $250 | WDB-100B | $760 |
| 8GB iPod touch | | $230 (by others) | WIA-4000 | $241 |
| Apple iPhone app | Crestron Mobile | $0 | Rosie App | $199 |
| iServer | CEN-ISERVER | $650 | | server included |
| Mobile device license | | $0 | MDL-1000 | $526 |
| 7 Channel surround amplifier | | included | | $2000 (estimated) |
| 4 Zone amplifier | | included | | $800 (estimated) |
| WiFi acces point | CEN-WAP | $250 | | $75 (by others) |
| Total: | | $9030 | | Special Stimulus Package: $9200 (Actual pricing $13652) |

Crestron Electronics, Inc. 15 Volvo Drive | Rockleigh, NJ 07647

800.237.2041 | crestron.com

All brand names, product names and trademarks are the property of their respective owners. ©2009 Crestron Electronics, Inc. 03.27.09

# EXHIBIT F

CRESTRON

# Comparison Guide

## In-Wall Touchpanel Control System
Crestron vs. Savant



CRESTRON



savant

### Savant Comparison Guide:

On the following page is a comparison between a Crestron System and a particular type of system recently "packaged" and specially priced by Savant. These systems have been packaged by Savant and are targeted for lower end smaller/startup types of projects. These comparisons are intended to illustrate in a simplified manner the main reasons why a Crestron System is better, and to show that overall we have more "check marks" than they do. When a system needs to grow larger than the types shown, Savant becomes very expensive.

- Savant is a startup company with no support network (have your dealer ask their Savant Rep to show them some large-scale successful Savant installations, or ask them how many customer/tech-support employees/locations they have?)
- For larger systems, using Savant is an integration nightmare requiring primary and secondary controllers, host servers, and separate touchpanel and keypad server/extender boxes…all done by Crestron in a single unit. This method of infrastructure adds hidden costs to your installation (for the units themselves, as well as the extra wiring/connectors, and labor), not to mention extra troubleshooting headaches due to their being the increased possibility for miswiring and connections to fail. Plus, when you are dealing with a project with multizones and many touchpanels and keypads, think about all the extra real-estate (i.e. where are you going to put all these extra boxes, power supplies, and wires?) and cost/labor required by a Savant system!
- Savant does not have any technology comparable to DigitalMedia
- Unlike what you may have been hearing from Apple Kool-Aid drinkers, Savant programming software and touchpanel graphics are very visually un-sophisticated
- Savant does not have products that offer a whole-house total solution via a single platform… no amplifiers, tuners, lighting, hvac, shade controllers, e-Control, etc.

**Remember, you can't be a Crestron Dealer and also sell Savant products!**



All brand names, product names and trademarks are the property of their respective owners. ©2009 Crestron Electronics, Inc.
03.27.09

CRESTRON

# Comparison Guide

## In-Wall Touchpanel Control System
Crestron vs. Savant

Crestron touchpanels do not require a separate server unit. Each Savant Touchpanel (and/or keypad) requires a separate server/extender "box" to be installed/wired between it and their main Control Processor. The unit required for touchpanels is the ITS 1001, and the unit required for keypads is the TKX-2101. This method of infrastructure adds hidden costs to your installation (for the units themselves, as well as the extra wiring/connectors, and labor), not to mention extra troubleshooting headaches due to their being the increased possibility for miswiring and connections to fail. Plus, when you are dealing with a project with multizones and many touchpanels and keypads, think about all the extra real-estate (i.e. where are you going to put all these extra boxes) and cost/labor required by a Savant system!


Crestron AV2, TPMC-8L and MLX-2


Savant In-Wall Touchpanel, Controller and Remote

| Feature Comparison | Crestron | Savant |
|---|---|---|
| Integrated Ports for optional keypads and touchpanels (No additional intermediate hardware server required) | o | |
| Serial Control Ports | o | o |
| IR Control Ports | o | o |
| Relay Ports | o | o |
| Digital Input Ports | o | o |
| Ethernet | o | o |
| Wireless 2-Way Remote with complete system control | o | |
| Wireless 1-way RF Remote | | o |
| iPhone Control | o | o |
| Xpanel | o | |
| In-Wall Touchpanel | o | o |
| Many Touchpanel mounting options | o | |
| Over 10,000 3rd party device drivers (FREE) | o | |
| Programming and Configuration software (FREE) | o | |

| Key Touchpanel Features | Crestron | Savant |
|---|---|---|
| Touchpanel Custom button and faceplate engraving | o | |
| Many Touchpanel mounting options | o | |
| Onboard PC applications for web browsing, streaming media, confrencing, VoIP, and remote computer access | o | |
| Built-In biometric fingerprint scanner and light sensor | o | |

| Expansion Options | Crestron | Savant |
|---|---|---|
| Touchpanels | o | o |
| Keypads | o | o |
| Shade controller | o | |
| Scheduling and management software | o | |
| Single platform lighting control | o | |
| Single platform HVAC Control | o | |
| Crestron Integration Ready (hundreds of Crestron devices) | o | |
| Digital Media HDMI switching and distribution solution with HDCP support | o | |
| Amplifiers | o | |
| SDKs available for cross platform compatibility | o | |

| Pricing | Crestron | | Savant | |
|---|---|---|---|---|
| Touchpanel server | | not required | ITC-1001 | $894 |
| In-wall touchpanel | TPMC-8L | $2000 | ITP-109X | $1421 |
| System controller | AV2 | $1750 | RSC-0025 | $1000 |
| Remote | MLX-2 | $375 (two-way) | RTR-1000 | $210 (one-way) |
| RF receiver | CEN-RFGW-EX | $225 | RFD-1000 | $31 |
| 8GB iPod touch | | $230 (by others) | WIA-4000 | $241 |
| Apple iPhone app | Crestron Mobile | $0 | Rosie App | $199 |
| Mobile device license | | $0 | MDL-1000 | $526 |
| WiFi access point | CEN-WAP | $250 | | $75 (by others) |
| Total: | | $4830 | Special Stimulus Package: $4050 (Actual pricing $4597) | |

Crestron Electronics, Inc. 15 Volvo Drive | Rockleigh, NJ 07647

800.237.2041 | crestron.com

All brand names, product names and trademarks are the property of their respective owners. ©2009 Crestron Electronics, Inc.
03.27.09

# EXHIBIT G

CRESTRON

# Comparison Guide

Wireless Control System
Crestron vs. Savant



CRESTRON



savant

## Savant Comparison Guide:

On the following page is a comparison between a Crestron System and a particular type of system recently "packaged" and specially priced by Savant. These systems have been packaged by Savant and are targeted for lower end smaller/startup types of projects. These comparisons are intended to illustrate in a simplified manner the main reasons why a Crestron System is better, and to show that overall we have more "check marks" than they do. When a system needs to grow larger than the types shown, Savant becomes very expensive.

- Savant is a startup company with no support network (have your dealer ask their Savant Rep to show them some large-scale successful Savant installations, or ask them how many customer/tech-support employees/locations they have?)
- For larger systems, using Savant is an integration nightmare requiring primary and secondary controllers, host servers, and separate touchpanel and keypad server/extender boxes...all done by Crestron in a single unit. This method of infrastructure adds hidden costs to your installation (for the units themselves, as well as the extra wiring/connectors, and labor), not to mention extra troubleshooting headaches due to their being the increased possibility for miswiring and connections to fail. Plus, when you are dealing with a project with multizones and many touchpanels and keypads, think about all the extra real-estate (i.e. where are you going to put all these extra boxes, power supplies, and wires?) and cost/labor required by a Savant system!
- Savant does not have any technology comparable to DigitalMedia
- Unlike what you may have been hearing from Apple Kool-Aid drinkers, Savant programming software and touchpanel graphics are very visually un-sophisticated
- Savant does not have products that offer a whole-house total solution via a single platform... no amplifiers, tuners, lighting, hvac, shade controllers, e-Control, etc.

**Remember, you can't be a Crestron Dealer and also sell Savant products!**



All brand names, product names and trademarks are the property of their respective owners. ©2009 Crestron Electronics, Inc.
03.27.09

CRESTRON

# Comparison Guide

## Wireless Control System
### Crestron vs. Savant

The Crestron System includes a fully bi-directional Handheld 2-Way Wireless Remote, including all text and feedback, whereas the handheld remote provided by the Savant System is 1-Way wireless only, with no feedback.



Crestron AV2 System and MLX-2



Savant WCS-1000 and Remote

| Feature Comparison | Crestron | Savant |
|---|---|---|
| Serial Control Ports | ● | ● |
| IR Control Ports | ● | ● |
| Relay Ports | ● | ● |
| Digital Input Ports | ● | ● |
| Ethernet | ● | ● |
| Wireless 1-way RF Remote | ● | ● |
| Wireless 2-way RF Remote with LCD display for feedback | ● | |
| iPhone Control | ● | ● |
| Xpanel | ● | |
| Integrated Ports for optional keypads and touchpanels (No additional intermediate hardware servers required) | ● | |
| Over 10,000 3rd party device drivers (FREE) | ● | |
| Programming and Configuration software (FREE) | ● | |

| Expansion Options | Crestron | Savant |
|---|---|---|
| Touchpanels | ● | ● |
| Keypads | ● | ● |
| Shade controller | ● | |
| Scheduling and management software | ● | |
| Single platform lighting solution | ● | |
| Single platform HVAC Control | ● | |
| Crestron Integration Ready (hundreds of Crestron devices) | ● | |
| Digital Media HDMI switching and distribution solution with HDCP support | ● | |
| Amplifiers | ● | |
| SDKs available for cross platform compatibility | ● | |

| Pricing | Crestron | | Savant | |
|---|---|---|---|---|
| Wireless control system | AV2 | $2000 | WCS-1000 | $1842 |
| Remote | MLX-2 | $375 (two-way) | RTR-1000 | $210 (one-way) |
| RF receiver | CEN-RFGW-EX | $225 | RFD-1000 | $31 |
| 8GB iPod touch | | $230 (by others) | WIA-4000 | $241 |
| Apple iPhone app | Crestron Mobile | $0 | Rosie App | $199 |
| Mobile device license | | $0 | MDL-1000 | $526 |
| **Total:** | | $2830 | **Special Stimulus Package: $2200 (Actual pricing $3049)** | |

Crestron Electronics, Inc. 15 Volvo Drive | Rockleigh, NJ 07647

800.237.2041 | crestron.com

All brand names, product names and trademarks are the property of their respective owners. ©2009 Crestron Electronics, Inc. 03.27.09

# EXHIBIT H

CRESTRON

# Comparison Guide

Wireless Interactive Control System
Crestron vs. Savant




## Savant Comparison Guide:

On the following page is a comparison between a Crestron System and a particular type of system recently "packaged" and specially priced by Savant. These systems have been packaged by Savant and are targeted for lower end smaller/startup types of projects. These comparisons are intended to illustrate in a simplified manner the main reasons why a Crestron System is better, and to show that overall we have more "check marks" than they do. When a system needs to grow larger than the types shown, Savant becomes very expensive.

- Savant is a startup company with no support network (have your dealer ask their Savant Rep to show them some large-scale successful Savant installations, or ask them how many customer/tech-support employees/locations they have?)
- For larger systems, using Savant is an integration nightmare requiring primary and secondary controllers, host servers, and separate touchpanel and keypad server/extender boxes…all done by Crestron in a single unit. This method of infrastructure adds hidden costs to your installation (for the units themselves, as well as the extra wiring/connectors, and labor), not to mention extra troubleshooting headaches due to their being the increased possibility for miswiring and connections to fail. Plus, when you are dealing with a project with multizones and many touchpanels and keypads, think about all the extra real-estate (i.e. where are you going to put all these extra boxes, power supplies, and wires?) and cost/labor required by a Savant system!
- Savant does not have any technology comparable to DigitalMedia
- Unlike what you may have been hearing from Apple Kool-Aid drinkers, Savant programming software and touchpanel graphics are very visually un-sophisticated
- Savant does not have products that offer a whole-house total solution via a single platform… no amplifiers, tuners, lighting, hvac, shade controllers, e-Control, etc.

**Remember, you can't be a Crestron Dealer and also sell Savant products!**



All brand names, product names and trademarks are the property of their respective owners ©2009 Crestron Electronics, Inc.
03.27.09

CRESTRON

# Comparison Guide

Wireless Interactive Control System
Crestron vs. Savant

The Crestron solution includes a fully bidirectional/handheld touchpanel remote. With the Savant 1-way RF-Remote, the user is limited to relying on the on-screen display for all user control/feedback. This can be annoying when you are watching a movie, and you simply want to adjust the volume or lighting without the on-screen display always popping up over the video.



Crestron CP2E with TPMC-4XG-B



Savant OSD-1000

| Feature Comparison | Crestron | Savant |
|---|---|---|
| Serial Control Ports | ● | ● |
| IR Control Ports | ● | ● |
| Relay Ports | ● | ● |
| Digital Input Ports | ● | ● |
| Ethernet | ● | ● |
| Wireless 2-Way Remote with complete system control | ● | |
| Wireless 1-way RF Remote with on screen navigation | | ● |
| iPhone Control | ● | ● |
| Xpanel | ● | |
| Integrated Ports for optional keypads and touchpanels (No additional intermediate hardware servers required) | ● | |
| Over 10,000 3rd party device drivers (FREE) | ● | |
| Programming and Configuration software (FREE) | ● | |

| Expansion Options | Crestron | Savant |
|---|---|---|
| Touchpanels | ● | ● |
| Keypads | ● | ● |
| Shade controller | ● | |
| Scheduling and management software | ● | |
| Single platform lighting solution | ● | |
| Single platform HVAC control | ● | |
| Crestron Integration Ready (hundreds of Crestron devices) | ● | |
| Digital Media HDMI switching and distribution solution with HDCP support | ● | |
| Amplifiers | ● | |
| SDKs available for cross platform compatibility | ● | |

| Pricing | Crestron | | Savant | |
|---|---|---|---|---|
| Control system | AV2 | $1025 | WCS-1000 | $2000 |
| Remote | MLX-2 | $995 (two-way) | RTR-1000 | $210 (one-way) |
| RF receiver | CEN-RFGW-EX | $225 | RFD-1000 | $31 |
| 8GB iPod touch | | $230 (by others) | WIA-4000 | $241 |
| Apple iPhone app | Crestron Mobile | $0 | Rosie App | $199 |
| Mobile device license | | $0 | MDL-1000 | $526 |
| WiFi acces point | CEN-WAP | $250 | | $75 (by others) |
| Total: | | $2500 | Special Stimulus Package: $2350 (Actual pricing $3282) | |



All brand names, product names and trademarks are the property of their respective owners. ©2009 Crestron Electronics, Inc.
03.27.09

# EXHIBIT 506

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

SAVANT SYSTEMS, LLC,
Plaintiff,

v.

CRESTRON ELECTRONICS, INC.,
Defendant.

Civil Action No. 1:10-cv-11622-EFH

**DECLARATION OF RANDY KLEIN IN OPPOSITION TO PLAINTIFF'S MOTION FOR AN ORDER SETTING A SCHEDULING CONFERENCE**

I, Randy Klein, declare as follows:

1. I am Executive Vice President of Crestron Electronics, Inc. ("Crestron"). I have held this position since October 2000. I have personal knowledge of the facts set forth herein.

2. As Executive Vice President, I am familiar with Crestron's sales figures, marketing practices, and dealer relationships, including communications with dealers, and with the competition Crestron faces in the sale of residential programmable controllers, including high-end residential programmable controllers.

3. Crestron's sales revenues are measured by fiscal year (i.e. from July to June). From Fiscal Year 2008 through Fiscal Year 2010, Crestron's sales revenues for residential programmable controllers, including "high end" residential programmable controllers, decreased by 35%. In the last six months, Crestron's sales revenues for residential programmable controllers have decreased by 32% (i.e. comparing sales from April through September 2010

versus sales from October 2010 through March 2011). At the present time, Crestron holds approximately a 50% share of the "high end" residential market.

4. Crestron has never had a policy of refusing to work with dealers that sell products made by Crestron's competitors. For example, there are many dealers that sell both Crestron and Savant products, including high end programmable controllers. Approximately 10 – 15% of the dealers that sell Crestron products, including some of Crestron's largest and most important dealers, also sell Savant products.

5. Cybersound was at one time an important dealer for Crestron. It chose to "shift away" to Savant (as noted in a recent CE Pro article submitted with Savant's motion papers), and is now actively pitching and marketing Savant products to customers. In the last twelve months, Cybersound's sales of Crestron products have decreased from a high of $1.1 million to $125,000, an approximately 89% decrease. During the last three months, Cybersound's sales of Crestron's products have totaled only $21,000.

6. Engineered Environments is another important dealer that has decided to actively promote Savant products while also selling Crestron. I understand that Engineered Environments is planning later this year to host an event promoting Savant products, including to other prospective dealers. Attached hereto at Ex. A is a true and correct copy of the "Savant Dealer Conference Agenda," which includes scheduled tours of the "Engineered Environments Experience Center." Engineered Environment's sales of Crestron products have decreased from $450,000 in the last fiscal year to an expected $108,000 this fiscal year, an approximately 75% decrease.

7. The declaration of Robert P. Madonna, submitted by Savant in support of its motion for a status conference, includes as exhibits both a blog article written by dealer DSI

Entertainment System and an email sent by dealer Elite Home Technology. Crestron had absolutely nothing to do with either the blog article or the email. Crestron had no communications with either dealer regarding publishing the blog article or sending the email. Crestron had no role or input in the language included in the blog article or the email. And Crestron did not direct, or suggest, or in any way seek to have the blog article or email prepared or transmitted.

8. DSI Entertainment Systems, the dealer that published the blog article, is a dealer for both Crestron and Savant products. To the best of my knowledge, the first time that anyone at Crestron even heard about the DSI Entertainment Systems blog article was when Crestron received complaints from other dealers that the DSI blog included material that those other dealers considered unfair to Crestron.

9. Based on my review of the blog article and email, it appears to me that DSI Entertainment Systems simply undertook to compare two of the product lines it sells, and then published a blog article containing the comparison. Josh Peters of Elite Home Technology apparently read the blog article and decided to forward its substance to an area builder.

10. Attached as Exhibit B hereto is a true and correct copy of an email that Eric Theis of DSI Entertainment Systems sent to Dave Sell of Crestron on May 3, 2011.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 4 day of May, 2011.

Randy Klein

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 4, 2011.

/s/ Christopher T. Holding
Christopher T. Holding

EXHIBIT 507

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAVANT SYSTEMS, LLC<br>Plaintiff,<br><br>v.<br><br>CRESTRON ELECTRONICS, INC.<br>Defendant<br><br>CRESTRON ELECTRONICS, INC.<br>Counterclaim-Plaintiff,<br>v.<br><br>SAVANT SYSTEMS, LLC<br>Counterclaim-Defendant | Civil Action No. 10-cv-11622-EFH |

**PLAINTIFF SAVANT SYSTEMS, LLC'S REPLY TO DEFENDANT CRESTRON ELECTRONICS, INC.'S COUNTERCLAIM COMPLAINT**

Savant Systems, LLC ("Savant"), through its undersigned counsel, replies to Crestron Electronics, Inc.'s ("Crestron's") Counterclaim Complaint as follows:

**REPLY TO CRESTRON'S COUNTERCLAIM ALLEGATIONS**

1. Savant admits that it commenced and publicized this lawsuit shortly before the start of a major industry trade show in 2010. Savant denies the remaining allegations of Paragraph 1.

2. Savant admits that it is a relatively new industry player and that, upon its entry into the marketplace, it has faced competition as well as challenges associated with the recent economic downturn. Savant denies the remaining allegations of Paragraph 2.

Case 1:10-cv-11622-EFH Document 39 Filed 06/22/11 Page 2 of 10

3. Savant admits that it has discussed at dealer conferences the growth of its business and its strategy to base its products around the Apple operating system. Savant also admits that Robert Madonna, its Chief Executive Officer, has admitted that Savant "had no choice" but to bring this lawsuit against Crestron. Savant denies the remaining allegations of Paragraph 3.

4. Savant admits that, in the automation and control industry, both manufacturers and dealers must make investments in resources and time in order to gain business. Savant lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations of Paragraph 4 and, therefore, denies the same.

5. Savant admits that, on September 9, 2010, it issued a "Product Alert Notification" recommending that its customers not perform an upgrade to Apple's iOS 4.1 until notified. Savant also admits that, on September 22, 2010, on the eve of the CEDIA conference, a major industry tradeshow, Savant announced the filing of its lawsuit against Crestron. Savant denies the remaining allegations of Paragraph 5.

6. Savant denies the allegations of Paragraph 6.

7. Savant admits that it competes for projects with Crestron. Savant denies the remaining allegations of Paragraph 7.

8. Savant denies the allegations of Paragraph 8.

9. Savant admits that Crestron's Counterclaim Complaint purports to state claims for "tortuous interference with contract and for tortuous interference with advantageous business relations, and unfair and deceptive conduct in violation of M.G.L.A.c. 93A," but denies that the claims have any merit.

10. Savant admits the allegations of Paragraph 10.

Case 1:10-cv-11622-EFH Document 39 Filed 06/22/11 Page 3 of 10

11. Savant admits the allegations of Paragraph 11.

12. Savant admits the allegations of Paragraph 12.

13. Savant admits the allegations of Paragraph 13.

14. Savant admits that Crestron manufactures and distributes automation and control systems for homes, offices, schools, hospitals, hotels and other commercial settings. Savant lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations of Paragraph 14 and, therefore, denies the same.

15. Savant admits that Crestron products are distributed through networks of independent dealers who can choose whether to match Crestron systems with features and accessories, such as lighting, from other companies. Savant admits that dealers typically sell products of various manufacturers. Savant lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations of Paragraph 15 and, therefore, denies the same.

16. Savant admits the allegations of Paragraph 16 regarding CE Pro's May 2011 issue. Savant lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations of Paragraph 16 and, therefore, denies the same.

17. Savant lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 17 and, therefore, denies the same.

18. Savant admits that it manufactures and designs control and automation systems for residential and commercial markets that are based in large part on Apple operating systems. Savant denies the remaining allegations of Paragraph 18.

19. Savant admits the allegations of Paragraph 19.

20. Savant denies the allegation to the effect that it "has attempted to attract dealers to carry its products by promising some measure of 'exclusivity' - i.e., that a dealer would be an 'exclusive' Savant dealer in a particular region or area." Savant admits the remaining allegations of Paragraph 20.

21. Savant admits the allegations of Paragraph 21.

22. Savant admits that it released a "Product Alert Notification" dated September 9, 2010, which contained, in part, the language quoted in Paragraph 22. Savant also admits that shortly after Savant distributed this notification, the industry trade publication CE Pro published an article reporting on Savant's notification. Savant denies the remaining allegations of Paragraph 22.

23. Savant lacks sufficient knowledge or information to form a belief as to the truth or falsity of the "growing pains" allegation and, therefore, denies the same. Savant admits that has been able to gain some dealers and customers, including some Crestron dealers. Savant denies the remaining allegations of Paragraph 23.

24. Savant admits that it has attempted to compete for business against Crestron. Savant denies the remaining allegations of Paragraph 24.

25. Savant admits that dealers of its products have been successful on one or more occasions in winning competition for projects against dealers of Crestron products including projects in Long Island, New York and Phoenix, Arizona. Savant lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations regarding the "project initially committed by a dealer to incorporate Crestron automation and control products" and the allegations regarding the deal in which "Crestron hardware and products had already been

Case 1:10-cv-11622-EFH Document 39 Filed 06/22/11 Page 5 of 10

shipped" and, therefore, denies the same. Savant denies the remaining allegations of Paragraph 25.

26. Savant denies the allegations of Paragraph 26.

27. Savant admits the allegations of Paragraph 27.

28. Savant admits that the 2010 CEDIA Expo was held on September 22-26, 2010. Savant lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 28 and, therefore, denies the same.

29. Savant admits that it has attended the CEDIA Expo annually since entering the market and was aware of the importance of the CEDIA show to manufacturers and independent dealers in the market. Savant admits that it filed suit against Crestron on September 21, 2010, the day before the CEDIA Expo began. Savant denies the remaining allegations of Paragraph 29.

30. Savant denies the allegations of Paragraph 30.

31. Savant denies the allegations of Paragraph 31.

32. Savant denies the allegations of Paragraph 32.

33. Savant admits that, after filing suit against Crestron, it published a press release regarding the lawsuit and its allegations. Savant admits that the industry trade publication CE Pro published an article containing the quoted statements, but denies the remaining allegations of Paragraph 33.

34. Savant admits the allegations of paragraph 34.

35. Savant denies the allegations of Paragraph 35.

36. Savant denies the allegations of Paragraph 36.

37. Savant admits that it filed as an exhibit to a recent filing a notice of termination that Cyber Sound received from Crestron. Savant denies the remaining allegations of Paragraph 37.

38. Savant denies the allegations of Paragraph 38.

39. Savant repeats and expressly incorporates by reference herein its replies to Paragraphs 1-38 above.

40. Savant lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 40 and, therefore, denies the same.

41. Savant admits that, on one or more occasion, a dealer of Savant products has been successful in winning a project in competition with a dealer of Crestron products including projects in Long Island, New York and Phoenix, Arizona. Savant lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegation that, on at least one occasion, Crestron hardware and products had already been shipped to the dealer for integration and installation when Savant won the deal and therefore, denies the same. Savant denies the remaining allegations of Paragraph 41.

42. Savant denies the allegations of Paragraph 42.

43. Savant denies the allegations of Paragraph 43.

44. Savant denies the allegations of Paragraph 44.

45. Savant denies the allegations of Paragraph 45.

46. Savant repeats and expressly incorporates by reference herein its replies to Paragraphs 1-45 above.

47. Savant lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 47 and, therefore, denies the same.

48. Savant lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations of Paragraph 48 and, therefore, denies the same.

49. Savant denies the allegations of Paragraph 49.

50. Savant denies the allegations of Paragraph 50.

51. Savant denies that it intended the filing of its suit to have a significant impact on Crestron's anticipated sales resulting from the Expo. Savant lacks sufficient knowledge or information to form a belief as to the truth of falsity of the remaining allegations of Paragraph 51 and, therefore, denies the same.

52. Savant denies the allegations of Paragraph 52.

53. Savant denies the allegations of Paragraph 53.

54. Savant repeats and expressly incorporates by reference herein its replies to Paragraphs 1-53 above.

55. Savant admits the allegations of Paragraph 55.

56. Savant denies the allegations of Paragraph 56.

57. Savant denies the allegations of Paragraph 57 including specifically the allegations of subparagraphs a, b and c.

58. Savant admits that it planned and decided to initiate this lawsuit and the related publicity about this lawsuit from its Massachusetts headquarters, in consultation with its Massachusetts-based counsel. Savant admits that the suit was initiated in Massachusetts and that it publicized the filing of its lawsuit from its Massachusetts headquarters. Savant denies the remaining allegations of Paragraph 58.

59. Savant denies the allegations of Paragraph 59.

**AFFIRMATIVE DEFENSES TO CRESTRON'S COUNTERCLAIM ALLEGATIONS**

1. Crestron fails to state any claim upon which relief can be granted.

2. Any and all of Savant's actions alleged by Crestron were lawful, justified and carried out in furtherance of Savant's legitimate business interest and constitute *bona fide* competition.

3. Crestron's claims are barred, in whole or in part, because any conduct engaged in by Savant was reasonable in relation to the development and preservation of its business.

4. Crestron's claims are barred, in whole or in part, because Savant's conduct did not constitute unlawful interference with any contracts or business relations of Crestron.

5. Crestron's claims are barred, in whole or in part, because Savant's conduct did not involve improper motive or means.

6 Crestron's claims are barred, in whole or in part, because Savant did not engage in any unfair or deceptive act or practice.

7. Crestron's claims are barred, in whole or in part, because its alleged injuries or damages were not legally or proximately caused by any acts or omissions of Savant and/or were caused, if at all, by the conduct of Crestron and/or third parties.

8. Crestron has not suffered any actual injury or damage as a result of any conduct alleged as a basis of its Counterclaim Complaint.

9. Crestron's claims are barred, in whole or in part, because its alleged damages, if any, are too speculative and uncertain.

10. Crestron's claims are barred, in whole or in part, because it failed to mitigate damages, if any, allegedly suffered as a result of the conduct it alleges.

11. Crestron's claims are barred by the doctrine of unclean hands.

Case 1:10-cv-11622-EFH Document 39 Filed 06/22/11 Page 9 of 10

12. Crestron's claims are barred, in whole or in part, by the applicable statute of limitations.

13. Crestron's claims are barred, in whole or in part, by the doctrines of waiver, estoppel and/or laches.

WHEREFORE, Savant respectfully submits that Crestron is entitled to no relief whatsoever on any of the claims of its Counterclaim Complaint and requests that the Counterclaim Complaint be dismissed with prejudice, with an award of costs to Savant and such further relief as the Court deems just and appropriate.

Respectfully submitted,

SAVANT SYSTEMS, LLC

By Its Attorneys,

Dated: June 22, 2011

/s/ Thomas C. O'Konski
Thomas C. O'Konski (BBO #378265)
Martin J. O'Donnell (BBO #377475)
Michael E. Attaya (BBO #548297)
CESARI and MCKENNA, LLP
88 Black Falcon Avenue
Boston, MA 02210
(617) 951-2500

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 22, 2011.

/s/ Thomas C. O'Konski

EXHIBIT 508

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAVANT SYSTEMS, LLC<br>Plaintiff,<br><br>v.<br><br>CRESTRON ELECTRONICS, INC.<br>Defendant<br><br>CRESTRON ELECTRONICS, INC.<br>Counterclaim-Plaintiff,<br>v.<br><br>SAVANT SYSTEMS, LLC<br>Counterclaim-Defendant | Civil Action No. 10-cv-11622-EFH |

**<u>PLAINTIFF SAVANT SYSTEMS, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION</u>**

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 5

A. Substantial Likelihood of Success on the Merits .......... 6

1. Savant's Monopolization Claim .......... 6

2. Savant's Attempt To Monopolize Claim .......... 9

B. Irreparable Harm If Injunctive Relief Is Not Granted .......... 11

C. Balance of Harms Between the Parties .......... 12

D. The Public Interest .......... 13

III. CONCLUSION .......... 13

## TABLE OF AUTHORITIES

*California Dental Ass'n v Federal Trade Comm'n,* 526 U.S. 756, 119 S.Ct. 1604, 143 L.Ed.2d 935 (1999) (emphasis added)....................5

*Camel Hair and Cashmere Institute of America v. Associated Dry Goods Corp.*, 799 F.2d 6, 12 (1st Cir. 1986)....................6

*Girls Clubs of America Inc. v. Boys Clubs of America,* 683 F. Supp. 50, 52. (S.D.N.Y.), *aff'd*, 859 F.2d 148 (2d Cir. 1988)....................6

*Hewlett-Packard Co. v. Boston Scientific Corp.*, 77 F. Supp. 189, 195 (D. Mass 1999)....................6

*Newlife Homecare Inc. v. Express Scripts, Inc.*, 2007 WL 1314861 (M.D. Pa. May 4, 2007)....................6

*Planned Parenthood League v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir. 1981)....................5

*Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 18-19 (1st Cir. 1996)....................11, 13

*Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993)....................10

*United States v. Dentsply International, Inc.*, 399 F.3d 181 (3rd Cir. 2005)....................8

*United States v. Grinnell Corp.*, 384 U.S. 563, 571, 86 S.Ct. 1698 (1966)....................6

*Vittands v. Sudduth*, 730 N.E.2d 325, 337 (Mass. App. Ct. 1999)....................4

Plaintiff, Savant Systems, LLC ("Savant"), submits this Memorandum in support of its Motion For a Preliminary Injunction filed on even date herewith.

Accompanying this Memorandum are a Declaration of Jon Summer in Support of Plaintiff Savant Systems, LLC's Motion For a Preliminary Injunction ("Summer Dec."), a Declaration of Brian Moffett ("Moffett Dec."), a Declaration of Richard Smith ("Smith Dec."), a Declaration of Jason Jobe ("Jobe Dec."), a Declaration of Michael Thul ("Thul Dec."); and a Declaration of Jay Bakaler ("Bakaler Dec.") (collectively, the "Dealer Declarations").

## I. INTRODUCTION

In yet another attempt to intimidate dealers in the high-end residential automation and control systems market who are tempted to add Savant's products to their offerings, defendant, Crestron Electronics, Inc. ("Crestron"), sued former Crestron dealer, Cyber Sound & Security, LLC ("Cyber Sound"), on June 16, 2011, the same day that it filed its Answer, Affirmative Defenses and Counterclaim Complaint in this action.[1] The ostensible purpose of the suit is to obtain damages for Cyber Sound's alleged breach of a "best efforts" provision in its Dealer Agreement with Crestron (Summer Dec., Exhibit A), as well as for its alleged disparagement of Crestron and its products; the real purpose of the suit emerges from the accompanying Dealer Declarations detailing Crestron's past and continuing campaign to deny Savant access to dealers essential for distribution of its products.

Cyber Sound is a dealer of high-end residential automation and control products located in Scottsdale, Arizona that recently switched from Crestron to Savant as its primary supplier of such products. Summer Dec., ¶¶ 4-6, 17. Cyber Sound was identified by Savant, implicitly in ¶23 of its Amended Complaint herein (Doc. #14) filed on November 8, 2010, and later explicitly

[1] *Crestron Electronics, Inc. v. Cyber Sound & Security LLC*, U.S. District Court for the District of New Jersey, Case No. 2:11-cv-03492-FSH-MAS. A copy of the complaint (which is referred to hereinafter as "the "Cyber Sound Complaint") is attached to the Summer Dec. as Exhibit D.

in other pleadings, as one of the Crestron dealers who had been threatened by Crestron with termination, and actually was terminated, for offering Savant's products.

In the lawsuit, Crestron alleges that Cyber Sound breached the "best efforts" provision of its Dealer Agreement as a result of Cyber Sound's "marketing campaign to promote Savant." Cyber Sound Complaint, Summer Dec., Exhibit D, ¶77. It makes this claim despite the fact that the Dealer Agreement itself states that it is "non-exclusive" and is terminable by either party on thirty days' notice. It also ignores its own inconsistent assertions in the very same complaint to the effect that "...Cyber Sound was free under its dealer agreement to represent the automation and control products of other manufacturers" (*ibid.* ¶3); "a dealer can choose whether to match Crestron systems with features and accessories, such as lighting, from other companies" (*ibid.*, ¶12); and "...at no point has Crestron ever required a dealer—let alone Cyber Sound—to be an 'exclusive' Crestron dealer" (*ibid.*, ¶54).[2]

As if the lawsuit is not enough, Crestron turns the screw tighter on dealers, like Cyber Sound, who dare to promote Savant products. Specifically, on July 21, 2011, Crestron's counsel wrote Cyber Sound's counsel in the New Jersey action demanding that Cyber Sound, because of its termination as a Crestron dealer, discontinue servicing any existing Crestron systems which it has installed in its customers' homes over the course of its nearly 11 years as a Crestron dealer. Summer Dec., Exhibit E. Crestron's counsel also demanded that any such servicing work be referred to a local competitor/dealer who is authorized by Crestron. *Id.* Crestron is thus not only preventing Cyber Sound from installing new Crestron systems, but also requiring that Cyber

---

[2] Why would Crestron knowingly sabotage its very own complaint by alleging that its "best efforts" clause does not in fact preclude its dealers from handling competing products? The answer is not difficult to fathom. First, and of highest priority, it is essential that Crestron take this position (i.e., the ostensible freedom of its dealers to handle the products of others) in order to defend against the instant suit brought by Savant against Crestron alleging exclusionary agreements and practices by Crestron in blocking Savant's access to those dealers. Second, the very filing of the Cyber Sound Complaint, and the subsequent publicity given to it by Crestron, are **very powerful warnings and threats to other dealers who may contemplate adding Savant products to their offerings.**

Sound walk away from any existing customers who currently have Crestron systems in place, regardless of the nature, duration and profitability of Cyber Sound's relationships with those customers. Crestron has made similar demands of other terminated dealers. *See* Smith Dec., ¶ 14; Jobe Dec., ¶ 7; Bakaler Dec., ¶ 7.

Because of the significant cost and complexity of high-end automation and control systems, a dealer usually builds a relationship with his clients that typically lasts long after the initial sale and installation of a system, and the maintenance and upgrade of a dealer's installed systems is usually an important factor in the dealer's survival and profitability. Summer Dec., ¶ 22. Denial of access to the parts and supplies essential for the maintenance and upgrade of systems that the dealer itself has installed, and for the servicing of which the customer looks to the dealer, threatens that dealer's survival and profitability, not to mention the further goodwill of the customer.

Savant believes that most, if not all, of Crestron's current dealers have signed Dealer Agreements with "best efforts" provisions identical, or substantially identical, to the one in Cyber Sound's Dealer Agreement. This is evident from the fact that the "best efforts" clause is part of the printed, and apparently fixed, part of the Dealer Agreement form, rather than part of any of the blanks to be filled in with dealer information or the Appendices. Summer Dec., Exhibit A. It is also evident from the Dealer Declarations recently provided to Savant by other Crestron dealers regarding Crestron's threats.[3] *See* Moffett Dec., ¶ 4, Exhibit A; Thul Dec., ¶ 4, Exhibit A; Smith Dec., ¶ 4. This "best efforts" clause gives Crestron a ready excuse to terminate, or sue for breach

[3] Savant has contacted literally dozens of dealers who have confirmed privately that they were threatened with termination by Crestron for offering Savant products. Several of these dealers have agreed to review and sign a declaration regarding these threats. To date, six of these dealers have actually signed and returned a declaration. *See* the Dealer Declarations. It is apparent that other dealers want to avoid the appearance of cooperating with Savant for fear of retaliation by Crestron, and will provide testimony regarding Crestron's threats only if compelled to do so by subpoena.

of contract, any Crestron dealer, should the dealer decide to carry Savant's products or cooperate with Savant in any way in connection with this action.

Savant submits that the allegations against Cyber Sound in the New Jersey action are pretexual - the real reason for the suit is to retaliate against Cyber Sound for switching to Savant and for cooperating with Savant by providing it with information regarding Crestron's threats to terminate any dealer who handled Savant products, in support of Savant's antitrust claims against Crestron in this action. Crestron's suit is a clear warning to other Crestron dealers who might be tempted to handle Savant products or provide information regarding Crestron's threats of termination, and a clear attempt to suppress voluntary testimony regarding such threats. Similar tactics have increasingly been found unlawful by both courts and legislatures, and suits of this nature have been given the name "SLAPP" suits (Strategic Lawsuits Against Public Participation): *see Vittands v. Sudduth*, 730 N.E.2d 325, 337 (Mass. App. Ct. 1999) ("SLAPP actions are defined as "meritless suits" that use litigation to "intimidate opponents' exercise of rights of petitioning and speech."").

Savant submits that there is nothing wrong *per se* with a "best efforts" clause in a dealer agreement. In assessing the propriety of Crestron's actions in filing the Cyber Sound Complaint, it is necessary to look beyond the "best efforts" clause that the suit was ostensibly brought to enforce and examine the manner in which Crestron has *implemented* that clause. Thus, in examining an ethical rule adopted by the California Dental Association prohibiting price advertising by its members, Justice Bryer observed:

> **The most important question is.... What are the specific restraints at issue? ...** Those restraints do not include merely the agreement to which the California Dental Association's (Dental Association or Association) ethical rule literally refers, namely, a promise to refrain from advertising that is " 'false or misleading in any material respect.' " .... Instead, the Commission found a set of restraints arising out

Case 1:10-cv-11622-EFH Document 42 Filed 08/02/11 Page 8 of 18

> of **the way the Dental Association *implemented* this innocent-sounding ethical rule in practice**, through advisory opinions, guidelines, enforcement policies, and review of membership applications.

*California Dental Ass'n v Federal Trade Comm'n,* 526 U.S. 756, 119 S.Ct. 1604, 143 L.Ed.2d 935 (1999) (emphasis added). The manner in which Crestron *implements* its Dealer Agreements is summarized in part II.A.2 below and further detailed in part in the Dealer Declarations filed with this Memorandum. *See* Summer Dec., ¶ 19; Moffett Dec., ¶ 6; Smith Dec., ¶ 11; Jobe Dec., ¶¶5-6; Thul Dec., ¶ 6; Bakaler Dec., ¶¶ 8-9.

Crestron should not be allowed to use the courts to further its unlawful exclusionary scheme or to frustrate Savant's efforts to obtain evidence to support its claims in this action. Crestron, its officers, directors, employees and agents, and those in active concert with them, should thus be preliminarily enjoined by this Court from further prosecution of the New Jersey action against Cyber Sound, from threatening to terminate, or terminating, and from threatening to bring, or bringing, any new breach of contract claim against, any other Creston dealer, based on that dealer's decision to offer Savant products or to provide testimony or other evidence supportive of Savant's antitrust claims in this action.

## II. ARGUMENT

In order to prevail on its motion for preliminary relief, Savant must show (a) a substantial likelihood that it will ultimately prevail on the merits of its claims against Crestron; (b) that Savant will suffer irreparable injury unless the injunction issues; (c) that the threatened injury to Savant outweighs whatever damage the proposed injunction may cause Crestron; and (d) that the injunction issued would not be adverse to the public interest. *Planned Parenthood League v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir. 1981), cited in *Camel Hair and Cashmere Institute of America v. Associated Dry Goods Corp.*, 799 F.2d 6, 12 (1st Cir. 1986).

As demonstrated below, Savant has satisfied each of these requirements. Accordingly, the Court should enter the preliminary relief requested by Savant in this Motion.

**A. Substantial Likelihood of Success On The Merits**

Where, as here, a plaintiff's complaint alleges multiple claims, a showing of a substantial likelihood of success on the merits of those claims most germane to the preliminary relief requested is sufficient. *See, e.g., Girls Clubs of America Inc. v. Boys Clubs of America*, 683 F. Supp. 50, 52. (S.D.N.Y.), *aff'd*, 859 F.2d 148 (2d Cir. 1988); *Newlife Homecare Inc. v. Express Scripts, Inc.*, 2007 WL 1314861 (M.D. Pa. May 4, 2007). The claims most germane to the relief requested by Savant in this action are Savant's monopolization claim and attempt to monopolize claim under Section 2 of the Sherman Act, 15 U.S.C. § 2.

**1. Savant's Monopolization Claim**

Savant's monopolization claim is set forth in ¶¶47-50 of its Amended Complaint. In order to prevail on this claim, Savant must show that (1) Crestron possesses monopoly power in the relevant market, and (2) Crestron willfully acquired, maintained or used that power by exclusionary means. *Hewlett-Packard Co. v. Boston Scientific Corp.*, 77 F. Supp. 189, 195 (D. Mass 1999). The existence of monopoly power may be inferred from a predominant share of the market. *United States v. Grinnell Corp.*, 384 U.S. 563, 571, 86 S.Ct. 1698 (1966).

There is a substantial likelihood that Savant will succeed in showing that Crestron has monopoly power in the relevant market defined in the Amended Complaint, i.e., the manufacture and distribution of high-end residential automation and control systems. Amended Complaint, Doc. #14, ¶¶ 11-12. This is because the evidence shows that Crestron has a predominant share of that market, and has maintained a predominant share for many years now. The evidence of

Crestron's market share is, in fact, reliable and compelling, since it comes from either Crestron itself or independent industry sources knowledgeable of the market.

Specifically, Crestron's own website reports that:

> "With over 40 years in business and 57 offices worldwide, Crestron Electronics is **the leading provider of control and automation systems for homes,** offices, schools, hospitals, hotels and more.

*Id.*, ¶ 5, Exhibit A (emphasis supplied). An independent industry analysts' report from Park Associates for 2007 states that, in 2007, before Savant started shipping products in the market, Crestron had 80% of the unit **high end** custom whole **house** controller sales with AMX at about 20%. *Id.*, ¶ 13, Exhibit B (emphasis supplied). A Crestron press release published on July 17, 2008 states that it had double-digit growth in its fiscal year that ended June 30, 2008, indicating that its market share likely did not drop through that date. *Id.* ¶ 14, Exhibit C. Data from the Custom Electronic Design & Installation Association ("CEDIA") for 2009 indicates that about 76% of the over 330 dealers in the highest revenue markets in the United States selling **high-end** automation and control systems were Crestron dealers. *Id.,* ¶ 16 (emphasis supplied). A Crestron press release published on May 6, 2010 boasts that more than 75% of CE Pro's elite Top 50 dealers, and 90% of CE Pro's Top 20 dealers, were Crestron dealers. *Id.*, ¶ 17, Exhibit D.

Even if it is true, as Crestron has recently alleged, that it has lost some market share in the past year or two, there is a substantial likelihood that its share remains high enough to this day, i.e., well over 60%, sufficient to bestow monopoly power on it in the relevant market.

There is also a substantial likelihood that Savant will succeed in showing that Crestron has maintained its monopoly power through exclusionary means. In fact, the exclusionary means have been in place in Crestron's Dealer Agreements for more than ten years now in the form of the "best efforts" clause. Summer Dec., Exhibit A. Disregarding the irrefutable

Case 1:10-cv-11622-EFH Document 42 Filed 08/02/11 Page 11 of 18

irreconcilability between Crestron's assertions in ¶¶3, 27 and 54 of the Cyber Sound Complaint that the "best efforts" clause in its Dealer Agreement does not preclude its dealers from selling the products of other manufacturers and its assertion in ¶77 that it does, the truth as uncovered by Savant and attested to by the accompanying Dealer Declarations shows that Creston is willing to use the "best efforts" clause and other weapons to prevent its dealers from handling Savant products. Even though Crestron characterizes its Dealer Agreement as "non-exclusive,"[4] it is clear that it considers the "best efforts" clause to require that the dealer deal exclusively with Crestron, at least when it comes to Savant and its high-end residential automation and control products. Crestron's threats of termination of some dealers, actual termination of others, and claim against Cyber Sound for breach of contract, are further compelling evidence of Crestron's exclusionary practices. These acts show conclusively that Crestron is willing to use, and has in fact used, the "best efforts" clause on its Dealer Agreements to exclude competition from Savant, consistent with its published policy to preclude its dealers from selling Savant products.[5]

Thus, there is a substantial likelihood that Savant will succeed in establishing both prongs of its monopolization claim.

Based on a closely analogous set of facts, the U.S. Court of Appeal for the Third Circuit found similar conduct to be a clear violation of Section 2 of the Sherman Act. *United States v. Dentsply International, Inc.*, 399 F.3d 181 (3rd Cir. 2005). In *Dentsply*, the relevant market was the sale of false teeth in the United States. Dentsply was the leading manufacturer in the market

---

[4] Crestron's characterization of the Cyber Sound Dealer Agreement as "non-exclusive" is misleading. Reading the term in the context of the Agreement, it is clear that it was intended to mean that Crestron reserved the right to appoint other dealers in the region. Summer Dec., Exhibit A, first column, second paragraph.

[5] Crestron's 2010 "Comparison Guides" purporting to compare Crestron's product to Savant's products, and published to its dealers for use in pitching Crestron's products against those of Savant, clearly stated Crestron's policy as it related to Savant: **"Remember, you can't be a Crestron dealer and also sell Savant products."** Amended Complaint, Doc. #14, Exhibits E-H.

consisting of 12-13 manufacturers and enjoyed a 75-80% share of the market on a revenue basis. *Id.* at 185. The false teeth were sold through a network of hundreds of dealers who, in turn, resold them to dental laboratories for patient preparation and application. Dentsply operated under a policy that discouraged its dealers from adding competitor's teeth to their product lines. It adopted "Dealer Criterion 6" which provided that Dentsply authorized dealers "may not add further tooth lines to their product offering." Dealer Criterion 6 was enforced by Dentsply against its dealers with the exception of those who carried competing products before 1993. *Id.* The Court noted that:

> The evidence demonstrated conclusively that Dentsply had supremacy over the dealer network and it was at that crucial point in the distribution chain that monopoly power over the market for artificial teeth was established. The reality in this case is that the firm that ties up the key dealers rules the market. *Id.* at 191.

After a careful analysis of the facts and the relevant law, the Court found that Dentsply had monopoly power in the relevant market, and that its exclusionary policies, particularly Dealer Criterion 6, violated Section 2. *Id.* at 196.

Here, Crestron has supremacy over the dealer network in the high-end residential automation and control market and its grip on the key dealers in that market has enabled in to acquire and maintain monopoly power.

**2. Savant's Attempt To Monopolize Claim**

Savant's attempt to monopolize claim is set forth in ¶¶51-54 of its Amended Complaint. In order to prevail on that claim, Savant must show that (1) Crestron engaged in exclusionary conduct, (2) with the specific intent to obtain monopoly power, and (3) a dangerous probability exists that its attempt to monopolize will succeed. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993).

The evidence of Crestron's exclusionary conduct includes: (1) its long-term Dealer Agreements which include a "best efforts" clause that, in Crestron's view anyway, allows it to demand that its dealers deal exclusively with Crestron, at least when it comes to Savant and its high-end residential automation and control products (Amended Complaint Doc. #14, ¶22); (2) its published written policy reminding its dealers that they **"can't be a Crestron Dealer and also sell Savant products"** (*ibid.*); (3) its threats to terminate, and actual termination of, dealers, who decide to carry Savant products (*ibid.*, ¶23); ; (4) its lawsuit against Cyber Sound in New Jersey federal court; (5) its providing preferential terms to dealers who forgo dealing in Savant products (*ibid.*, ¶¶25, 28); (6) its attempted interference with the customer-dealer relationship of dealers who plan to install Savant systems in the customer's premises (*ibid.*, ¶¶24, 27); (7) its threats to third-party contract manufacturers to cut them off from further work for Crestron if they do any work for Savant (*ibid.*, ¶31); (8) its attempts to block Savant's access to third party products needed for one of Savant's installations (*ibid.*, ¶32).

Clearly, Crestron has engaged in this exclusionary conduct with the specific intent to deny Savant access to the critical resource in the market, namely, dealers, so that Crestron could deter Savant's access to the market and stave off Savant's competition.

That there is a dangerous probability that Crestron will succeed in maintaining its monopoly power may be inferred from the fact that it has maintained a predominant share of the market for several years now, and that it continues its exclusionary conduct to this day by punishing dealers who cooperate with Savant either in business or in connection with this suit.

In short, there is a substantial likelihood that Savant's attempt to monopolize claim will be sustained in this case.

**B. Irreparable Harm If Injunctive Relief Is Not Granted**

Irreparable harm in the preliminary injunction context is shown when the movant establishes that there is a cognizable threat that it will suffer a substantial injury that is not accurately measurable or adequately compensable by money damages. *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 18-19 (1st Cir. 1996). Here, that threat to Savant is two-fold.

First, those dealers in the market for high end residential automation and control systems who are currently Crestron dealers (the overwhelming majority of all dealers in this market) have already been threatened with termination by Crestron if they handle Savant products, and are thus already under substantial pressure not to do so. Crestron's suit against Cyber Sound provides an additional, and for many compelling, reason for not taking the chance of dealing with Savant. Most dealers lack the substantial resources of Crestron, and cannot afford to defend a lawsuit in a distant forum (i.e., New Jersey, Crestron's home forum and the jurisdiction that the dealers must agree to accept in the event of any disputes regarding the Dealer Agreements) alleging breach of the Agreements if they dare to offer Savant products. Savant may never be able to discover the true reason why it did not succeed in obtaining business from these dealers, and is thus likely to lose immeasurable revenues that it cannot prove attributable to Crestron's exclusionary conduct.

Additionally, given Crestron's allegations in the Cyber Sound complaint that Cyber Sound "conspired" with Savant to harm it, those dealers will also be reluctant to voluntarily cooperate with Savant's investigation of Crestron's exclusionary practices. The integrity of the judicial system depends in large part on access to facts unconstrained by threats or coercion. Here, the economic intimidation of Crestron's Cyber Sound suit to prevent dealer cooperation with Savant in ascertaining the facts can be as effective as threats of physical intimidation in criminal cases. Crestron dealers who have actually been

Case 1:10-cv-11622-EFH Document 42 Filed 08/02/11 Page 15 of 18

threatened by Crestron in the past with termination or suit if they offer Savant's products will refuse, or be reluctant to come forward with, testimony regarding such threats. Thus, absent deposition of each and every one of the hundreds of dealers in the market for high-end residential automation and control products, Savant will effectively be prevented from providing proof of the full extent of Crestron's threats and intimidation of dealers in the context of discovery in this case.

**C. Balance of Harms Between The Parties**

As noted above, the potential for irreparable harm to Savant, if injunctive relief is not entered, is substantial.

The potential for harm to Crestron, if the injunction Savant is entered, on the other hand, will be minimal. Crestron would simply not be allowed to press forward with its lawsuit against Cyber Sound pending disposition of this action. Its lawsuit would thus, in effect, if not in fact, be stayed for that time period. The stay could be lifted, and prosecution of it continued, if Crestron so chooses, and assuming that any permanent injunctive relief entered in this action does not preclude it, once this action is resolved. In either event, Crestron will not be harmed materially by the delay.

Additionally, if the requested relief is granted, Crestron will not be allowed, pending disposition of this action, to further threaten any of its dealers with termination or with a breach of contract suit, or to sue any of them for breach of contract, simply because the dealer decides to carry Savant products or to offer testimony supportive of Savant's claims in this action. Crestron will retain the right to terminate any of its dealers, or to threaten any of them with termination, for any other legitimate business reason or cause. After this action is resolved, again assuming permanent injunctive relief is not entered against Crestron, Creston will again be allowed to

handle its dealers as it sees fit even if they choose to carry Savant products or support Savant in some other way.

**D. The Public Interest**

The public interest implication of a requested preliminary injunction is often deemed irrelevant in private disputes. *See, e.g., Ross-Simons*, 102 F.3d at 15. Here, however, it strongly favors entry of the injunction. There is a strong public interest in free and honest competition on the merits. This interest extends not only to manufacturers such as Savant and Crestron, but also to the dealers whose rights have already been, and likely will, be adversely impacted if the requested injunction is not entered. Dealers should be free to choose what products they carry, without fear of retaliation from Crestron, even if the products they choose happen to be Savant products. Similarly, dealers should be free to provide truthful, unrestrained testimony regarding Crestron's exclusionary conduct in the market without fear of retaliation from Crestron. Crestron's suit against Cyber Sound clearly demonstrates its willingness to punish a dealer who decides to carry Savant products and/or who provides information and testimony supportive of Savant in this action. Dealers should rightfully be allowed to make their business decisions in the market unfettered by fear of reprisal from Crestron.

## III. CONCLUSION

For the above reasons, Crestron, its officers, directors, employees and agents, and those in active concert with them, should be preliminarily enjoined from further prosecution of Creston's New Jersey lawsuit against Cyber Sound, from threatening to terminate or terminating, and from threatening to bring, or bringing, any claim for breach of contact against, any dealer that chooses to carry Savant products or to provide testimony or other evidence supportive of Savant's claims in this action.

Case 1:10-cv-11622-EFH Document 42 Filed 08/02/11 Page 17 of 18

Respectfully submitted,

SAVANT SYSTEMS, LLC

By Its Attorneys,

Dated: August 2, 2011

/s/ Thomas C. O'Konski
Thomas C. O'Konski (BBO #378265)
Martin J. O'Donnell (BBO #377475)
Michael E. Attaya (BBO #548297)
CESARI and MCKENNA, LLP
88 Black Falcon Avenue
Boston, MA 02210
(617) 951-2500

Case 1:10-cv-11622-EFH Document 42 Filed 08/02/11 Page 18 of 18

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 2, 2011.

/s/ Thomas C. O'Konski