# EXHIBIT 606

**From:** Bruce Myers <Bruce.Myers@savantav.com>
**To:** Tim Locascio <Tim.Locascio@savantav.com>;Peter Corsini <Peter.Corsini@savantav.com>
**Sent:** 8/5/2009 3:50:53 PM
**Subject:** FW: Meeting
**Attachments:** Allied Group Sales Resume.pdf; AM Post Conference Needs 06.19.09.doc; For Bruce 08.05.09.pdf; Functionality Discussion from Sales 10.10.08; HTML document; HTML document; HTML document; MG Post Conference Needs 06.19.09.doc; MK Post Conference Needs 06.19.09.doc; One-On-On wrap up.eml; RE_ follow up.eml; State of the Union.eml

FYI

Need to open the PDF it is 4 pages long

Thanks

Bruce

770 Main Street
Osterville, MA 02655
Ph 508-683-2451
Fx 508-683-2751
Mb 508-889-9290
bmyers@savantav.com

www.savantav.com

Statement of Confidentiality
The contents of this e-mail message and any attachments are confidential and are intended solely for the addressee. The information may also be legally privileged. This transmission is sent in trust, and the sole purpose of delivery to the intended recipient. If you have received this transmission in error, any use, reproduction or dissemination of this transmission is strictly prohibited. If you are not the intended recipient, please immediately notify the sender by reply e-mail or at 508.683-2500 and delete this message and its attachments, if any.

------ Forwarded Message
**From:** Sean Manzanares <smanzanares@savantav.com>
**Date:** Wed, 5 Aug 2009 12:09:39 -0700
**To:** Savant Systems LLC <bmyers@savantav.com>
**Cc:** Sean Manzanares <smanzanares@savantav.com>, Jim Carroll <jim.carroll@savantav.com>, Ben Jamison <ben.jamison@savantav.com>
**Subject:** Re: Meeting

See attached letter first (for Bruce 08.05.09), then supporting docs/emails.

Please call me to discuss.

~ Sean

Sean Manzanares | Western Regional Sales Manager
**Savant Systems LLC**
508.683.2505 office | 760.707.4621 cell
www.savantav.com <http://www.savantav.com> | smanzanares@savantav.com

EXHIBIT
Savant 5
1-21-14 ev
PENGAD 800-631-6989

Statement of Confidentiality
The contents of this e-mail message and any attachments are confidential and are intended solely for the addressee. The information may also be legally privileged. This transmission is sent in trust, and the sole purpose of delivery to the intended recipient. If you have received this transmission in error, any use, reproduction or dissemination of this transmission is strictly prohibited. If you are not the intended recipient, please immediately notify the sender by reply e-mail or at 508.683-2500 and delete this message and its attachments, if any.

savant

Sean Manzanares
Western Regional Sales Manager
smanzanares@savantav.com
508.683.2505

August 5, 2009

Bruce,
I was asked this question during the one-on-one meetings at the dealer conference and took this very seriously. I sat and worked with each rep to determine answers to your exact same question. *See the attached email dated June 19, 2009.*

Please keep in mind that "to help grow numbers" does not equal immediate business. I cannot invent business, or "houses/jobs".

Since our meeting on Monday I have labored to understand why the numbers are not where you feel they should be and why and most importantly as you ask - what can we do about it.

The short answer is: time. But to understand that, I feel it is more important to understand why we are where we are.

Economic Factors - minor:

- Dealer base is fighting price reduction and job scope are trending down
  - Customers are taking the cheap way out with remote centric solutions when they were complete automation jobs 6-months ago.
  - This does not bode well for flip jobs
- New job starts have slowed or completely stopped in key markets (resorts, AZ, SoCAL)
  - Once they start up again, we are looking at Savant business in 12-24 months.

Reliability Image - major:
The Savant reliability history is still a problem that has permeated since I first reported back on December 16. See attached "State of the Union" email.

- We had reliability issues last year and word was on the street of such, then and now
- We have added 131 new dealers and I am assuming the % of reliability issues is about the same, but now a greater population is effected
  - This has also degraded the confidence of our Reps when they get pounded about quality issues and RMAs
  - Every replacement of gear, regardless of how many times we apologize and how fast we scramble a replacement piece costs the installer time and money.
- I would guess that >60% of showroom installs in the West have encountered an RMA
  - This causes apprehension by the dealers to not gamble their good name with a 1st job, or flip job while they are trying to stay alive
  - If they have the recipe for a quick turnaround, with a legacy system, they will not do anything to jeopardize the profit
- 2008 we were bleeding edge, I think we are now cutting edge

On Aug 5, 2009, at 5:06 AM, Bruce Myers wrote:

Jon, Sean and Dave

I asked George the following question after our meetings on Monday and he gave us great feedback. I would like the same from you. Don't be shy, great opportunity express yourself.

What do you need or what can the company do to help grow your numbers?

Thanks

Bruce

------ End of Forwarded Message

savant

Sean Manzanares
Western Regional Sales Manager
smanzanares@savantav.com
508.683.2505

August 5, 2009

I was asked this question during the one-on-one meetings at the dealer conference and took this very seriously. I sat and worked with each rep to determine answers to your exact same question. *See the attached email dated June 19, 2009.*

Please keep in mind that "to help grow numbers" does not equal immediate business. I cannot invent business, or "houses/jobs".

Since our meeting on Monday I have labored to understand why the numbers are not where you feel they should be and why and most importantly as you ask – what can we do about it.

The short answer is: time. But to understand that, I feel it is more important to understand why we are where we are.

Economic Factors - minor:

- Dealer base is fighting price reduction and job scope are trending down
  - Customers are taking the cheap way out with remote centric solutions when they were complete automation jobs 6-months ago.
  - This does not bode well for flip jobs

- New job starts have slowed or completely stopped in key markets (resorts, AZ, SoCAL)
  - Once they start up again, we are looking at Savant business in 12-24 months.

Reliability Image - major:
The Savant reliability history is still a problem that has permeated since I first reported back on December 16. See attached "State of the Union" email.

- We had reliability issues last year and word was on the street of such, then and now

- We have added 131 new dealers and I am assuming the % of reliability issues is about the same, but now a greater population is effected
  - This has also degraded the confidence of our Reps when they get pounded about quality issues and RMAs
  - Every replacement of gear, regardless of how many times we apologize and how fast we scramble a replacement piece costs the installer time and money.

- I would guess that >60% of showroom installs in the West have encountered an RMA
  - This causes apprehension by the dealers to not gamble their good name with a 1st job, or flip job while they are trying to stay alive

  - If they have the recipe for a quick turnaround, with a legacy system, they will not do anything to jeopardize the profit

- 2008 we were bleeding edge, I think we are now cutting edge

savant

Sean Manzanares
Western Regional Sales Manager
smanzanares@savantav.com
508.683.2505

Not As Sold - major:
Perception of the following is prevalent:

- A) It takes a Savant SE to turn on any system - regardless if BP is sold as an easier design tool with no programming
- B) Savant won't ship gear unless a Profile is ready
  - This is a tough stigma to get around
- A + B = it is above the dealers head and too much tweaking is needed by a specialist
  - This means they will not be able to make money

Overpriced - major:
We were flat out overpriced, and not competitive at a majority of jobs.

- The sweet spot of an installation is 8-16 zones of distributed audio.
  - We were not competitive against PAD8s
    - Never competitive against the Adagio line

- Keypads were extremely overpriced and provided dealers another reason to NOT spec our jobs

- Extenders were 50% higher price then the competition and enhanced the image of overpriced and not tested.

With a growing dealer base in 2008 and energy from the CBI dealer conference, dealers could not compete with their legacy profit. We did not lose those dealers, but we lost the opportunity at those jobs which is being felt today.

It has proven very difficult to go back to these dealers to re-sell them on reduction on prices on jobs that have been in process.

Combine all of the above and this is a classic case of selling uphill. Bob himself told me that when 3.8 was released he felt we were out of beta. Every dealer in the West who had attended the 2009 dealer conference and were in our camp are excited. Unfortunately they are excited about future products. The biggest thing is the MSC-12SE, which will open up doors that were closed due to pricing. This message will take time to spread and embrace, and re-quote, and flip jobs.

Profiles - major:
This is our biggest problem bar none. Until our 'tested and guarantee' portfolio of reliable profiles increases to a near 100% success rate, we are always going to scramble resources, wait for profiles and deflect positive repeatable revenue.

While I was typing this reply, I received yet another flame about our Profiles and specifically about the section above "Not as sold". This is a consistent message from every single job in the west. How do I overcome this profit drain? *Email from Kevin Katsuma attached.*



RESTRICTED CONFIDENTIAL - Outside Counsel Only 

savant

Sean Manzanares
Western Regional Sales Manager
smanzanares@savantav.com
508.683.2505

Outlook – Representation:
I made it very clear that I was frustrated with MK Marketing; however, I want to make sure that executive management understands that replacing an AV centric rep with an AV centric rep is not progress. Hiring a Lutron rep looks good on paper, but far from being the answer. As I mentioned, have been approached by the Lutron reps for Arizona (Allied), and the Lutron rep in LA, Orange County, Inland Empire and Las Vegas (SCI). Although these firms understand control and are successful within their world – they are not in our world.

I have attached the company overview for Allied Group Sales.

- They do not represent 1 AV line.

Please visit the website of SCI.

- They do not represent one AV line.
- http://www.scilights.com/home.aspx
- These firms may supplement business in the SoCAL territory, but they are not the answer.

Comparing existing hybrid reps is not fair and paints all Lutron reps as saviors. The newly hired Rep in NoCAL (ANSR) will be successful because they have a dedicated division for AV.

- http://www.alrinc.com/
- www.ansrinc.com

Allied and SCI are lighting reps - this is a big difference. I will be meeting with both of them and will report back.

If MK Marketing cannot be successful – I don't know what our answer is. They have the reputation, clout and relationships. They understand the pressure – but for whatever reasons they cannot close. This is something that Ben and I have talked about and we will fix.

Outlook – Opportunities:
The territory numbers are weak, but promising trends show that the right things are turning towards our favor. For example, business forecasted by the reps for Q3 & Q4 are grossly slighted towards new business.

**Q3**

- 24 New Business opportunities Vs. 7 new dealer/demo opportunities

**Q4**

- 22 New Business opportunities Vs. 6 new dealer/demo opportunities

You asked me during the call – what can we do to get Savant jobs now? The first step is find the dealers, sign them, train them, get them to dedicate limited resources to embrace our technology, go back to their customers and tell them they have a new solution, convince that homeowner, then plan for the job if they win. That takes time.

As an example: There are much better applications than NAV for CRM. Why don't we migrate to a cleaner platform that integrates with the MAC OS, and fit our needs? I am assuming that you might see this as a value, but why disrupt a company and it's business and processes and re-invest in training employees at this time. Logic says a change should be made, but external factors say to wait until a later time.

Asking a dealer to completely switch over takes time.

savant

Sean Manzanares
Western Regional Sales Manager
smanzanares@savantav.com
508.683.2505

When I ask for more time, it is not time to increase sales. It is time to wipe out some of the failed launches and bad breath in the air and right this ship. Time to re-invigorate the existing dealer base on our new pricing and products. Time to get a handle on reliability. Time to improve our Profile direction. Time.

**Note:** We did not lose these dealers – we lost the opportunity to win business that was coming to fruition from January 1 through today.

I have finally assembled a who's who of the industry that want to try our solution. They won't move unless they have the ability to integrate a Savant system in equal the amount of time and earn **equal amount of revenue**. Factors listed above have prevented that, and unless we figure out the reliability and profiles – we may never make it. Dealer frustration is our enemy.

It is easy to throw blame over the wall, and it's easy to be a patsy for sales not being generated. I am not trying to do either. I wanted to give you an honest assessment of our hurdles and goals from my perspective. I am dedicated to this mission. I believe we are fundamentally changing this space. I believe we are on the verge of greatness. I believe this is ours to lose and cannot be measured in monthly revenue or quarterly dollars. Our task is Herculean and the reward is equal.

And please pardon the pun, but only time will tell.

Finally –
Next week I am on the road in the bay area, Sacramento and Reno meeting new dealers with ANSR. We also have an open house event at their office showing off the new Savant line. I would like to extend an invitation to you to come travel with me/us. Come see the hand-to-hand combat. Come hear the issues facing dealers first hand.

Please take this in the spirit with which I intended it to be – constructive with optimism.

Best Regards,

~ Sean

* - Media Server maturation is the last hole and another discussion.



RESTRICTED CONFIDENTIAL - Outside Counsel Only

**From:** Sean Manzanares <smanzanares@savantav.com>
**To:** Ben Jamison <Ben.Jamison@savantav.com>;Jim Carroll <jim.carroll@savantav.com>;Tim Locascio <Tim.Locascio@savantav.com>
**CC:** Sean Manzanares <smanzanares@savantav.com>
**Sent:** 12/16/2008 8:21:01 PM
**Subject:** State of the Union
**Attachments:** Functionality Discussion from Sales 10.10.08

Word is spreading throughout the west of many failures and struggles of our installations.

Dealer: Rich Green Ink.
Installation: Sean's house
Complaint: "The install is/was a disaster"
Heard by: Ambassador Marketing in Seattle

Dealer: Components Electronics
Installation: Peru job (Phoenix, AZ)
Complaints:
a) Dealer is pulling out Savant, going to Crestron.
b) The installation never worked
Heard by: Robert's A/B, Los Angeles

Dealer: Genesis Home Technology
Installation: Street of Dreams - Portland
Complaints: Jason is nearing the end of his rope (my impression)

Dealer: RAVE/Savant
Installation: Ira Friedman's house
Complaint: Un-named dealer in Denver, brought up to me by Jay to verify

Other negative impressions - every Rep demo system all experienced RMAs:

- Momentum showroom
- MK showroom
- Ambient showroom

If the reps lose faith, this will be doubly hard to overcome.
-------

Something to look at internally.

1. Why does it take so long to turn up a system?
2. How much of the struggle/delay is Profile related?
    1. Profile not ready
    2. Profile does not work and needs tweaking
3. How many hours are attributed to the dealer not being ready?
4. Abbreviated training over the last year hurts us at install time.
5. From time of training to going live with a system is a concern as people do not retain our technical philosophy

I am not trying to create reports, and data crunching, but we should be able to quickly look at some metrics somewhere that can give us an insight to our roadblocks to success.

-----

I have major installations underway that I am concerned with:

AV Specialists: 65K in Jackson, WY
Ambient: 80K in Aspen, CO
Ambient 2: 65K in January

Each one has to be perfect, or this could really begin a negative taste and cast a stigma that we do not need.

The more people we have to throw at these installs will get the job done, but that also leaves the impression that dealers cannot do this on their own.

Please see page 1 of the 'Functionality Discussion' document I submitted on behalf of Sales 9-weeks ago. Specifically the passage "Faster".

- I saw this coming months ago and raised the warning flag.
- Has anybody tried my recommendation?

Here is the only way I see for 770 to verify this as a controlled test case:

1. Use Jim's house as a beta site as this is typical of my current large installs
2. Delete the BP config from the system
3. Replace the AVR with brand/model X
4. Replace AppleTV with Vudu (or vice versa)
5. Replace brand/model of DVD's

Have an SE from Boyce's group write the config from scratch, onsite

- Create each touch panel screen
- Commission each iPod/iPhone from scratch
- Verify Profile availability and completeness
- Literally stand behind the SE with a stopwatch and verify each and every SCR or limitation of BP, or the frustrations
- Log every call that is made into software for clarifications
- Take this duration and multiply it by a factor of X to simulate a brand new dealer who went to an abbreviated training in August
- Coffee Table should be exempt from this exercise

**How long does this take to make the Carroll family write the last check so the dealer can get paid and get out of the job?**

What this test case will NOT verify:

- Hardware DOA's
- Hardware stability as we know everything works.
- Shipping instability and problems
  - Within the last week/month, Ambient and Ambassador were on the receiving end of shipping mishaps

This was a tough email to send, but I am getting abused out here and we do not have any more 2nd, 3rd or 4th chances at a 1st impression.

I am here to help the cause - just let me know how.

~ Sean

Sean Manzanares | Western Regional Sales Manager
**Savant Systems LLC**
508.683.2505 office | 760.707.4621 cell
www.savantav.com | smanzanares@savantav.com

Statement of Confidentiality
The contents of this e-mail message and any attachments are confidential and are intended solely for the addressee. The information may also be legally privileged. This transmission is sent in trust, and the sole purpose of delivery to the intended recipient. If you have received this transmission in error, any use, reproduction or dissemination of this transmission is strictly prohibited. If you are not the intended recipient, please immediately notify the sender by reply e-mail or at 508.683-2500 and delete this message and its attachments, if any.

# EXHIBIT 607

VOLUME: I
PAGES: 1-276
EXHIBITS: 1-18

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS No. 10-cv-11622-EFH

******************************
SAVANT SYSTEMS, LLC, *
Plaintiff *
VS. *
CRESTRON ELECTRONICS, INC., *
Defendant *

CRESTRON ELECTRONICS, INC., *
Counterclaim-Plaintiff *
VS. *
SAVANT SYSTEMS, LLC, *
Counterclaim-Defendant *
******************************

DEPOSITION of SAVANT SYSTEMS, LLC, by its designee, ROBERT P. MADONNA, a witness called on behalf of the Defendant and Counterclaim-Plaintiff, Crestron Electronics, Inc., taken pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, before Jane M. Walsh, Shorthand Reporter and Notary Public in and for the Commonwealth of Massachusetts, at the offices of Clements & Pineault, LLP, 24 Federal Street, Boston, Massachusetts, on Thursday, October 25, 2012, commencing at 9:30 a.m.

**CURRAN COURT REPORTING**
**21 Rowe Hill Road, Stoneham,MA 02180**
**(781) 279-8400**

Q Has Savant done a valuation analysis of itself in connection with possible acquisition by Harman?

A I don't know if there is any official evaluation that was done. We kind of punted around what we, you know -- I don't know whether Bruce ran any models. I don't know. We knocked it around as far as what we might have for a valuation.

Q So you don't know whether Mr. Myers did an official valuation?

A I don't know. I know I had discussions with Bruce about where he thinks our valuation would be depending -- So I would assume that he did some type of model on a spreadsheet somewhere. That's just an assumption. I never saw it, if that's what you mean.

Q So sitting here today, you do not know whether Mr. Myers did a valuation spreadsheet?

A I would assume he probably did a spreadsheet somewhere, but I don't know, no. I know we had conversation, what if.

Q Mr. Myers would be the person to talk to about whether Mr. Myers did any spreadsheet

analysis?
A Yes.
Q Now, you talked just now that you and Mr. Myers had punted around possible numbers. What numbers have you punted around?
A Umm, I don't remember what -- I'm trying to remember the conversation specifically with him. And the discussions we had didn't come to a specific number. It was more generalities. We discussed with them how much we had invested in the company and I discussed with Bruce what a fair return would be on that type of investment. Also, I'm trying to remember whether it was discussions with Bruce or with advisors. It's one or the other.
Q In your discussions with Mr. Myers, did you and Mr. Myers ever come up with a number?
A I came up with a range and --
Q What was your range?
A -- in discussions with advisors. I don't know if I came up with that with Mr. Myers though. That's the part I just said.
Q Who were the advisors that you were talking with?

A Corey Spencer and Ed Breslow.
Q What is the range of numbers you discussed for a valuation of Savant with Mr. Spencer and Mr. Breslow?
A We had discussed that roughly there was 120 million dollars invested in the company and that a fair return on a six or seven-year investment like that with the type of investment that it was would be somewhere around 20 percent which -- Plus we had a long discussion about synergies.
Q Let's unpack that. You just mentioned, based on 120 million invested, fair return over six or seven years because of the type of investment it was at 20 percent.
A Yeah.
Q What do you mean by "the type of investment it was"?
A Normally high tech investments like this are considered risky, riskier than, say, investing in bonds or as an example. So we felt saying, you know, asking for a 20 percent return if I invested in any type of entity that, whatever high tech it was, would be fair to ask for.

A I believe it's high.
Q You said before you expect the numbers for total net sales to come in in the high 40's?
A Some range somewhere around high 40's is probably a little more reasonable, but it's hard to tell right now.
Q Well, a 50 percent increase in net sales from 28 million would be adding an additional 14 million to 28 and you'd get to 42 million; right?
A I'm sorry. Repeat that again. I didn't add it up in my head, the 28 plus.
Q A 50 percent increase over 2011 for total net sales in 2012 would come out to approximately 42 million --
A Okay.
Q -- for 2012; correct?
A Yes. 50 percent of 28 is 14 plus 28 roughly truncating it.
Q So it's possible --
A 42.
Q -- that Savant's total net sales will increase over 2011 by approximately 50 percent in 2012?
A That's possible, yes, and that wouldn't have

been possible if we hadn't had to stop and sue Crestron. We never would have even approached those numbers. It's sad as I said earlier.

Q So you believe all the problems that you've alleged with Crestron have gone away because you have sued Crestron?

A No, they did not, but it's sad that it had to come to that.

Q So you're saying you were able to achieve these numbers because you sued Crestron?

A I'm saying the, their anticompetitive behavior and illegal acts, these numbers would have been a lot higher definitely.

Q Well, you just previously said that because you sued Crestron, these numbers are achievable.

A We will hit around 40 million which is a two-year lag from what we would have been hitting if it had not been for their acts in the market which cost me tons of money, tons of money. That's what I'm saying.

Q Do you believe that a company with 50 percent growth in sales year over year is a successful company?

A Not based on the new innovative product we

introduced, this product, this number should have been three to four times that number. So and relative to the market that we're in and the money we invested in this company back in 2005 and '06 and '07 and '08 and '09 and '10 and '11 and '12, the delay of entry into the market from being blocked cost us dearly and these numbers are way off from where they should be or would have been.

Q So you don't think a company that increases sales year over year by 50 percent is a successful company?

A Not in the market that -- With 120 million dollar investment and that should have hit these numbers in the beginning, if it were not for them being blocked? The answer is no. You can try and twist and turn the words all you want. The reality is these numbers are so far off from where they would have been, had it not been for the countless lies about the company that Crestron did, countless threats to dealers, countless blocking us in the marketplace.

So you can sit here and -- The reality is

this company isn't sellable at all with these numbers. There is, you know, a hundred -- Do the math. 140 million dollars with interest invested in the company which would have been a fair investment, had we not been blocked in the marketplace.

So you've got to look. You can't categorize a company going, oh, 50 percent growth top line is good. No, it's not good when you have a -- It isn't good when you're not making any profit and all these models have one big assumption that you're not paying attention to.

Cash flow analysis is useless if you don't have profit. We don't have a dime of profit in this company. So that is not a successful company. So you can't look at just top line and go that's success.

Q Why does Savant not have a dime of profit?

A Because we were blocked in the market for years.

Q Anything else?

A That's the majority, that's the main reason. That is the reason.

Q So you allege you were blocked in market --
A Allege?
Q -- and you have 50 percent gross?
A It's not alleged in my opinion. It's a fact. Growth is not a factor of whether you're a successful company if you're not profitable. And if you have a company that is a monopoly blocks you from the market for years and years and years, yeah. That's not successful. You can try to paint it that way because you're a lawyer, but it's not successful.
You know, and it's, and actually the proof in the pudding is in companies that look at us to acquire us. Is that at the end of the day, you don't get valuations where they should be or where they would have been, if it had not been for being blocked out of the marketplace.
Q Just because you put 120 million dollars in a company, does that mean that --
A It's not just because of 120 million dollars. It's because of our innovative technology that everybody was blown away by in this market, and if we hadn't been blocked in the

marketplace, we would have blown away these numbers. That's a fact. We had an experienced management team. We had the right money invested in the company. We had the right product that leapfrogged over everybody. Consumers couldn't get the innovative product because of us being blocked. That's a fact.

Now, these numbers would have been blown away because of all those facts. There's nothing to do with because I invested 120 million dollars. That's an insult coming from a lawyer too. I'm sorry. I'm an experienced business guy. I have an experienced team. We know what we're doing, but what we didn't realize is that, you know, a company was going to do such illegal things in the marketplace to block us. We were naive in that sense. We came from a professional background coming from telecommunication where companies don't act like this. They respect their competition. They don't do illegal things to block companies.

Q You were very successful at Excel. You would agree with that; correct?

zero to four hundred?
A Yes. That's million.
Q That's million in revenue for each company?
A Yes.
Q So going to the, I guess it's the X, horizontal axis, the right column in each of those sets of numbers is Savant; right?
A That's correct.
Q Okay.
A Well, it's Savant actual at '11, half of '12. The rest is projections based on an open market.
Q Okay, so you have actual numbers incorporated into this graph up to halfway through 2012?
A Roughly, because that's when it was made.
Q Okay, and between 2008 and 2009, there appears to be growth of Savant; correct?
A It was no where near what we had planned or invested for. So there was -- Yes, there was growth. It was no where near. We got delayed by two or three years because of the illegal acts of Crestron, and which would, and if you run a real calculation of value, that cost us hundred and hundreds of millions of dollars

today.
Q Okay. I assume that your additional statement will carry over for each additional year and you don't have to repeat it.
A Well, I can repeat it if I'd like. You've repeated tons of questions to me that I've answered a thousand of times. So it's -- I'm sorry.
Q Between 2009 and 2010, it appears that Savant's revenues increased; correct?
A I can barely see it, it's so small. It's a sliver on the page.
Q So the answer is yes?
A I know what the revenue was in those years and I know what the first year was supposed to be 12. It was two. I don't have it in front of me, but it was, because of the anticompetitive acts of Crestron. So yes, we grew, but it didn't grow as to plan or as to investment, because of what was going on illegally in the market.
Q And between 2010 and 2011 and between 2011 and 2012, Savant's revenue grew; correct?
A Our revenue has been growing, but that doesn't

give them the right to steal the marketplace. It would have grown much larger than this which would, had the company had that revenue today, we would have been able to sell the company, but we cannot because of that. It's cost us hundreds and hundreds and hundreds of millions of dollars because of the illegal acts of Crestron, and this chart actually proves that. It proves it. I mean --
Q How does it prove it?
A There's no profit on it. Turn to the page you just turned to. We make no money because -- We would have made a profit two years ago, because what's in this chart for 2012 was supposed to be in '09 and '10. It's a huge problem. The delay into the marketplace that Crestron has caused us has cost us tons of money, tons of money. We are basically two years behind at least of where we expected to be because of the delay, and that has cost us dearly. So take the chart labeled '12 and push it over two years. That's where it was supposed to be and that is a serious, serious problem because of the illegal acts of

Crestron.

Q When you say "where they were supposed to be" --

A You --

Q -- what are you referring to?

A My previous deposition.

Q Well, when you refer to "expected," what are you referring to?

A The plan that we had that was very reasonable that we were executing against before we realized the market was being blocked.

Q And who came up with that plan?

A All the management team.

Q At Savant?

A Including the Board, yeah.

Q Were certain assumptions made?

A There's always assumptions made in a plan, but one, an assumption that wasn't put in that plan was getting blocked out of the marketplace. That was not in the plan.

Q What other assumptions were in there?

A That we had an experienced team that knew what they were doing and the numbers were very reasonable. When we came out with this

product, everybody was so hot for it. Why do you think companies are talking to us? It's innovative. It blew away Crestron. So what do they do? Illegal acts to stop this into the market. This product would have easily blown through those numbers. We all, everybody, we scrubbed those numbers ten different ways and that was easily. What we didn't account for was the nonsense of blocking the channel and threatening dealers, lying about the company, lying about our size, handing out brochures to people saying you can't sell Savant product. Those were all facts and that seriously delayed our entry into the marketplace which cost me personally hundreds of millions of dollars worth of value.

Q Do experienced teams ever fail?

A We were not going to fail, and if you want to sit here and insult me, go ahead. Lawyers fail too and lawyers lose cases, you know. This is, it's pathetic what happened in this marketplace. It's illegal. It's unethical. It's disgusting, and I put tons of money in a

happened for the past three years. The numbers and the delay would have been two to three times what they are, had it not been as I said. So, but the fact that the team is experienced shows you that after, yes, after the lawsuit we were able to start growing. And again, because the team is experienced, because we know what we're doing and because our products are more innovative than others out there, but it's kind of pathetic that you have to go to lawyers in order to have a fair marketplace.

Q Did you show this slide to Harman?

A Umm, to be honest, I don't remember if I did.

Q Do you believe this slide to be accurate?

A I just said -- Well, accurate? As far as, let me look at this. Yeah, standard margins are growing. Yes, so it's roughly accurate. Hold on a second. I wish I could see the colors. Yes, for the actuals which would be 2012. There's some projections in there based on Q4 which are not actual yet. So a good, from 2011 is actual and then probably half of 2012 is actual. The rest are projections based on

A The software had some of the pieces that I thought would have been good for an authoring package.
Q What was the last piece of what you said, "would have been" --
A An authoring package.
Q What's an authoring package?
A So software, I don't know if you're familiar with Flash.
Q Yep.
A Flash is a program that generates animated graphics on web pages. This was similar to that type of technology. We ended up going with an Apple-based product in the end which we ended up using something called Quartz Composer instead, but back then -- I'm not quite sure if Quart Composer existed at that moment in time. So it was a technology purchase really.
Q Now, besides LiteTouch, AVIX and Tribal Works, has Savant purchased any other companies?
A No.
Q When did Savant acquire LiteTouch?
A It was in February of this year.

Q Why was Savant interested in acquiring LiteTouch?
A Well, LiteTouch contacted us. We weren't out looking. Another -- They actually contacted us twice, once a year earlier and then again a year later. We were initially interested in again a keypad light and there are keypads we actually liked.
Q Was there anything else at LiteTouch besides keypads that Savant found attractive?
A Well, that was the primary reason, but they also have a, you know, full blown lighting system that we ended up picking up also. I mean, it's a whole product with keyboards and dimming modules. So together it's a lighting system. Old, long in the tooth, but still a lighting system.
Q Prior to acquiring LiteTouch, did Savant have its own lighting system in its product line?
A No, we did not.
Q And by acquiring LiteTouch, Savant was able to integrate lighting into its product line?
A We are in process of doing that, not complete.
Q How do you believe having lighting in Savant's

product line will affect Savant?

A Umm, well, lighting, almost all the automation systems have a lighting component or actually I think we're the only ones that didn't have lighting in the marketplace. So I think, you know, in a home where you're controlling Av, you're also controlling lighting.

However, we support all other third-party lighting companies like Lutron, Advantage and Stillwell. So it actually has a lot of interest for the commercial space also, things like California Title 24 which means you have to control the energy space in the building. So to do that you really need control of the lighting directly. So there were decisions like that that went into play when we looked into the company, that over the long-term lighting is an important part of automation in a commercial site.

Q When Savant purchased LiteTouch, did it also get access to LiteTouch's dealers?

A Yeah, whatever was left. They had a handful of, they had dealers. Yes, yes is the answer.

Q Has Savant kept those dealers on that they

inherited?
A Some of them. Some of them. They were a distressed company. Many of the dealers were gone. They had a list, a nice list they showed us before we acquired them, but after we got in, it's trying, we're still trying to figure out what's of value there dealership-wise.
Q And if a dealer is not of value, what do you do?
A Well, we haven't done anything. They're all welcome to be Savant dealers.
Q So all LiteTouch dealers are welcome to be Savant dealers?
A If they're qualified AV dealers.
Q Okay. What does that mean?
A See, you have pure lighting guys, like electricians. They can't be AV dealers. So what's different about lighting is you have electrical contractors and you have the AV guys. The AV guys are the premium guys that we sell to and Crestron sells to. That's our market.
The electrical guys are a little

Q Mr. Madonna, I'm handing you what has been marked by the Court Reporter as Exhibit No. 13. It is a PowerPoint or similar presentation that says "Savant Proprietary & Confidential - Savant Systems LLC." It bears Bates number LEV0000152 on the first page.

(Document handed to the witness.)

Q I'll represent to you that that was produced by Leviton to Crestron and then Crestron's counsel, and Crestron's counsel provided it to Savant. And the first page is redacted because it contained handwritten notes of someone at Leviton.

A I quickly looked at it.

Q Can you identify the exhibit?

A Yes, I can.

Q What is it?

A This is a presentation that I gave to Leviton some time in the summer, I believe it was in 2010 and I don't know the exact date, but --

Q Is it a true and correct copy of the presentation you gave to Leviton in the summer of 2010?

A I believe it is.
Q Who created it?
A I was the main author and I got support from multiple people, but mostly Jim for the Marketing material.
Q And Jim would be Jim Carroll?
A Yes, Jim Carroll from Marketing. The business side and financial numbers I certainly got from Bruce and --
Q Let's turn to the financial numbers at the page marked LEVITON0000226.
A I'm sorry. Are these labeled?
Q They're labeled on the side in a box.
A 226. It's the last page.
Q Is it?
A On this one it is. Oh, wait a minute. 22 of -- I'm sorry. 222 is the last page, 226. Okay. Go ahead.
Q Wait a second. 227 should be the last page.
A I've got 222.
Q Can I take a look at the exhibit for a minute?
A Yes.
(Document handed back to counsel.)
MR. O'KONSKI: Mine is 227, the last

the record.

(Whereupon the deposition was adjourned at 5:01 p.m.)

# EXHIBIT 608




# Savant Brings 'Big Boy' Home Automation to Mainstream for $999

## New smart-home Gateway from Savant Systems includes handheld remote, little black box, full Savant home automation for less than $1,000. See it at CEDIA Expo 2013.

Source: CEPro

Today, if you want Savant home automation system, the price of entry is about $4,000. But the maker of Apple-friendly home controls is rolling out a "system" at CEDIA Expo 2013 that starts at $999 for a controller and slick handheld remote.

The key is a new $500 Gateway nicknamed Big Boy Automation—as in, not a wimpy little box that Comcast sells you. The Linux box, expected to ship in Q1 2014, features the full Savant software and does not require a Mac Mini on the network (although one can be added to enhance the system).

The Gateway is packaged with Savant's new $499 Wi-Fi universal remote, the SUR-0500.

A kit that includes one Wi-Fi dimmer/keypad one Wi-Fi thermostat and user license (both iOS and Android) will retail for $1,499.

A security-centric package is on the way.

Savant's Jim Carroll tells CE Pro that commercials from home automation mass-marketers are driving consumers to specialty dealers.

They tell him, "We need to be relevant. … Here, I've got something for $1,000."

The Gateway includes IR, two RS-232 ports and two GPIOs. It "can do everything a full-blown million-dollar Savant system can do," Carroll says, but a full "luxury license" will be required … and of course a lot more I/Os.

Savant only recently launched a line of Wi-Fi dimmers and is adding to the Internet of Things category with $99 Wi-Fi plug-in modules and smart power supplies.

To read the full article, click here.

Savant Systems LLC Savant in The News Home

**Share This:**

## Upcoming Events

See Savant in Action and View the Latest Solutions in Technology.

## Free Savant Lite App

Download Savant's TrueControl and TrueImage Demo App.

## Savant Store

Place online orders 24/7, see shipping details, order history and more.



## Where to Buy

Find a Savant Installation Specialist near you.

**Latest Savant News:** *SAVANT® INTRODUCES NEW SAVANT HOME PRODUCTS*



Copyright ©2014 Savant Systems LLC All Rights Reserved




Integrators and Dealers- Take the mount and projector screen survey and you could win!
Become a Member · Why Join?
Login · Research · Store
Search CE Pro
Enter search term.

News & Blogs | Products | Topics | Guides | Forums | Events | White Papers | Webinars | Subscribe | Jobs | CEProVIP

SPECIAL COVERAGE CEDIA Expo News FROM CEPro
News · Products · Blogs · Photos · Press

Print | Email | Comments (16) | Share | News | Follow on Twitter, Facebook, Google+ or RSS

# Savant Brings 'Big Boy' Home Automation to Mainstream for $999 (Updated)

## New smart-home Gateway from Savant Systems includes handheld remote, little black box, full Savant home automation for less than $1,000. See it at CEDIA Expo 2013.

g+1 7 Tweet 20 Like 102

By Julie Jacobson, September 26, 2013

Today, if you want Savant home automation system, the price of entry is about $4,000. But the maker of Apple-friendly home controls is rolling out a "system" at CEDIA Expo 2013 that starts at $999 for a controller and slick handheld remote.



Savant Systems packs Big Boy Automation into little black box. Gateway controller and handheld remote will retail for about $1,000.

View this slideshow

The key is a new $500 Gateway nicknamed Big Boy Automation—as in, not a wimpy little box that Comcast sells you. The Linux box, expected to ship in Q1 2014, features the full Savant software and does not require a Mac Mini on the network (although one can be added to enhance the system).

The Gateway is packaged with Savant's new $499 Wi-Fi universal remote, the SUR-0500.

A kit that includes one Wi-Fi dimmer/keypad one Wi-Fi thermostat and user license (both iOS and Android) will retail for $1,499.

A security-centric package is on the way.

Savant's Jim Carroll tells CE Pro that commercials from home automation mass-marketers are driving consumers to specialty dealers.

CEDIA Special Coverage Presented By



They tell him, “We need to be relevant. … Here, I’ve got something for $1,000.”

The Gateway includes IR, two RS-232 ports and two GPIOs. It “can do everything a full-blown million-dollar Savant system can do,” Carroll says, but a full “luxury license” will be required … and of course a lot more I/Os.

Savant only recently launched a line of Wi-Fi dimmers and is adding to the Internet of Things category with $99 Wi-Fi plug-in modules and smart power supplies.

*Update*:
We have a picture of the new smart plug here.

Also, Savant is launching a low-cost Linux host that replaces pricier Mac Mini-based controllers. It sits on the network with any number of local SmartControl boxes. The Linux box (based on Raspberry Pi) will retail for probably somewhere below $400. (Update 2: There will be multiple versions if this line; the device shown at CEDIA was based on NUC.)

The price is difficult to peg right now because “the Linux processors are dropping so quickly,” says Carroll.

The new “Big Boy” controller in this story will be a combination of the Linux host and one of the SmartConnect modules.

Finally, Savant will launch a modestly priced security kit with the new controller. Currently the company is working with Linear’s new ZeroWire system with a cloud-based service.

View the 3 photos attached to this entry

## Savant Brings ‘Big Boy’ Home Automation to Mainstream for $999 (Updated)





View this slideshow

### Subscribe to the CE Pro Newsletter

E-mail Address... Submit

### Read more Energy Management stories

4 Ways Smart Lighting Solutions Can Boost Revenues
Q&A: David Weinstein of Lutron Electronics
49% of ADT’s New Subscribers Now Buy Pulse Home Automation
Webee Promises True ‘Learning’ Home Automation System at CEDIA 2014
25% of New Single-Family Homes Green-Built in 2014
More in Energy Management

### Article Topics








Latest Subscribe Blogs Research

LightFreq Features Color and Sound in a Smart Bulb
Video Photos Inside Meridian Audio’s High-Tech UK Factory
QMotion Introduces Trackless Motorized Drape Rods
D-Tools Announces Latest Version of System Integrator Dealer Software
URC Recognizing Dealers with Awards Program at CEDIA
The Science of Growing (or Not Growing) a Custom Installation Business
4 Ways Smart Lighting Solutions Can Boost Revenues
View more news

Featured Topics
Amplifiers
Audio
Automation & Control
Cell Phone Booster
Central Vacuum
CE Pro 100
Displays
Distributed Audio
Distributors
HDMI Corner
Lighting
Motorized Shades

## About the Author



Julie Jacobson, Co-Founder, EH Publishing / Editor-at-large, CE Pro

Julie Jacobson, recipient of the 2014 CEA TechHome Leadership Award, is co-founder of EH Publishing, producer of CE Pro, Electronic House, Commercial Integrator, Security Sales and other leading technology publications. She currently spends most of her time writing for CE Pro in the areas of home automation, security, networked A/V and the business of home systems integration. Julie majored in Economics at the University of Michigan, spent a year abroad at Cambridge University, earned an MBA from the University of Texas at Austin, and has never taken a journalism class in her life. She's a washed-up Ultimate Frisbee player currently residing in Carlsbad, Calif. Follow her on Twitter @juliejacobson.

## 16 Comments (displayed in order by date/time)

Posted by Wandzia on 09/25 at 01:53 PM

Looks like Savant starts following Logitech Harmony concepts and direction!
Ugly remote…
RTI better

Pozdro
Wandzia Nierusz z Domu Zostaw

Posted by markht on 09/25 at 02:03 PM

Now this is interesting. Question is: how "hobbled" is it?

Does it support Z-wave and zigbee?

Are iOS apps supported, etc.

Posted by scoopcity on 09/25 at 02:16 PM

The "race to the bottom" is underway

Posted by Flip on 09/25 at 02:52 PM

Wow!

Adding this to the Staples announcement and ALL of the other almost completely DIY friendly solutions that have been entering the mass market over the last year, it is be becoming next to impossible to try to make any margin on ANYTHING with the "Home Automation" moniker with mid-level consumers anymore!

The writing was on the wall years ago, but I was in denial for much too long.

Like many in custom biz, I resisted the Apple phenomenon for years before I finally gave in. I now admit I personally LUV iOS products!!, but I cant earn a living like I did prior to the iPod, iPhone & iPad onslaught!

EVERY single AV receiver is now network enabled, has FREE control apps for tablets & smartphones, and NOW even what was custom control of lighting, HVAC, security and complete media server control is within ANYONE's reach for peanuts compared to the amouny of "custom" work that was required that kind of control barely 10 years ago… Correction… 5 years ago!!

Sigh…

Posted by touch33 on 09/25 at 08:01 PM

As a company whose business plan relies on the repair and (more often) the replacement of unprofessional and/or unreliable systems provided by the "specialists" so common in the "smart home" business, we couldn't be happier with Savant's low-end product introduction. I'm sure it will be yet another über-reliable profit center for us, cheaply-made, poorly installed and (more importantly) misprogrammed by yet another group of alarm-installation refugees who were able to pass the "mirror test" necessary to become an Authorized Dealer.

"Race to the bottom", indeed. My childrens' college funds say "yippee"!








Posted by Mark Nagle on 09/25 at 09:52 PM

I think affordable solutions are much more appealing. If you asked me if I thought it was worth it to spend $60k to have a single button that turns all my lights off…..um NO!

Now that things are more affordable I think it will appeal to more home owners,. All we have to do is prove that we are better than the mass marketers which shouldn't be hard

The $1000 savant system honestly will probably be sold as a RF remote with app capabilities ( I cant imagine a full fledge savant dealer selling this basic looking remote and programming it to the max) If you compare this savant system to say pro control which can do RS-232, IR, IP for $950 retail its right on par, But the PRo control looks slightly better

Posted by Steven on 09/26 at 08:28 AM

The Raspberry Pi idea was something we toyed with, but never implemented. This is a great idea if it's implemented well.

However, Savant is avoiding the Zigbee spec and it's going to cause some problems for integrators. Instead of using a mesh network, they're relying on Wi-Fi for their wireless devices. This is fine up to the point where your access points are maxing out. Even high-quality access points will only reasonably handle 20-30 clients.

Word of advice: put an access point in every room with a WLAN controller for the whole WLAN.

Posted by Andrew Southern on 09/26 at 08:46 AM

This is cool, and a great idea. Place the control system equipment in the same price category as a new mac. Make it look like a mac. Sell it at the mac store (I would bet that is the next move here).

I'm just as excited about this industry as I was when I started. The possibilities today are huge, look at all these great tools they have made for us. How can you put them together? How can you prescribe the best solutions for customers? What a great challenge. I think CEDIA is a perfect place to thank the manufacturers for producing these awesome tools.

Posted by Brian on 09/26 at 05:39 PM

I agree the Race is on !!!!!!!!!!!!!!!!

Posted by Jason Griffing on 10/08 at 05:38 PM

"It is be becoming next to impossible to try to make any margin on ANYTHING with the "Home Automation" moniker with mid-level consumers anymore!"
-Flip

So true. Those who rely on that mid-level are in for a long slog.

"The writing was on the wall years ago, but I was in denial for much too long."
- Flip

We've seen the light. So the question is now what? There are opportunities to make a living in home automation. We just have to look harder.

Personally I think this is a really smart (albeit obvious) move by Savant. I've been installing and programming their products for over 4 years now. They've come a long ways. But they're previous pricing for an entry level system was simply unsustainable.

I have to say that on occasion I find myself having the same knee-jerk "race to the bottom" reaction. But then I catch myself. Who defines "the bottom"? Not the consumers who previously couldn't afford home automation, but can now. That much is for sure.

Call it the top. Or call it the bottom. I call it the new normal. Embrace it, because it's not going anywhere

Posted by Julie Jacobson on 10/08 at 05:43 PM

I'm with Jason. I always find it a bit odd when dealers complain, "They made it too affordable!"

It's a similar argument to, "They made it too easy to program!"

Posted by Steven on 10/10 at 10:13 AM

Our rep said the low-cost controller is based on the NUC, not the Raspberry Pi. I'm looking for clarification.

Posted by Julie Jacobson on 10/10 at 11:11 AM

sure looks like NUC in the photo, although this new product is slightly different. Even so, my source could've been mistaken and I'll double-check. Thanks, Steven.

Posted by Julie Jacobson on 10/10 at 04:01 PM

Steven and others, the deal is that Savant will have multiple versions of this new line. The one at CEDIA was in fact NUC. Thanks for bringing it up.

Posted by Mark Whitaker on 01/11 at 02:10 PM

Sounds like a great system. But I am curious about the charge for a site license. How much do they run?

Page 1 of 2 comment pages **1** 2 >

Post a comment

Name:

Email:

Choose smileys | View comment guidelines

☐ Remember my personal information

☐ Notify me of follow-up comments?

Submit

Sponsored Links

Cable management has *never* looked this good. - DataComm Electronics
VIEW® Pro - 4:4:4 HD digital media streaming & distribution over IP networks - ClearOne
Streaming for Sophisticated Listeners | The Mirage Audio System - Autonomic
Grow your business on every job: light, shade and temperature control - Lutron®
Low Voltage Audio, Video & Data Installation Products for the Pros - Arlington Industries

EXHIBIT 609

# Savant Systems Selected by Home Theater Specialists of America

**October 2008**

**Osterville, MA. September, 2008–** Savant Systems LLC, having led the convergence of an open architecture platform to integrate automation and control, A/V switching, and general purpose computers, has announced that Home Theater Specialists of America (HTSA) has chosen to make Savant's complete line of automation and entertainment products available to their member dealers. HTSA is a national association currently comprised of 62 top tier home theater/custom installation experts with annual sales exceeding $500 million.

"We are extremely pleased to be able to provide our innovative solutions throughout the HTSA dealer family, and equally excited to work with HTSA's impressive support infrastructure as we move forward," explained Savant Sales VP Ben Jamison. "Savant's open system architecture has the capacity to dramatically change the automation segment of the home entertainment market–we are confident that the HTSA dealer members will seize this opportunity to differentiate themselves from their competitors," Jamison said. HTSA brings tangible value to its members through unified buying power as well as an impressive suite of professional services and industry–specific guidance pertaining to sales strategies, product selection, installation techniques and marketing programs including demand and lead generation, television commercials, store signs, truck graphics and expert advertising consultation. HTSA has tailored these powerful resources to best serve the needs of each individual dealer member. "HTSA is thrilled to have Savant as a vendor partner," stated Richard Glikes, Executive Director, HTSA. "Their Apple based, open source program creates control opportunities only limited by one's imagination. Savant is the future of control. HTSA, the industry's leading edge purveyor, looks forward to collaborating with such an innovative company," Glikes concluded.

Press Contact:
Micah Sheveloff
WIRC Media
wirc1@wircmedia.com
203–795–3141

Download Press Release

Savant Systems LLC Press Archives Home

**Upcoming Events**
See Savant in Action and View the Latest Solutions in Technology.

**Free Savant Lite App**
Download Savant's TrueControl and TrueImage Demo App.

**Savant Store**
Place online orders 24/7, see shipping details, order history and more.



**Where to Buy**
Find a Savant Installation Specialist near you.

**Latest Savant News:** *Helicopter Airlifts 85" Plasma TV to High-Tech Apartment*


Copyright ©2014 Savant Systems LLC All Rights Reserved

EXHIBIT 610

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SAVANT SYSTEMS, LLC
Plaintiff,

v.

CRESTRON ELECTRONICS, INC.
Defendant

CRESTRON ELECTRONICS, INC.
Counterclaim-Plaintiff,
v.

SAVANT SYSTEMS, LLC
Counterclaim-Defendant

Civil Action No. 10-cv-11622-EFH

**SAVANT SYSTEMS, LLC'S RESPONSES TO CRESTRON ELECTRONICS, INC.'S SECOND SET OF REQUESTS FOR ADMISSION**

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Massachusetts, Plaintiff, Savant Systems, LLC ("Savant"), provides the following responses to Defendant and Counterclaim Plaintiff Crestron Electronics, Inc.'s ("Crestron's") Second Set of Requests for Admission, as follows.

**GENERAL OBJECTIONS**

The following objections are incorporated by reference into each of Savant's responses below as if set forth therein in full.

1. Savant objects to the "Definitions" and "Instructions" to the extent that they impose discovery burdens or obligations on Savant which are greater than or different from those

imposed by the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the District of Massachusetts, including, without limitation, Local Rule 26.5 ("Uniform Definitions in Discovery Requests"). Savant will respond to each request in accordance with the ordinary definitions and common usages of the terms used therein.

2. Savant objects to each request to the extent it seeks information protected from disclosure by the attorney-client privilege, the work product doctrine or any other privilege, immunity or protection. In the event any response by Savant contains privileged or protected information, its disclosure is inadvertent and does not constitute a waiver of any privilege or protection with respect to the divulged information or any other information.

3. Savant objects to each request to the extent it seeks information that is already in the possession of Crestron and/or is as readily accessible to Crestron as Savant, or that is beyond the scope of the material necessary for litigation of the issues raised in the pleadings, on the ground that such demand seeks to impose an overly broad and undue burden on Savant.

4. Savant objects to each request to the extent it seeks information that is irrelevant to the issues raised in the pleadings or that is not reasonably calculated to lead to the discovery of admissible evidence.

5. Savant objects to each request to the extent it seeks information which is not in the possession, custody or control of Savant and is therefore outside the permissible scope of discovery.

6. Savant objects to each request to the extent that it is duplicative of any other request or other discovery propounded by Crestron and, where such duplication occurs, Savant will respond once.

7. Savant objects to each request to the extent it seeks disclosure of confidential

trade secrets, proprietary knowledge, and/or confidential research, development, commercial or business information of Savant. Any response containing such information is made in strict accordance with the terms of the Protective Order for the Exchange of Confidential Information entered by the Court in this case.

8. Savant objects to each request to the extent that it seeks confidential trade secrets, proprietary knowledge, and/or confidential research, development, commercial or business information of third parties that Savant is barred from producing by law and/or contract. Savant will seek permission from third parties to release any information that might be subject to confidentiality agreements or otherwise restricted by law.

9. Savant objects to each request to the extent that it is overly broad, unnecessarily burdensome, vague, indefinite and/or calling for information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

10. Savant objects to each request to the extent it seeks information from Savant that may be in possession of third parties. Savant has no obligation to provide information that is not in its possession or under its control.

11. Savant objects to each request to the extent it is not limited in time and calls for information from a time frame that unreasonably exceeds the relevant time frame of the dispute.

12. Savant objects to each request to the extent it seeks information that is subject to any applicable court order barring disclosure, including, but not limited to, any court-entered protective order.

13. Savant's willingness to provide written responses to any of the requests is not a concession that the subject matter of the particular request is discoverable, relevant to this action, or admissible as evidence.

14. Savant's responses set forth herein are made without waiving any of the foregoing General Objections or any of the following specific objections.

15. These responses reflect Savant's current understanding, belief and knowledge regarding the matters about which inquiry is made. Savant's discovery, investigation and preparation for trial have not yet been completed as of the date of these responses. Savant reserves the right to conduct further discovery and investigation which may develop information that, if presently within its knowledge, would have been included in these responses. Discovery is on-going and Savant reserves the right to offer into evidence in this action other information at trial or any pretrial proceeding which may have been discovered subsequent to the date of these responses, or to more fully explain these responses. Savant therefore reserves the right, at any time, to revise, amend, correct, supplement, modify or clarify its responses set forth below to the extent required by Fed. R. Civ. P. 26(e).

## SPECIFIC OBJECTIONS AND RESPONSES

**REQUEST NO. 4:**

Admit that You have never received revenue directly from use of the copyright registered work having Federal Copyright Registration No. VA17428963.

**RESPONSE TO REQUEST NO. 4:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Admitted, insofar as Savant has neither right to nor ownership of said copyright registered work.

**REQUEST NO.5:**

Admit that You have never received revenue directly from use of the copyright registered work having Federal Copyright Registration No. VA17428966.

**RESPONSE TO REQUEST NO. 5:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Admitted, insofar as Savant has neither right to nor ownership of said copyright registered work.

**REQUEST NO.6:**

Admit that You have never received revenue directly from use of the Federal Copyright Registration No. VA17428968.

**RESPONSE TO REQUEST NO. 6:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Admitted, insofar as Savant has neither right to nor ownership of said copyright registered work.

**REQUEST NO.7:**

Admit that You have not attempted to monetize the copyright registered work having Federal Copyright Registration No. VA17428963.

**RESPONSE TO REQUEST NO. 7:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Admitted, insofar as Savant has neither right to nor ownership of said copyright registered work.

**REQUEST NO.8:**

Admit that You have not attempted to monetize the copyright registered work having Federal Copyright Registration No. VA17428966.

**RESPONSE TO REQUEST NO. 8:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Admitted, insofar as Savant has neither right to nor ownership of said copyright registered work.

**REQUEST NO.9:**

Admit that You have not attempted to monetize the copyright registered work having Federal Copyright Registration No. VA17428968.

**RESPONSE TO REQUEST NO. 9:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Admitted, insofar as Savant has neither right to nor ownership of said copyright registered work.

**REQUEST NO. 10:**

Admit that no one has inquired about licensing the copyright registered work having Federal Copyright Registration No. VA17428963.

**RESPONSE TO REQUEST NO. 10:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Admitted, insofar as Savant has neither right to nor ownership of said copyright registered work.

**REQUEST NO. 11:**

Admit that no one has inquired about licensing the copyright registered work having Federal Copyright Registration No. VAl7428966.

**RESPONSE TO REQUEST NO. 11:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant

to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Admitted, insofar as Savant has neither right to nor ownership of said copyright registered work.

**REQUEST NO. 12:**

Admit that no one has inquired about licensing the copyright registered work having Federal Copyright Registration No. VA17428968.

**RESPONSE TO REQUEST NO. 12:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Admitted, insofar as Savant has neither right to nor ownership of said copyright registered work.

**REQUEST NO. 13:**

Admit that You are not aware of a market to monetize the copyright registered work having Federal Copyright Registration No. VA17428963.

**RESPONSE TO REQUEST NO. 13:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Admitted, insofar as Savant has neither right to nor ownership of said copyright registered work.

**REQUEST NO. 14:**

Admit that You are not aware of a market to monetize the copyright registered work having Federal Copyright Registration No. VA17428966.

**RESPONSE TO REQUEST NO. 14:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Admitted, insofar as Savant has neither right to nor ownership of said copyright registered work.

**REQUEST NO. 15:**

Admit that You are not aware of a market to monetize the copyright registered work having Federal Copyright Registration No. VA17428968.

**RESPONSE TO REQUEST NO. 15:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Admitted, insofar as Savant has neither right to nor ownership of said copyright registered work.

**REQUEST NO. 16:**

Admit that Federal Copyright Registration Nos. VA1742893, VA1742896 and VA1742898 were not issued until October 28, 2010, after Savant filed its Complaint in this litigation on September 22, 2010.

**RESPONSE TO REQUEST NO. 16:**

Without waiving and expressly reserving the foregoing General Objections, Savant states the following:

Admitted, insofar as the effective registration date of each of said Copyright Registration Nos. is October 28, 2010, and Savant filed its Complaint in this litigation on September 22, 2010. Except as admitted in this response, Savant denies this request.

**REQUEST NO. 17:**

Admit that Savant has displayed, without authorization, one or more Apple logos on its website.

**RESPONSE TO REQUEST NO. 17:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Admitted, insofar as Savant briefly used an Apple logo that was not one of the logos specifically approved by Apple for use on Apple's vendors' websites. Savant was authorized to use approved Apple logos on its website. The difference was one of appearance, not substance. Except as admitted in this response, Savant denies this request.

**REQUEST NO. 18:**

Admit that Savant has displayed, without authorization, one or more Apple logos on its website in order to represent to potential consumers a close connection to Apple.

**RESPONSE TO REQUEST NO. 18:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Denied.

**REQUEST NO. 19:**

Admit that Apple-based home automation and commercial control systems existed before 2005.

**RESPONSE TO REQUEST NO. 19:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information. Savant also objects to this request on the ground that it mischaracterizes the evidence.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Denied, insofar as Savant is unaware of an Apple-based home automation and commercial control system that has been confirmed to exist before 2005. Savant further denies this request insofar as Crestron appears to be mischaracterizing the evidence, misquoting statements by Savant and/or taking such statements out of context. For example, Savant stated: "Featuring *the industry's* only Apple®-based control and automation solution, Savant unifies all of your whole house audio and video, lighting control systems, security, climate, communications, internet and ancillary services into one easy-to-use, seamless experience." SAVANT0781084 (emphasis added). The reference to "the industry" was with respect to

CEDIA systems marketed through and installed by professional dealers. Similarly, Savant stated: "Savant systems, having delivered the first *complete* Apple®-based *home automation and commercial control system* . . . ." SAVANT1554701. The reference to "complete" was with respect to a whole-home or business automation system installed by professional dealers. The reference to "home automation and commercial control system" was with respect to a system that could be installed at both homes and commercial offices, as opposed to just one or the other.

**REQUEST NO. 20:**

Admit that one or more companies offered for purchase Apple-based home automation and commercial control systems before 2005.

**RESPONSE TO REQUEST NO. 20:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information. Savant also objects to this request on the ground that it mischaracterizes the evidence.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Denied, insofar as Savant is unaware of one or more companies that offered for purchase Apple-based home automation and commercial control systems that have been confirmed to exist before 2005. Savant further denies this request insofar as Crestron appears to be mischaracterizing the evidence, misquoting statements by Savant and/or taking such statements out of context. For example, Savant stated: "Featuring *the industry's* only Apple®-based

control and automation solution, Savant unifies all of your whole house audio and video, lighting control systems, security, climate, communications, internet and ancillary services into one easy-to-use, seamless experience." SAVANT0781084 (emphasis added). The reference to "the industry" was with respect to CEDIA systems marketed through and installed by professional dealers. Similarly, Savant stated: "Savant systems, having delivered the first *complete* Apple®-based *home automation and commercial* control system . . . ." SAVANT1554701. The reference to "complete" was with respect to a whole-home or business automation system installed by professional dealers. The reference to "home automation and commercial control system" was with respect to a system that could be installed at both homes and commercial offices, as opposed to just one or the other.

**REQUEST NO. 21:**

Admit that Savant did not deliver the first Apple-based home automation and commercial control system.

**RESPONSE TO REQUEST NO. 21:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information. Savant also objects to this request on the ground that it mischaracterizes the evidence.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Denied, insofar as Savant is unaware of another company that delivered an Apple-based home automation and commercial control system prior to Savant's first sale of such a system. Savant further denies this request insofar as Crestron appears to be mischaracterizing the evidence, misquoting statements by Savant and/or taking such statements out of context. For example, Savant stated: "Featuring *the industry's* only Apple®-based control and automation solution, Savant unifies all of your whole house audio and video, lighting control systems, security, climate, communications, internet and ancillary services into one easy-to-use, seamless experience." SAVANT0781084 (emphasis added). The reference to "the industry" was with respect to CEDIA systems marketed through and installed by professional dealers. Similarly, Savant stated: "Savant systems, having delivered the first *complete* Apple®-based *home automation and commercial* control system . . . ." SAVANT1554701. The reference to "complete" was with respect to a whole-home or business automation system installed by professional dealers. The reference to "home automation and commercial control system" was with respect to a system that could be installed at both homes and commercial offices, as opposed to just one or the other.

**REQUEST NO. 22:**

Admit that Savant did not deliver the first Apple-based system that can be used for home automation and commercial control.

**RESPONSE TO REQUEST NO. 22:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery

of admissible information. Savant also objects to this request on the ground that it mischaracterizes the evidence.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Denied, insofar as Savant is unaware of another company that delivered an Apple-based system that can be used for home automation and commercial control prior to Savant's first sale of such a system. Savant further denies this request insofar as Crestron appears to be mischaracterizing the evidence, misquoting statements by Savant and/or taking such statements out of context. For example, Savant stated: "Featuring *the industry's* only Apple®-based control and automation solution, Savant unifies all of your whole house audio and video, lighting control systems, security, climate, communications, internet and ancillary services into one easy-to-use, seamless experience." SAVANT0781084 (emphasis added). The reference to "the industry" was with respect to CEDIA systems marketed through and installed by professional dealers. Similarly, Savant stated: "Savant systems, having delivered the first *complete* Apple®-based *home automation and commercial* control system . . . ." SAVANT1554701. The reference to "complete" was with respect to a whole-home or business automation system installed by professional dealers. The reference to "home automation and commercial control system" was with respect to a system that could be installed at both homes and commercial offices, as opposed to just one or the other.

**REQUEST NO. 23:**

Admit that, in the Spring of 2010, Savant was still formulating, and had not implemented, a business model for its residential product offerings.

**RESPONSE TO REQUEST NO. 23:**

Denied.

**REQUEST NO. 24:**

Admit that, in the Spring of 2010, Savant was still formulating, and had not fully implemented, a marketing strategy for its residential product offerings.

**RESPONSE TO REQUEST NO. 24:**

Denied.

**REQUEST NO. 25:**

Admit that Savant concluded that a large residential "dealer base count" was not required for Savant to achieve financial success.

**RESPONSE TO REQUEST NO. 25:**

Denied, insofar as the statement is taken out of context. Page 6 of a PowerPoint slide deck produced at SAVANT0983822, appeared as follows:

## Premise of Business Plan

- All market segments are limited based on legacy control technology shortcomings-
  - No standards for interoperability
  - Proprietary low level programming
  - Lack of coding standards
  - Supportability of systems
- Dealers can do more jobs with current levels of staff (maybe reduced) in a larger geographic area than is possible with legacy control
- Large Resi dealer base count is not required in high-end
- Broader Resi markets can be serviced through more traditional craft trades (Alarm/Security and Electricians)

Savant Systems Company Confidential

savant

As this slide, and the remainder of the slides and the accompanying in-person presentation, made clear, Savant concluded that it did not need to sign every single automation and control dealer across the United States. In particular, the statement that "Large Resi dealer base count is not required in high-end" was with reference to Tier 3 dealers, which dealers have revenues of less than $100,000 paid to control and automation product manufacturers for their products per year. Such dealers are, almost by their nature, outside of the "high-end" market, insofar as high-end automation and control systems are those sold by manufacturers, like Crestron or Savant, to dealers or integrators for twenty-five thousand dollars or more. Savant did conclude that it required (and requires) a significant number of dealers capable of installing high-end automation and control systems. Savant continues to seek and sign such dealers

notwithstanding Crestron's efforts to prevent its dealers from signing with Savant, such as seen on page 48 of the slide deck:




**REQUEST NO. 26:**

Admit that the document produced at SAVANT0009895 is an authentic official business record that was created and maintained in the ordinary course of Savant's business.

**RESPONSE TO REQUEST NO. 26:**

Denied.

**REQUEST NO. 27:**

Admit that the document produced at SA V ANT0833134 is an authentic official business record that was created and maintained in the ordinary course of Savant's business.

**RESPONSE TO REQUEST NO. 27:**

Denied.

**REQUEST NO. 28:**

Admit that Savant cannot identify any instance in which Savant lost a sale as a result of any alleged use of the Sales and Comparison Guides produced as Exhibits to Savant's Amended Complaint.

**RESPONSE TO REQUEST NO. 28:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is vague and ambiguous as to "use of the Sales and Comparison Guides." Savant also objects to this request to the extent it suggests that it is possible to trace a particular lost sale to a single document or set of documents, or solely the "use" thereof.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Admitted, insofar as Savant is not aware at this time of a particular lost sale due solely to the "use" of one or more of the Sales and Comparison Guides produced as Exhibits to Savant's Amended Complaint. However, the Sales and Comparison Guides poisoned the market and mislead dealers, and might have served as one reason why a given sale was lost by Savant. Except as admitted in this response, Savant denies this request.

Dated: January 10, 2013

Respectfully submitted,

SAVANT SYSTEMS, LLC
By Its Attorneys,

/s/ Aaron S. Jacobs

Thomas C. O'Konski BBO# 378265
Martin J. O'Donnell BBO# 377475
Michael E. Attaya BBO#548297
Aaron S. Jacobs BBO# 677545
William J. Mostyn IV BBO# 678869
CESARI and MCKENNA, LLP
88 Black Falcon Avenue
Boston, MA 02210
(617) 951-2500

Certificate of Service

I hereby certify that this document(s) was served by e-mail with confirmation regular mail on:

Chong S. Park
John J. Kavanagh
Steptoe & Johnson LLP
1330 Connecticut Ave., N.W.
Washington, D.C. 20036-1795

Michael J. Pineault, Esq.
Clements & Pineault, LLP
24 Federal Street
Boston, MA 02110

on this 10th day of January, 2013.

/s/ Aaron S. Jacobs
Aaron S. Jacobs

# EXHIBIT 611

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SAVANT SYSTEMS, LLC
Plaintiff,

v.

CRESTRON ELECTRONICS, INC.
Defendant

CRESTRON ELECTRONICS, INC.
Counterclaim-Plaintiff,
v.

SAVANT SYSTEMS, LLC
Counterclaim-Defendant

Civil Action No. 10-cv-11622-EFH

**PLAINTIFF SAVANT SYSTEMS, LLC'S ANSWERS TO CRESTRON ELECTRONICS, INC.'S FIFTH SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Massachusetts, Plaintiff, Savant Systems, LLC ("Savant"), provides the following Answers to the Fifth Set of Interrogatories propounded by Defendant, Crestron Electronics, Inc. ("Crestron"), as follows:

## GENERAL OBJECTIONS

The following objections are incorporated by reference into each of Savant's responses below as if set forth there in full, and will not be repeated therein:

1. Savant objects to the "Definitions" and "Instructions" to the extent that they impose discovery burdens or obligations on Savant which are greater than or different from those imposed by the Federal Rules of Civil Procedure or the Local Rules for the United States District

Court for the District of Massachusetts, including, without limitation, Local Rule 26.5 ("Uniform Definitions in Discovery Requests"). Savant will respond to each interrogatory in accordance with the ordinary definitions and common usages of the terms used therein.

2. Savant objects to each interrogatory to the extent it seeks information that is protected from disclosure by the attorney-client privilege, the work product doctrine or any other privilege, immunity or protection. In the event any response given by Savant contains privileged or protected information, its disclosure is inadvertent and does not constitute a waiver of any privilege or protection with respect to the divulged information or any other information.

3. Savant objects to each interrogatory to the extent it seeks production of information that is already in the possession of Crestron and/or is as readily accessible to Crestron as Savant, or that is beyond the scope of the material necessary for litigation of the issues raised in the pleadings, on the ground that such demands seek to impose an overly broad and undue burden on Savant.

4. Savant objects to each interrogatory to the extent it constitutes a series of multiple interrogatories. Crestron's use of a single number does not alter the fact that each answer that Savant is required to provide constitutes a separate response to a separate interrogatory that counts against the limit on the total number of interrogatories that Crestron may serve.

5. Savant objects to each interrogatory to the extent it seeks production of information that is irrelevant to the issues raised in the pleadings or that is not reasonably calculated to lead to the discovery of admissible evidence.

6. Savant objects to each interrogatory to the extent it seeks production of information which is not in the possession, custody or control of Savant and is therefore outside the permissible scope of discovery.

7. Savant objects to each interrogatory to the extent it is duplicative of other interrogatories or other discovery requests propounded by Crestron. Where such duplication occurs, Savant will provide the requested information once.

8. Savant objects to each interrogatory to the extent it seeks disclosure of confidential trade secrets, proprietary knowledge, and/or confidential research, development, commercial or business information. Such information is being produced in strict accordance with the terms of the Protective Order for the Production and Exchange of Confidential Information entered by the Court in this case.

9. Savant objects to each interrogatory to the extent that it seeks confidential trade secrets, proprietary knowledge, and/or confidential research, development, commercial or business information of third parties that Savant is barred from providing by law and/or contract. Savant will seek permission from third parties to release any information that might be subject to confidentiality agreements or otherwise restricted by law.

10. Savant objects to each interrogatory to the extent it seeks information and/or documents from Savant that may be in possession of third parties. Savant has no obligation to produce information and/or documents that are not in its possession or under its control.

11. Savant objects to each interrogatory to the extent it is not limited in time and calls for the production of information that unreasonably exceeds the relevant time frame of the dispute.

12. Savant's willingness to provide written responses to any of the interrogatories is not a concession that the subject matter of the particular interrogatory is discoverable, relevant to this action, or admissible as evidence.

13. The responses set forth below are based upon information available to Savant after having made a diligent inquiry of Savant's employees and a diligent search of files in Savant's possession, custody, or control. Savant expressly reserves the right to complete its investigation and discovery of the facts and to rely, at the time of trial or in other proceedings, upon information, and evidence in addition to that provided regardless of whether such information, documents or evidence are newly discovered or currently in existence. Savant therefore reserves the right, at any time, to revise, amend, correct, supplement, modify or clarify its responses set forth below to the extent required by Fed. R. Civ. P. 26(e).

## ANSWERS TO INTERROGATORIES

**Interrogatory No. 37:**

Describe with particularity each and every reason You sought to obtain a registration for the copyright registered works having Federal Copyright Registration Nos. VA1742893, VA1742896 and VA1742898, and identify the five individuals most knowledgeable about the decision to register each copyrighted work.

**Answer No. 37**

In addition to its General Objections, Savant specifically objects to this interrogatory on the grounds that it is six interrogatories in the guise of one. As such, Savant will treat this interrogatory as six separate interrogatories under Rule 33 of the Federal Rules of Civil Procedure and count it as six against the total number permitted by the Court. Savant also objects to this interrogatory to the extent it seeks information that is protected from disclosure by the attorney-client privilege, the work product doctrine or the joint defense privilege because the information was prepared in anticipation of litigation or because it discloses mental impressions, conclusions, opinions or legal theories of Savant's attorneys or is otherwise protected from

disclosure under applicable privileges, law or rules. Savant also objects to this interrogatory to the extent it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

**Interrogatory No. 37(1)**: Savant sought Federal Copyright Registration No. VA1742893 to protect Savant's intellectual property; ensure the exclusive right to use, license or sell this intellectual property; and to prevent the misuse thereof.

**Interrogatory No. 37(2)**: Savant sought Federal Copyright Registration No. VA1742896 to protect Savant's intellectual property; ensure the exclusive right to use, license or sell this intellectual property; and to prevent the misuse thereof.

**Interrogatory No. 37(3)**: Savant sought Federal Copyright Registration No. VA1742898 to protect Savant's intellectual property; ensure the exclusive right to use, license or sell this intellectual property; and to prevent the misuse thereof.

**Interrogatory No. 37(4)**: The individuals most knowledgeable about the decision to register Federal Copyright Registration No. VA1742893 are Robert Madonna, Chief Executive Officer of Savant; and Thomas O'Konski, outside counsel for Savant.

**Interrogatory No. 37(5)**: The individuals most knowledgeable about the decision to register Federal Copyright Registration No. VA1742896 are Robert Madonna, Chief Executive Officer of Savant; and Thomas O'Konski, outside counsel for Savant.

**Interrogatory No. 37(6)**: The individuals most knowledgeable about the decision to register Federal Copyright Registration No. VA1742898 are Robert Madonna, Chief Executive Officer of Savant; and Thomas O'Konski, outside counsel for Savant.

**Interrogatory No. 38**

Describe with particularity each and all of Your efforts to sell, license, commercialize or monetize in any way the copyright registered works having Federal Copyright Registration Nos. VA1742893, VA1742896 and VA1742898 and identify any and all licensees of any of the copyrighted works.

**Answer No. 38**

In addition to its General Objections, Savant specifically objects to this interrogatory on the grounds that it is six interrogatories in the guise of one. As such, Savant will treat this interrogatory as six separate interrogatories under Rule 33 of the Federal Rules of Civil Procedure and count it as six against the total number permitted by the Court. Savant also objects to this interrogatory to the extent it seeks information that is protected from disclosure by the attorney-client privilege, the work product doctrine or the joint defense privilege because the information was prepared in anticipation of litigation or because it discloses mental impressions, conclusions, opinions or legal theories of Savant's attorneys or is otherwise protected from disclosure under applicable privileges, law or rules. Savant also objects to this interrogatory to the extent it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

**Interrogatory No. 38(1)**: Savant has not sought to sell, license, commercialize or monetize Federal Copyright Registration No. VA1742893, beyond Savant's own use thereof.

**Interrogatory No. 38(2)**: Savant has not sought to sell, license, commercialize or monetize Federal Copyright Registration No. VA1742896, beyond Savant's own use thereof.

**Interrogatory No. 38(3)**: Savant has not sought to sell, license, commercialize or monetize Federal Copyright Registration No. VA1742898, beyond Savant's own use thereof.

**Interrogatory No. 38(4)**: There are currently no licensees for Federal Copyright Registration No. VA1742893.

**Interrogatory No. 38(5)**: There are currently no licensees for Federal Copyright Registration No. VA1742896.

**Interrogatory No. 38(6)**: There are currently no licensees for Federal Copyright Registration No. VA1742898.

**Interrogatory No. 39**

Describe with particularity Your efforts to value each of the copyright registered works having Federal Copyright Registration Nos. VA1742893, VA1742896 and VA1742898 and identify Your current valuation of each copyrighted work and the specific factual basis for Your valuation.

**Answer No. 39**

In addition to its General Objections, Savant specifically objects to this interrogatory on the grounds that it is six interrogatories in the guise of one. As such, Savant will treat this

interrogatory as six separate interrogatories under Rule 33 of the Federal Rules of Civil Procedure and count it as six against the total number permitted by the Court. Savant also objects to this interrogatory to the extent it seeks information that is protected from disclosure by the attorney-client privilege, the work product doctrine or the joint defense privilege because the information was prepared in anticipation of litigation or because it discloses mental impressions, conclusions, opinions or legal theories of Savant's attorneys or is otherwise protected from disclosure under applicable privileges, law or rules. Savant also objects to this interrogatory to the extent it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

**Interrogatory No. 39(1)**: Savant has not, to date, sought to value Federal Copyright Registration No. VA1742893.

**Interrogatory No. 39(2)**: Savant has not, to date, sought to value Federal Copyright Registration No. VA1742896.

**Interrogatory No. 39(3)**: Savant has not, to date, sought to value Federal Copyright Registration No. VA1742898.

**Interrogatory No. 39(4)**: Savant has not, to date, sought to value Federal Copyright Registration No. VA1742893.

**Interrogatory No. 39(5)**: Savant has not, to date, sought to value Federal Copyright Registration No. VA1742896.

**Interrogatory No. 39(6)**: Savant has not, to date, sought to value Federal Copyright Registration No. VA1742896.

**Interrogatory No. 40**

Describe with particularity the current and potential market for the copyright registered works having Federal Copyright Registration Nos. VA1742893, VA1742896 and VA1742898 and provide the specific factual bases for your understanding.

**Answer No. 40**

In addition to its General Objections, Savant specifically objects to this interrogatory on the grounds that it is premature to the extent it seeks information that is more appropriately sought from an expert. Savant also objects to this interrogatory to the extent it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Savant has used said copyright registered works in Savant's own advertising, through which advertising Savant has derived revenues by way of sales, and Savant's dealers might similarly use said copyright registered works in promotions or advertising.

**Interrogatory No. 41**

State the basis for Your denial of Request for Admission No. 26 in Savant Systems, LLC's Responses to Crestron Electronics, Inc.'s Second Set of Requests for Admission dated January 10, 2013.

**Answer No. 41**

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

The document produced at SAVANT0009895 was adapted by Bruce Myers from an earlier document generated outside of Savant. The document was intended to provide a rough estimate of the value of Savant for the purpose of determining whether and when a third party would be needed to provide a value for Savant for the purpose of issuing units for a limited liability company. This rough estimate was based upon a series of assumptions and calculations that were built into the preexisting document. The document as produced was neither intended to be authoritative nor to be relied upon as anything more than a rough estimate.

**Interrogatory No. 42**

State the basis for your denial of Request for Admission No. 27 in Savant Systems, LLC's Responses to Crestron Electronics, Inc.'s Second Set of Requests for Admission dated January 10, 2013.

**Answer No. 42**

The document produced at SAVANT0833134 was adapted by Bruce Myers from an earlier document generated outside of Savant. The document was intended to provide a rough estimate of the value of Savant for the purpose of determining whether and when a third party

would be needed to provide a value for Savant for the purpose of issuing units for a limited liability company. This rough estimate was based upon a series of assumptions and calculations that were built into the preexisting document. The document as produced was neither intended to be authoritative nor to be relied upon as anything more than a rough estimate.

Dated: February 15, 2013

Respectfully submitted,

SAVANT SYSTEMS, LLC
By Its Attorneys,

/s/ Aaron S. Jacobs

Thomas C. O'Konski BBO# 378265
Michael E. Attaya BBO#548297
Aaron S. Jacobs BBO# 677545
William J. Mostyn IV BBO# 678869
CESARI and MCKENNA, LLP
88 Black Falcon Avenue
Boston, MA 02210
(617) 951-2500

## VERIFICATION OF INTERROGATORY ANSWERS

I, James Carroll, am Executive VP of Savant Systems, LLC, the Plaintiff in this action. I believe, based on reasonable inquiry, that the foregoing responses are true and correct to the best of my knowledge, information and belief.

I verify under penalty of perjury that the foregoing is true and correct.

[signature]

Executed on 18 day of March, 2013.

Certificate of Service

I hereby certify that this document(s) was served by e-mail with confirmation regular mail on:

Chong S. Park
John J. Kavanagh
Steptoe & Johnson LLP
1330 Connecticut Ave., N.W.
Washington, D.C. 20036-1795

Michael J. Pineault, Esq.
Clements & Pineault, LLP
24 Federal Street
Boston, MA 02110

On this 15th day of February, 2013.

/s/ Aaron S. Jacobs

# EXHIBIT 612

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAVANT SYSTEMS, LLC<br>Plaintiff,<br><br>v.<br><br>CRESTRON ELECTRONICS, INC.<br>Defendant<br><br><br>CRESTRON ELECTRONICS, INC.<br>Counterclaim-Plaintiff,<br>v.<br><br>SAVANT SYSTEMS, LLC<br>Counterclaim-Defendant | Civil Action No. 10-cv-11622-EFH |

**PLAINTIFF SAVANT SYSTEMS, LLC'S ANSWERS TO**
**CRESTRON ELECTRONICS, INC.'S FOURTH SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Massachusetts, Plaintiff, Savant Systems, LLC ("Savant"), provides the following Answers to the Second Set of Interrogatories propounded by Defendant, Crestron Electronics, Inc. ("Crestron"), as follows:

**GENERAL OBJECTIONS**

The following objections are incorporated by reference into each of Savant's responses below as if set forth there in full, and will not be repeated therein:

1. Savant objects to the "Definitions" and "Instructions" to the extent that they impose discovery burdens or obligations on Savant which are greater than or different from those imposed by the Federal Rules of Civil Procedure or the Local Rules for the United States District

Court for the District of Massachusetts, including, without limitation, Local Rule 26.5 ("Uniform Definitions in Discovery Requests"). Savant will respond to each interrogatory in accordance with the ordinary definitions and common usages of the terms used therein.

2. Savant objects to each interrogatory to the extent it seeks information that is protected from disclosure by the attorney-client privilege, the work product doctrine or any other privilege, immunity or protection. In the event any response given by Savant contains privileged or protected information, its disclosure is inadvertent and does not constitute a waiver of any privilege or protection with respect to the divulged information or any other information.

3. Savant objects to each interrogatory to the extent it seeks production of information that is already in the possession of Crestron and/or is as readily accessible to Crestron as Savant, or that is beyond the scope of the material necessary for litigation of the issues raised in the pleadings, on the ground that such demands seek to impose an overly broad and undue burden on Savant.

4. Savant objects to each interrogatory to the extent it constitutes a series of multiple interrogatories. Crestron's use of a single number does not alter the fact that each answer that Savant is required to provide constitutes a separate response to a separate interrogatory that counts against the limit on the total number of interrogatories that Crestron may serve.

5. Savant objects to each interrogatory to the extent it seeks production of information that is irrelevant to the issues raised in the pleadings or that is not reasonably calculated to lead to the discovery of admissible evidence.

6. Savant objects to each interrogatory to the extent it seeks production of information which is not in the possession, custody or control of Savant and is therefore outside the permissible scope of discovery.

7. Savant objects to each interrogatory to the extent it is duplicative of other interrogatories or other discovery requests propounded by Crestron. Where such duplication occurs, Savant will provide the requested information once.

8. Savant objects to each interrogatory to the extent it seeks disclosure of confidential trade secrets, proprietary knowledge, and/or confidential research, development, commercial or business information. Such information is being produced in strict accordance with the terms of the Protective Order for the Production and Exchange of Confidential Information entered by the Court in this case.

9. Savant objects to each interrogatory to the extent that it seeks confidential trade secrets, proprietary knowledge, and/or confidential research, development, commercial or business information of third parties that Savant is barred from providing by law and/or contract. Savant will seek permission from third parties to release any information that might be subject to confidentiality agreements or otherwise restricted by law.

10. Savant objects to each interrogatory to the extent it seeks information and/or documents from Savant that may be in possession of third parties. Savant has no obligation to produce information and/or documents that are not in its possession or under its control.

11. Savant objects to each interrogatory to the extent it is not limited in time and calls for the production of information that unreasonably exceeds the relevant time frame of the dispute.

12. Savant's willingness to provide written responses to any of the interrogatories is not a concession that the subject matter of the particular interrogatory is discoverable, relevant to this action, or admissible as evidence.

13. The responses set forth below are based upon information available to Savant after having made a diligent inquiry of Savant's employees and a diligent search of files in Savant's possession, custody, or control. Savant expressly reserves the right to complete its investigation and discovery of the facts and to rely, at the time of trial or in other proceedings, upon information, and evidence in addition to that provided regardless of whether such information, documents or evidence are newly discovered or currently in existence. Savant therefore reserves the right, at any time, to revise, amend, correct, supplement, modify or clarify its responses set forth below to the extent required by Fed. R. Civ. P. 26(e).

## ANSWERS TO INTERROGATORIES

**Interrogatory No. 17:**

Describe with particularity each and every reason You sought to obtain a registration for the copyright registered works having Federal Copyright Registration Nos. VA17428963, VA17428966 and VA17428968, and identify the five individuals most knowledgeable about the decision to register each copyrighted work.

**Answer to Interrogatory No. 17:**

In addition to its General Objections, Savant specifically objects to this interrogatory on the grounds that it is six interrogatories in the guise of one. As such, Savant will treat this interrogatory as six separate interrogatories under Rule 33 of the Federal Rules of Civil Procedure and count it as six against the total number permitted by the Court. Savant also objects to this interrogatory to the extent it seeks information that is protected from disclosure by the attorney-client privilege, the work product doctrine or the joint defense privilege because the information was prepared in anticipation of litigation or because it discloses mental impressions,

conclusions, opinions or legal theories of Savant's attorneys or is otherwise protected from disclosure under applicable privileges, law or rules. Savant also objects to this interrogatory to the extent it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

**Interrogatory No. 17(1)**: Savant did not seek to obtain a registration for the copyright registered work having Federal Copyright Registration No. VA17428963.

**Interrogatory No. 17(2)**: Savant did not seek to obtain a registration for the copyright registered work having Federal Copyright Registration No. VA17428966.

**Interrogatory No. 17(3)**: Savant did not seek to obtain a registration for the copyright registered work having Federal Copyright Registration No. VA17428968.

**Interrogatory No. 17(4)**: Savant has neither right to nor ownership of the copyright registered work having Federal Copyright Registration No. VA17428963, and as such cannot identify any knowledgeable individual about the decision to register said work.

**Interrogatory No. 17(5)**: Savant has neither right to nor ownership of the copyright registered work having Federal Copyright Registration No. VA17428966, and as such cannot identify any knowledgeable individual about the decision to register said work.

**Interrogatory No. 17(6)**: Savant has neither right to nor ownership of the copyright registered work having Federal Copyright Registration No. VA17428968, and as such cannot identify any knowledgeable individual about the decision to register said work.

**Interrogatory No. 18:**

Describe with particularity each and all of Your efforts to sell, license, commercialize or monetize in any way the copyright registered works having Federal Copyright Registration Nos. VA17428963, VA17428966 and VA17428968 and identify any and all licensees of any of the copyrighted works.

**Answer to Interrogatory No. 18:**

In addition to its General Objections, Savant specifically objects to this interrogatory on the grounds that it is six interrogatories in the guise of one. As such, Savant will treat this interrogatory as six separate interrogatories under Rule 33 of the Federal Rules of Civil Procedure and count it as six against the total number permitted by the Court. Savant also objects to this interrogatory to the extent it seeks information that is protected from disclosure by the attorney-client privilege, the work product doctrine or the joint defense privilege because the information was prepared in anticipation of litigation or because it discloses mental impressions, conclusions, opinions or legal theories of Savant's attorneys or is otherwise protected from disclosure under applicable privileges, law or rules. Savant also objects to this interrogatory to the extent it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

**Interrogatory No. 18(1)**: Savant has neither right to nor ownership of the copyright registered work having Federal Copyright Registration No. VA17428963, and as such has not sought to sell, license, commercialize or monetize said work.

**Interrogatory No. 18(2)**: Savant has neither right to nor ownership of the copyright registered work having Federal Copyright Registration No. VA17428966, and as such has not sought to sell, license, commercialize or monetize said work.

**Interrogatory No. 18(3)**: Savant has neither right to nor ownership of the copyright registered work having Federal Copyright Registration No. VA17428968, and as such has not sought to sell, license, commercialize or monetize said work.

**Interrogatory No. 18(4)**: Savant has neither right to nor ownership of the copyright registered work having Federal Copyright Registration No. VA17428963, and as such cannot identify any licensees to said work.

**Interrogatory No. 18(5)**: Savant has neither right to nor ownership of the copyright registered work having Federal Copyright Registration No. VA17428966, and as such cannot identify any licensees to said work.

**Interrogatory No. 18(6)**: Savant has neither right to nor ownership of the copyright registered work having Federal Copyright Registration No. VA17428968, and as such cannot identify any licensees to said work.

**Interrogatory No. 19:**

Describe with particularity Your efforts to value each of the copyright registered works having Federal Copyright Registration Nos. VA17428963, VA17428966 and VA17428968 and identify Your current valuation of each copyrighted work and the specific factual basis for Your valuation.

**Answer to Interrogatory No. 19:**

In addition to its General Objections, Savant specifically objects to this interrogatory on the grounds that it is six interrogatories in the guise of one. As such, Savant will treat this interrogatory as six separate interrogatories under Rule 33 of the Federal Rules of Civil Procedure and count it as six against the total number permitted by the Court. Savant also objects to this interrogatory to the extent it seeks information that is protected from disclosure by the attorney-client privilege, the work product doctrine or the joint defense privilege because the information was prepared in anticipation of litigation or because it discloses mental impressions, conclusions, opinions or legal theories of Savant's attorneys or is otherwise protected from disclosure under applicable privileges, law or rules. Savant also objects to this interrogatory as premature to the extent it seeks information that is more appropriately sought from an expert. Savant also objects to this interrogatory to the extent it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

**Interrogatory No. 19(1)**: Savant has neither right to nor ownership of the copyright registered work having Federal Copyright Registration No. VA17428963, and as such has not made any efforts to value said work.

**Interrogatory No. 19(2)**: Savant has neither right to nor ownership of the copyright registered work having Federal Copyright Registration No. VA17428966, and as such has not made any efforts to value said work.

**Interrogatory No. 19(3)**: Savant has neither right to nor ownership of the copyright registered work having Federal Copyright Registration No. VA17428968, and as such has not made any efforts to value said work.

**Interrogatory No. 19(4)**: Savant has neither right to nor ownership of the copyright registered work having Federal Copyright Registration No. VA17428963, and as such does not have a current valuation for said work.

**Interrogatory No. 19(5)**: Savant has neither right to nor ownership of the copyright registered work having Federal Copyright Registration No. VA17428966, and as such does not have a current valuation for said work.

**Interrogatory No. 19(6)**: Savant has neither right to nor ownership of the copyright registered work having Federal Copyright Registration No. VA17428968, and as such does not have a current valuation for said work.

**Interrogatory No. 20:**

Describe with particularity the current and potential market for the copyright registered works having Federal Copyright Registration Nos. VA17428963, VA17428966 and VA17428968 and provide the specific factual bases for your understanding.

**Answer to Interrogatory No. 20:**

In addition to its General Objections, Savant specifically objects to this interrogatory on the grounds that it is premature to the extent it seeks information that is more appropriately sought from an expert. Savant also objects to this interrogatory to the extent it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense

asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Savant has neither right to nor ownership of the copyright registered works having Federal Copyright Registration Nos. VA17428963, VA17428966 and VA17428968, and as such is not aware of the current and potential markets for said works.

**Interrogatory No. 21:**

Identify with particularity all facts supporting Savant's claim in Paragraph 64 of the Amended Complaint that it has suffered "actual damages, including lost prospective and actual business, lost profits, loss of goodwill and damage to its reputation and the reputation of its products, and out-of-pocket and other related costs and expenses" and identify the scope of damages and relief to which Savant contends it is entitled.

**Answer to Interrogatory No. 21:**

In addition to its General Objections, Savant specifically objects to this interrogatory on the grounds that it is premature to the extent it seeks information that is more appropriately sought from an expert.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

The proposed Second Amended Complaint of Plaintiff Savant Systems, LLC, identifies Crestron's illegal actions, the nature of the damages caused to Savant and the relief to which Savant contends it is entitled. In addition, Crestron is equally aware of the depositions and other discovery taken to date. Savant will submit an expert declaration stating in detail at least certain

of Crestron's illegal actions and the damages caused to Savant, as well as the relief to which Savant is entitled, at the appropriate time.

Discovery remains open and facts continue to be uncovered. Savant will seasonably supplement its response to this interrogatory pursuant to the Federal Rules of Civil Procedure.

**Interrogatory No. 22:**

Identify with particularity any and all business or business opportunities lost by Savant as a result of Crestron's alleged acts of "unfair competition" as set forth in Paragraphs 39 - 43 in the Amended Complaint, and specify all facts You contend support Your claim that Crestron caused any such lost business and identify the five people most knowledgeable about any such purported loss.

**Answer to Interrogatory No. 22:**

In addition to its General Objections, Savant specifically objects to this interrogatory on the grounds that it is two interrogatories in the guise of one. As such, Savant will treat this interrogatory as two separate interrogatories under Rule 33 of the Federal Rules of Civil Procedure and count it as two against the total number permitted by the Court. Savant also objects to this interrogatory on the grounds that it is premature to the extent it seeks information that is more appropriately sought from an expert.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

**Interrogatory No. 22(1):** The proposed Second Amended Complaint of Plaintiff Savant Systems, LLC, identifies Crestron's acts of unfair competition. Crestron has also published other false and/or misleading documents, such as Crestron's Sales Guide: Touchpanels: Crestron vs. Apple® as seen attached hereto as Exhibit O. In addition, Crestron is equally aware of the depositions and other discovery taken to date. Savant will submit an expert declaration identifying in detail at least certain of Crestron's unfair competition.

**Interrogatory No. 22(2):** The individuals most knowledgeable about Crestron's unfair competition are, presumably, individuals currently or previously employed by Crestron,

including but not limited to at least Randy Klein, the Directors of Crestron's regional offices, and other individuals working for them. In addition, individuals currently or previously employed by Sapphire Marketing are knowledgeable about Crestron's unfair acts including, but not limited to, Marla Suttenberg. The individuals currently employed by Savant who are most knowledge about Crestron's unfair competition are Robert Madonna, Jim Carroll, Bruce Myers, Savant's regional sales managers and Savant's manufacturers' representatives.

Discovery remains open and facts continue to be uncovered. Savant will seasonably supplement its response to this interrogatory pursuant to the Federal Rules of Civil Procedure.

**Interrogatory No. 23:**

Explain with particularity the factual basis for your contention that Crestron has engaged in "bad faith" statements, as alleged in Paragraph 62 of the Amended Complaint.

**Answer to Interrogatory No. 23:**

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Crestron, and those acting on its behalf, made literally and/or implicitly false and/or misleading statements in the market regarding Savant's products, which products competed (and still compete) with Crestron's products. These statements include, but are not limited to, statements made in Crestron's "Comparison Guides" (attached to the proposed Second Amended Complaint as Exhibits E-H), "Sales Guides" (attached to the proposed Second Amended Complaint as Exhibits I and K), and e-News Bulletins (attached to the proposed Second Amended Complaint as Exhibit J), which Crestron knew to be literally and/or implicitly false

and/or misleading. Crestron has also published other false and/or misleading documents, such as Crestron's Sales Guide: Touchpanels: Crestron vs. Apple® as seen attached hereto as Exhibit O.

Crestron, and those acting on its behalf, made statements to dealers and other individuals in the market reflecting or similar to the literally and/or implicitly false and/or misleading statements found in Exhibits H-K of Savant's proposed Second Amended Complaint, and Exhibit O hereto, as well as the suggestion that Savant's products will not work in the homes of those families that do not only use Apple®-based computers and devices.

In addition, Crestron, and those acting on its behalf, sought to elicit bad and/or misleading press regarding Savant, such as seen in, *e.g.*, CRESTRON0024175-CRESTRON0024177.

Discovery remains open and facts continue to be uncovered. Savant will seasonably supplement its response to this interrogatory pursuant to the Federal Rules of Civil Procedure.

**Interrogatory No. 24:**

Identify with particularity any and all "other literally and/or implicitly false and misleading statements made by Crestron..." that You are aware of, as alleged in Paragraph 41 of the Amended Complaint.

**Answer to Interrogatory No. 24:**

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Crestron, and those acting on its behalf, made statements to dealers and other individuals in the market reflecting or similar to the literally and/or implicitly false and/or misleading statements found in Exhibits H-K of Savant's proposed Second Amended Complaint, and

Exhibit O hereto, as well as the suggestion that Savant's products will not work in the homes of those families that do not only use Apple®-based computers and devices. Crestron's Regional Directors and Regional Sales Managers were directed to spread these misstatements to the market.

In addition, Crestron, and those acting on its behalf, told dealers that Savant had no formal relationship with Apple.

In addition, Crestron, and those acting on its behalf, told dealers that Savant was going out of business or was likely to go out of business.

In addition, Crestron, and those acting on its behalf, sought to elicit bad and/or misleading press regarding Savant, such as seen in, *e.g.*, CRESTRON0024175-CRESTRON0024177.

Discovery remains open and facts continue to be uncovered. Savant will seasonably supplement its response to this interrogatory pursuant to the Federal Rules of Civil Procedure.

**Interrogatory No. 25:**

Identify each individual You are aware of that claims to be misled or deceived based on the alleged acts of "unfair competition" as set forth in Paragraphs 39 - 43 in the Amended Complaint, and for each such individual explain with particularity how You came to learn that each individual was misled or deceived and provide all last known contact information for each individual including full name, last known employer, physical address, all known email addresses and all known telephone numbers.

**Answer to Interrogatory No. 25:**

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Crestron, and those acting on its behalf, made literally and/or implicitly false and/or misleading statements in the market regarding Savant's products, which products competed (and still compete) with Crestron's products. These statements include, but are not limited to, statements made in Crestron's "Comparison Guides" (attached to the proposed Second Amended Complaint as Exhibits E-H), "Sales Guides" (attached to the proposed Second Amended Complaint as Exhibits I and K), and e-News Bulletins (attached to the proposed Second Amended Complaint as Exhibit J), which Crestron knew to be literally and/or implicitly false and/or misleading. Crestron has also published other false and/or misleading documents, such as Crestron's Sales Guide: Touchpanels: Crestron vs. Apple® as seen attached hereto as Exhibit O. The "Comparison Guides" and "Sales Guides" were distributed by Crestron to at least the individuals identified in Crestron's response to Savant's Interrogatory No. 12, as well as others known to Crestron. Pursuant to Federal Rule of Civil Procedure 33(d), Savant also identifies the following documents: SAVANT0090632, SAVANT0154071, SAVANT0444986-SAVANT0444987, SAVANT0643368, SAVANT0648547, SAVANT1624194.

In addition, statements reflecting or similar to the literally and/or implicitly false and/or misleading statements found in Exhibits H-K of Savant's proposed Second Amended Complaint were made to dealers as disclosed in Crestron's documents and during the depositions of dealers and Crestron personnel.

The individuals and entities who were misled or deceived by Crestron's acts of unfair competition include, but are not limited to, those individuals who received copies of the

Comparison Guides and Sales Guides as identified in Crestron's Response to Savant's Interrogatory No. 12, as well as other individuals and entities not identified in Crestron's Response but who also received copies of these Guides. *See, e.g.*, Depositions of Rob Christensen and David Sell. Other individuals also include those who were told similar information during meetings and events, including but not limited to CEDIA conferences.

Insofar as Crestron disseminated these Guides into the marketplace, Crestron is equally or more aware of the full name, last employer, physical address, all email addresses and all telephone numbers of the recipients.

In addition, these Guides were not necessarily maintained in confidence by the individuals and entities to whom they were sent by Crestron. Therefore, others in the industry might have also received and been deceived by them.

In addition, Crestron, and those acting on its behalf, sought to elicit bad and/or misleading press regarding Savant, such as seen in, *e.g.*, CRESTRON0024175-CRESTRON0024177.

Discovery remains open and facts continue to be uncovered. Savant will seasonably supplement its response to this interrogatory pursuant to the Federal Rules of Civil Procedure.

**Interrogatory No. 26:**

Identify all documents and communications, including all recipients of such documents or parties to such communications, to whom Crestron asserted that "only Crestron has an exclusive relationship with Apple," as alleged in Paragraph 39(c) of the Amended Complaint.

**Answer to Interrogatory No. 26:**

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following: During trade shows, dealers informed individuals at Savant that individuals made such statements on behalf of Crestron at such trade shows.

**Interrogatory No. 27:**

Identify all reasons supporting the contention, in paragraph 40(b) of the Amended Complaint, why the report in the CE Pro article published on September 15, 2010 that Savant's iPhone and iPad apps had compatibility issues with Apple's iOS4.l release was erroneous.

**Answer to Interrogatory No. 27:**

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

As is evident, Crestron intentionally contacted bloggers, tweeters and others to push a false impression that Savant's applications would not work on Apple's iOS4.1. *See, e.g.*, CRESTRON0024175-CRESTRON0024177.

As is Apple's standard practice, Savant—like other developers and programmers—was provided with Beta versions of Apple's iOS4.1 software. Savant extensively tested these Beta versions and confirmed that they were interoperable with Savant's hardware and software. However, the final (*i.e.*, released) version of any software as complex as an operating system, such as iOS4.1, will almost always be slightly different from the last Beta provided to developers and programmers. As such, in an abundance of caution, Savant issued a press release notifying its customers that there had not been the opportunity to "evaluate this release," *i.e.*, the final

release. Indeed, so far as Savant is aware, no one outside of Apple was provided with the final release until it was released to the public.

Savant's press release was issued as a precautionary measure. So far as Savant is aware, there were no issues caused by the release of iOS4.1 with respect to Savant's hardware and software; in fact, so far as Savant is aware, not a single customer experienced a problem with respect to Savant's hardware and software upon upgrading to iOS4.1 at any time.

The CE Pro article published on September 15, 2010, gave the false and/or misleading general impression that the release of iOS4.1 caught Savant entirely unaware and caused problems with Savant's hardware and/or software. In addition, it included at least the following specific false and/or misleading statements:

"**Evidently, Steve Jobs didn't give home automation developers a heads up on the new iOS.**" This statement is false and/or misleading. Savant was made aware of the new iOS and was provided with several Beta versions before the final version was released to the public.

"**'The problem I see is that Apple does not release any information on any of their changes, and just has a "buyer beware" attitude to the developers' says Jack Goldberg . . . .**" This statement is false and/or misleading. Developers, including Savant, were made aware of the new iOS and were provided with several Beta versions before the final version was released to the public.

"**Goldberg is not just a small, isolated developer feeling the pain of Apple's folly.**" This statement is false and/or misleading. It gives the false and/or misleading impression that the problems encountered by Mr. Goldberg were similar to any problems encountered by Savant, which they were not.

“**Even Savant, which has a close relationship with Apple, must re-think its software with every Steve Jobs whim.**” This statement is false and/or misleading. The Apple iOS was not revised “with every Steve Jobs whim,” nor did Savant need to re-think its software (nor even necessarily revise it) every time a new iOS was released.

**Interrogatory No. 28:**

Identify, for each of the product features set forth in 40(c) of your Amended Complaint, whether Savant’s products provided that feature as of the date that the document included as Exhibit K to your Amended complaint, and include in your responses the identity of all documents that support Savant’s response.

**Answer to Interrogatory No. 28:**

In addition to its General Objections, Savant specifically objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information. Savant also objects to this interrogatory as seeking information beyond that which is required by the Federal Rules of Civil Procedure and the Local Rules.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

**Interrogatory No. 28(1)**: Attached hereto as Exhibit K is a corrected copy of the Crestron Sales Guide: Total Home Control: Crestron vs. Savant, identifying the features found in Savant’s products as of Spring 2010. In addition, the suggestion that Savant’s products lacked the “Xpanel” feature is misleading, insofar as the suggestion lacked “On-screen Control”

because "No PIP or multi-window" is misleading. Savant's OSD was and is far advanced beyond PIP (*i.e.*, picture-in-picture), such as the ability to overlay control graphics on live video, and so there was never a need to develop it. In other words, it is an irrelevant feature in light of the other features and capabilities of Savant's systems and products.

**Interrogatory No. 28(2)**: Savant objects to this interrogatory on the grounds that it seeks the identity of "all" documents that support Savant's response to Interrogatory No. 28(1). Savant's products included the identified features, as can be established during the deposition of an appropriate Savant representative. In addition, pursuant to Federal Rule of Civil Procedure 33(d), Savant hereby identifies the following documents: SAVANT0000691-SAVANT0000694, SAVANT0008424-SAVANT0008431, SAVANT0020373-SAVANT0020374, SAVANT0020391-SAVANT002395, SAVANT0020338-SAVANT0020341, SAVANT0033551-SAVANT0033552, SAVANT0033566-SAVANT0033567, SAVANT0033590- SAVANT0033591, SAVANT0436259-SAVANT0436262.

**<u>Interrogatory No. 29:</u>**

Identify all statements contained in the product comparison charts in the Comparison Guides attached as Exhibits E-H of your Amended Complaint, if any, that you allege were false and misleading as of the time that those Comparison Guides were created, and describe the basis for your belief that such comparisons were false at the time they were made.

**<u>Answer to Interrogatory No. 29:</u>**

In addition to its General Objections, Savant specifically objects to this interrogatory on the grounds that it is eight interrogatories in the guise of one. As such, Savant will treat this interrogatory as eight separate interrogatories under Rule 33 of the Federal Rules of Civil

Procedure and count it as eight against the total number permitted by the Court. Savant also objects to this interrogatory to the extent it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

**Interrogatory No. 29(1)**: Attached hereto as Exhibit E is a corrected copy of the Crestron Comparison Guide: Multi-Room/Surround Sound: Crestron vs. Savant, identifying the features found in Savant's products as of Spring 2010.

**Interrogatory No. 29(2)**: The basis for Savant's belief that the comparisons found in Exhibit E were false is that Savant's products in fact had at least certain of the omitted features as identified by the marks on Exhibit E. In addition, the suggestion that Savant's products lacked the "Xpanel" feature is misleading, insofar as Xpanel is a Crestron product and Savant's products include the equivalent feature even if it cannot be termed "Xpanel." In addition, other statements, such as "Crestron Integration Ready (hundreds of Crestron devices)" are misleading, insofar as they are Crestron-specific and cannot be "compared."

**Interrogatory No. 29(3)**: Attached hereto as Exhibit F is a corrected copy of the Crestron Comparison Guide: In-Wall Touch Panel Control System: Crestron vs. Savant, identifying the features found in Savant's products as of Spring 2010.

**Interrogatory No. 29(4)**: The basis for Savant's belief that the comparisons found in Exhibit F were false is that Savant's products in fact had at least certain of the omitted features as identified by the marks on Exhibit F. In addition, the suggestion that Savant's products lacked the "Xpanel" feature is misleading, insofar as Xpanel is a Crestron product and Savant's

products include the equivalent feature even if it cannot be termed “Xpanel.” In addition, other statements, such as “Crestron Integration Ready (hundreds of Crestron devices)” are misleading, insofar as they are Crestron-specific and cannot be “compared.”

**Interrogatory No. 29(5)**: Attached hereto as Exhibit G is a corrected copy of the Crestron Comparison Guide: Wireless Control System: Crestron vs. Savant, identifying the features found in Savant’s products as of Spring 2010.

**Interrogatory No. 29(6)**: The basis for Savant’s belief that the comparisons found in Exhibit G were false is that Savant’s products in fact had at least certain of the omitted features as identified by the marks on Exhibit G. In addition, the suggestion that Savant’s products lacked the “Xpanel” feature is misleading, insofar as Xpanel is a Crestron product and Savant’s products include the equivalent feature even if it cannot be termed “Xpanel.” In addition, other statements, such as “Crestron Integration Ready (hundreds of Crestron devices)” are misleading, insofar as they are Crestron-specific and cannot be “compared.”

**Interrogatory No. 29(7)**: Attached hereto as Exhibit H is a corrected copy of the Crestron Comparison Guide: Wireless Interactive Control System: Crestron vs. Savant, identifying the features found in Savant’s products as of Spring 2010.

**Interrogatory No. 29(8)**: The basis for Savant’s belief that the comparisons found in Exhibit H were false is that Savant’s products in fact had at least certain of the omitted features as identified by the marks on Exhibit H. In addition, the suggestion that Savant’s products lacked the “Xpanel” feature is misleading, insofar as Xpanel is a Crestron product and Savant’s products include the equivalent feature even if it cannot be termed “Xpanel.” In addition, other statements, such as “Crestron Integration Ready (hundreds of Crestron devices)” are misleading, insofar as they are Crestron-specific and cannot be “compared.”

**Interrogatory No. 30:**

Identify the date, according to Savant's initial business plan, by which Savant anticipated that it would begin to bring its products to the market for sale to end users.

**Answer to Interrogatory No. 30:**

In addition to its General Objections, Savant specifically objects to this interrogatory on the grounds that the term "Savant's initial business plan" is vague and ambiguous; if Crestron has a document or set of documents which Crestron believes constitute "Savant's initial business plan," Crestron should identify said document or documents.

**Interrogatory No. 31:**

Identify and describe all technical, engineering, and design issues relating to the initial development of Savant's products, if any, that contributed, in whole or in part, to Savant's failure to bring its products to market by the launch date anticipated in Savant's initial business plan.

**Answer to Interrogatory No. 31:**

In addition to its General Objections, Savant specifically objects to this interrogatory on the grounds that the term "Savant's initial business plan" is vague and ambiguous; if Crestron has a document or set of documents which Crestron believes constitute "Savant's initial business plan," Crestron should identify said document or documents. Savant also objects on the ground that this interrogatory mischaracterizes what happened, including but not limited to the suggestion that Savant "fail[ed] to bring its products to market by the launch date anticipated in Savant's initial business plan."

**Interrogatory No. 32:**

Identify all reasons why, as of May 2008, Savant had delayed hiring employees to fill budgeted sales positions, as stated in Savant's internal reports.

**Answer to Interrogatory No. 32:**

In addition to its General Objections, Savant specifically objects to this interrogatory on the grounds that the phrase "Savant had delayed hiring employees to fill budgeted sales positions, as stated in Savant's internal reports" is vague and ambiguous; if Crestron has a document or set of documents which Crestron believes constitute "Savant's internal reports," Crestron should identify said document or documents. Savant also objects on the ground that this interrogatory mischaracterizes what happened, including but not limited to the suggestion that Savant "delayed hiring employees to fill budgeted sales positions, as stated in Savant's internal reports."

**Interrogatory No. 33:**

Identify the date by which Savant completed its hiring of employees to fill the sales positions that it had budgeted in its initial business plans.

**Answer to Interrogatory No. 33:**

In addition to its General Objections, Savant specifically objects to this interrogatory on the grounds that the term "Savant's initial business plan" is vague and ambiguous; if Crestron has a document or set of documents which Crestron believes constitute "Savant's initial business plan," Crestron should identify said document or documents.

**Interrogatory No. 34:**

Identify all reasons why, as stated in Savant's September 2008 internal report produced at SAVANT0131396, Savant's material expenses were over budget by $950,000.00 year-to-date in September 2008.

**Answer to Interrogatory No. 34:**

Without waiving and expressly reserving the foregoing General Objections, Savant states the following:

As stated in SAVANT0131396:

MATERIAL EXPENSE FOR INTERNAL ORDERS AND BETAS IS OVER BUDGET BY 950K FOR YEAR TO DATE.

The references to "INTERNAL ORDERS" and "BETAS" related to Alpha and Beta systems installed in the homes of employees who agreed to test and provide feedback on such systems in exchange for being provided with such systems at no monetary cost.

**Interrogatory No. 35:**

Identify all reasons why Savant made a business decision to increase its full year expense budget for the year 2009 by $2.6 Million over its original budget for that year, as indicated in Savant's April 2009 internal report produced at SAVANT0178734.

**Answer to Interrogatory No. 35:**

Without waiving and expressly reserving the foregoing General Objections, Savant states the following:

As stated in SAVANT0178734:

FULL YEAR OPERATING EXPENSE BUDGET INCREASED BY 2.6M.
BUDGET INCREASED DUE TO:

> SALARIES AND BENEFITS INCREASED BY 800K DUE TO AVIX EMPLOYEES COMING OVER AND THREE NEW HIRES
>
> ENGINEERING EXPENSE INCREASED BY 200K DUE TO MATERIAL EXPENSE AND INTERNAL ORDERS FOR TEST AND PROFESSIONAL SERVICES
>
> SALES AND MARKETING INCREASED BY 800K DUE TO DEALER CONFERENCE (325K) AND CEDIA(425K).
>
> TRAVEL EXPENSE INCREASED BY 400K DUE TO PROFESSIONAL SERVICES EXPECTED TRAVEL

The reference to “AVIX” and its employees related to the hiring of three new Savant employees who were hired from Avix.

The reference to “INTERNAL ORDERS FOR TEST AND PROFESSIONAL SERVICES” related to Alpha and Beta systems installed in the homes of employees who agreed to test and provide feedback on such systems in exchange for being provided with such systems at no monetary cost.

The reference to “DEALER CONFERENCE” and “CEDIA” related to a dealer conference and a CEDIA conference that had not been forecast in an earlier budget.

The reference to “PROFESSIONAL SERVICES” related to the Professional Services Group that was started during the fiscal year, which group required additional funds for travel.

The remaining $400,000 of the $2,600,000 was for miscellaneous expenses that were too small to identify in SAVANT0178734.

**Interrogatory No. 36:**

Identify all incentives, gifts, free product, or any other benefits that were provided to employees of Apple, Inc. by Savant, including the identity of the recipient and the reason why such benefits were conferred.

**Answer to Interrogatory No. 36:**

In addition to its General Objections, Savant specifically objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Savant provided no special "incentives, gifts, free product, or any other benefits," as Savant understands these terms, to employees of Apple. As with its own employees and certain other individuals in the industry, Savant installed Beta systems in the homes of a small number of Apple employees who agreed to test and provide feedback on such systems in exchange for being provided with such systems. Apple employees were selected to participate in this program because they are particularly knowledgeable about Apple-based systems and can therefore provide knowledgeable feedback. Pursuant to the usual commercial practice, these systems were provided at no monetary cost; but, as just noted, they were only provided to individuals who agreed to provide useful feedback to Savant and allow Savant access to their homes. As such, it was an exchange for services rendered.

Apple employees are also permitted to participate in Savant's "Friends of the Industry" program, as are employees of other manufacturers, business partners, associates and dealers. This program provides all participants with a discount of up to approximately 20% on products purchased from Savant.

Dated: January 10, 2013

Respectfully submitted,

SAVANT SYSTEMS, LLC
By Its Attorneys,

/s/ Aaron S. Jacobs
Thomas C. O'Konski BBO# 378265
Martin J. O'Donnell BBO# 377475
Michael E. Attaya BBO#548297
Aaron S. Jacobs BBO# 677545
William J. Mostyn IV BBO# 678869
CESARI and MCKENNA, LLP
88 Black Falcon Avenue
Boston, MA 02210
(617) 951-2500

**VERIFICATION OF INTERROGATORY ANSWERS**

I, James Carroll, am E.V.P. of Savant Systems, LLC, the Plaintiff in this action. I believe, based on reasonable inquiry, that the foregoing responses are true and correct to the best of my knowledge, information and belief.

I verify under penalty of perjury that the foregoing is true and correct.

[signature]

Executed on 5 day of ~~January,~~ Feb. 2012.

Certificate of Service

I hereby certify that this document(s) was served by e-mail with confirmation regular mail on:

Chong S. Park
John J. Kavanagh
Steptoe & Johnson LLP
1330 Connecticut Ave., N.W.
Washington, D.C. 20036-1795

Michael J. Pineault, Esq.
Clements & Pineault, LLP
24 Federal Street
Boston, MA 02110

On this 10th day of January, 2013.

/s/ Aaron S. Jacobs

# EXHIBIT E

CRESTRON®

# Comparison Guide

**Multi-Room/Surround Sound**
Crestron vs. Savant



CRESTRON



savant

## Savant Comparison Guide:

On the following page is a comparison between a Crestron System and a particular type of system recently "packaged" and specially priced by Savant. These systems have been packaged by Savant and are targeted for lower end smaller/startup types of projects. These comparisons are intended to illustrate in a simplified manner the main reasons why a Crestron System is better, and to show that overall we have more "check marks" than they do. When a system needs to grow larger than the types shown, Savant becomes very expensive.

- Savant is a startup company with no support network (have your dealer ask their Savant Rep to show them some large-scale successful Savant installations, or ask them how many customer/tech-support employees/locations they have?)
- For larger systems, using Savant is an integration nightmare requiring primary and secondary controllers, host servers, and separate touchpanel and keypad server/extender boxes…all done by Crestron in a single unit. This method of infrastructure adds hidden costs to your installation (for the units themselves, as well as the extra wiring/connectors, and labor), not to mention extra troubleshooting headaches due to their being the increased possibility for miswiring and connections to fail. Plus, when you are dealing with a project with multizones and many touchpanels and keypads, think about all the extra real-estate (i.e. where are you going to put all these extra boxes, power supplies, and wires?) and cost/labor required by a Savant system!
- Savant does not have any technology comparable to DigitalMedia
- Unlike what you may have been hearing from Apple Kool-Aid drinkers, Savant programming software and touchpanel graphics are very visually un-sophisticated
- Savant does not have products that offer a whole-house total solution via a single platform… no amplifiers, tuners, lighting, hvac, shade controllers, e-Control, etc.

**Remember, you can't be a Crestron Dealer and also sell Savant products!**

Crestron Electronics, Inc. 15 Volvo Drive | Rockleigh, NJ 07647

800.237.2041 | crestron.com

All brand names, product names and trademarks are the property of their respective owners. ©2009 Crestron Electronics, Inc.
03.27.09

CRESTRON®

# Comparison Guide

## Multi-Room/Surround Sound
Crestron vs. Savant

The Crestron System is lower cost, and yet includes amplifiers and tuners built into the package shown. With the Savant system, you would need to add-on separate expansion modules and/or 3rd party equipment to complete the system and be equal to the one shown by Crestron.


Crestron AMS-AIP and TPMC-8X


Savant Rosie System 2 and Rosie Touch 13

| Feature Comparison | Crestron | Savant |
|---|---|---|
| Serial Control Ports | ● | ● |
| IR Control Ports | ● | ● |
| Relay Ports | ● | ● |
| Digital Input Ports | ● | ● |
| Ethernet | ● | ● |
| Wireless Touchpanel | ● | ● |
| iPhone Control | ● | ● |
| Xpanel | ● | Equivalent Feature |
| HDMI Inputs | ● | ● |
| HDMI Output | ● | ● |
| Component/S-Video/Composite Inputs | ● | ● |
| Digital Audio Inputs | ● | ● |
| Analog Audio Inputs | ● | ✓ |
| Surround Sound Pre-Amp | ● | ● |
| Surround Sound Amplifiers (7 channels) | ● | |
| Amplified Audio Distribution | ● | |
| AM/FM Tuner Included | ● | |
| Optional XM and/or Sirius Tuners | ● | |
| Optional Zone Expansion Amplifiers | ● | |
| On-Screen Navigation | ● | ● |
| Built-in Video Processing | ● | ● |
| System integrated audio server | ● | ● |
| System Integrated video server | ● | ✓ |
| iTunes Integration | ● | ● |
| Integrated Ports for optional keypads and touchpanels (No additional intermediate hardware servers required) | ● | |
| Over 10,000 3rd party device drivers (FREE) | ● | |
| Programming and Configuration software (FREE) | ● | |

| Key Touchpanel Features | Crestron | Savant |
|---|---|---|
| Stylish and compact ergonomic design | ● | ✓ |
| Onboard PC applications for Web browsing, streaming media, conferencing, VoIP, & remote computer access | ● | |
| Built-in biometric fingerprint scanner | ● | |
| External "booster" battery pack available | ● | |
| Optional desktop and wall mount docking stations | ● | ✓ |

| Expansion Options | Crestron | Savant |
|---|---|---|
| Touchpanels | ● | ● |
| Keypads | ● | ● |
| Shade controller | ● | ✓ |
| Scheduling and management software | ● | |
| Single platform lighting solution | ● | ✓ |
| Single platform HVAC Control | ● | ✓ |
| Crestron Integration Ready (hundreds of Crestron devices) | ● | |
| Digital Media HDMI switching and distribution solution with HDCP support | ● | ✓ |
| Amplifiers & Expansion Amplifiers | ● | ✓ |
| SDK available for cross platform compatibility | ● | |

| Pricing | Crestron | | Savant | |
|---|---|---|---|---|
| Control system | AMS-AIP | $5500 | LCC-2100 | $5894 |
| Wireless touchpanel | TPMC-8X | $1900 | WTP-113 | $3157 |
| Touchpanel dock | TPMC-8X-DS | $250 | WDB-100B | $760 |
| 8GB iPod touch | | $230 (by others) | WIA-4000 | $241 |
| Apple iPhone app | Crestron Mobile | $0 | Rosie App | $199 |
| iServer | CEN-ISERVER | $650 | | server included |
| Mobile device license | | $0 | MDL-1000 | $526 |
| 7 Channel surround amplifier | | included | | $2000 (estimated) |
| 4 Zone amplifier | | included | | $800 (estimated) |
| WiFi acces point | CEN-WAP | $250 | | $75 (by others) |
| **Total:** | | **$9030** | | **Special Stimulus Package: $9200 (Actual pricing $13652)** |

Crestron Electronics, Inc. 15 Volvo Drive | Rockleigh, NJ 07647

800.237.2041 | crestron.com

All brand names, product names and trademarks are the property of their respective owners. ©2009 Crestron Electronics, Inc.
03.27.09

# EXHIBIT F

# Comparison Guide

**In-Wall Touchpanel Control System**
Crestron vs. Savant







## Savant Comparison Guide:

On the following page is a comparison between a Crestron System and a particular type of system recently "packaged" and specially priced by Savant. These systems have been packaged by Savant and are targeted for lower end smaller/startup types of projects. These comparisons are intended to illustrate in a simplified manner the main reasons why a Crestron System is better, and to show that overall we have more "check marks" than they do. When a system needs to grow larger than the types shown, Savant becomes very expensive.

- Savant is a startup company with no support network (have your dealer ask their Savant Rep to show them some large-scale successful Savant installations, or ask them how many customer/tech-support employees/locations they have?)
- For larger systems, using Savant is an integration nightmare requiring primary and secondary controllers, host servers, and separate touchpanel and keypad server/extender boxes…all done by Crestron in a single unit. This method of infrastructure adds hidden costs to your installation (for the units themselves, as well as the extra wiring/connectors, and labor), not to mention extra troubleshooting headaches due to their being the increased possibility for miswiring and connections to fail. Plus, when you are dealing with a project with multizones and many touchpanels and keypads, think about all the extra real-estate (i.e. where are you going to put all these extra boxes, power supplies, and wires?) and cost/labor required by a Savant system!
- Savant does not have any technology comparable to DigitalMedia
- Unlike what you may have been hearing from Apple Kool-Aid drinkers, Savant programming software and touchpanel graphics are very visually un-sophisticated
- Savant does not have products that offer a whole-house total solution via a single platform… no amplifiers, tuners, lighting, hvac, shade controllers, e-Control, etc.

**Remember, you can't be a Crestron Dealer and also sell Savant products!**



All brand names, product names and trademarks are the property of their respective owners. ©2009 Crestron Electronics, Inc.
03.27.09

CRESTRON®

# Comparison Guide

## In-Wall Touchpanel Control System
Crestron vs. Savant

Crestron touchpanels do not require a separate server unit. Each Savant Touchpanel (and/or keypad) requires a separate server/extender "box" to be installed/wired between it and their main Control Processor. The unit required for touchpanels is the ITS 1001, and the unit required for keypads is the TKX-2101. This method of infrastructure adds hidden costs to your installation (for the units themselves, as well as the extra wiring/ connectors, and labor), not to mention extra troubleshooting headaches due to their being the increased possibility for miswiring and connections to fail. Plus, when you are dealing with a project with multizones and many touchpanels and keypads, think about all the extra real-estate (i.e. where are you going to put all these extra boxes) and cost/labor required by a Savant system!



Crestron AV2, TPMC-8L and MLX-2



Savant In-Wall Touchpanel, Controller and Remote

| Feature Comparison | Crestron | Savant |
|---|---|---|
| Integrated Ports for optional keypads and touchpanels (No additional intermediate hardware server required) | ● | |
| Serial Control Ports | ● | ● |
| IR Control Ports | ● | ● |
| Relay Ports | ● | ● |
| Digital Input Ports | ● | ● |
| Ethernet | ● | ● |
| Wireless 2-Way Remote with complete system control | ● | |
| Wireless 1-way RF Remote | | ● |
| iPhone Control | ● | ● |
| Xpanel | ● | Equivalent Feature |
| In-Wall Touchpanel | ● | ● |
| Many Touchpanel mounting options | ● | |
| Over 10,000 3rd party device drivers (FREE) | ● | |
| Programming and Configuration software (FREE) | ● | |

| Key Touchpanel Features | Crestron | Savant |
|---|---|---|
| Touchpanel Custom button and faceplate engraving | ● | |
| Many Touchpanel mounting options | ● | ✓ |
| Onboard PC applications for web browsing, streaming media, confrencing, VoIP, and remote computer access | ● | |
| Built-in biometric fingerprint scanner and light sensor | ● | |

| Expansion Options | Crestron | Savant |
|---|---|---|
| Touchpanels | ● | ● |
| Keypads | ● | ● |
| Shade controller | ● | ✓ |
| Scheduling and management software | ● | |
| Single platform lighting control | ● | ✓ |
| Single platform HVAC Control | ● | ✓ |
| Crestron Integration Ready (hundreds of Crestron devices) | ● | |
| Digital Media HDMI switching and distribution solution with HDCP support | ● | ✓ |
| Amplifiers | ● | ✓ |
| SDKs available for cross platform compatibility | ● | |

| Pricing | Crestron | | Savant | |
|---|---|---|---|---|
| Touchpanel server | | not required | ITC-1001 | $894 |
| In-wall touchpanel | TPMC-8L | $2000 | ITP-109X | $1421 |
| System controller | AV2 | $1750 | RSC-0025 | $1000 |
| Remote | MLX-2 | $375 (two-way) | RTR-1000 | $210 (one-way) |
| RF receiver | CEN-RFGW-EX | $225 | RFD-1000 | $31 |
| 8GB iPod touch | | $230 (by others) | WIA-4000 | $241 |
| Apple iPhone app | Crestron Mobile | $0 | Rosie App | $199 |
| Mobile device license | | $0 | MDL-1000 | $526 |
| WiFi access point | CEN-WAP | $250 | | $75 (by others) |
| **Total:** | | **$4830** | | **Special Stimulus Package: $4050 (Actual pricing $4597)** |



All brand names, product names and trademarks are the property of their respective owners. ©2009 Crestron Electronics, Inc.
03.27.09

# EXHIBIT G

CRESTRON

# Comparison Guide

**Wireless Control System**
Crestron vs. Savant



CRESTRON



savant

## Savant Comparison Guide:

On the following page is a comparison between a Crestron System and a particular type of system recently "packaged" and specially priced by Savant. These systems have been packaged by Savant and are targeted for lower end smaller/startup types of projects. These comparisons are intended to illustrate in a simplified manner the main reasons why a Crestron System is better, and to show that overall we have more "check marks" than they do. When a system needs to grow larger than the types shown, Savant becomes very expensive.

- Savant is a startup company with no support network (have your dealer ask their Savant Rep to show them some large-scale successful Savant installations, or ask them how many customer/tech-support employees/locations they have?)
- For larger systems, using Savant is an integration nightmare requiring primary and secondary controllers, host servers, and separate touchpanel and keypad server/extender boxes…all done by Crestron in a single unit. This method of infrastructure adds hidden costs to your installation (for the units themselves, as well as the extra wiring/connectors, and labor), not to mention extra troubleshooting headaches due to their being the increased possibility for miswiring and connections to fail. Plus, when you are dealing with a project with multizones and many touchpanels and keypads, think about all the extra real-estate (i.e. where are you going to put all these extra boxes, power supplies, and wires?) and cost/labor required by a Savant system!
- Savant does not have any technology comparable to DigitalMedia
- Unlike what you may have been hearing from Apple Kool-Aid drinkers, Savant programming software and touchpanel graphics are very visually un-sophisticated
- Savant does not have products that offer a whole-house total solution via a single platform… no amplifiers, tuners, lighting, hvac, shade controllers, e-Control, etc.

**Remember, you can't be a Crestron Dealer and also sell Savant products!**



All brand names, product names and trademarks are the property of their respective owners. ©2009 Crestron Electronics, Inc.
03.27.09

# Comparison Guide

## Wireless Control System
Crestron vs. Savant

The Crestron System includes a fully bi-directional Handheld 2-Way Wireless Remote, including all text and feedback, whereas the handheld remote provided by the Savant System is 1-Way wireless only, with no feedback.



Crestron AV2 System and MLX-2



Savant WCS-1000 and Remote

| Feature Comparison | Crestron | Savant |
|---|---|---|
| Serial Control Ports | ● | ● |
| IR Control Ports | ● | ● |
| Relay Ports | ● | ● |
| Digital Input Ports | ● | ● |
| Ethernet | ● | ● |
| Wireless 1-way RF Remote | | ● |
| Wireless 2-way RF Remote with LCD display for feedback | ● | |
| iPhone Control | ● | ● |
| Xpanel | ● | Equivalent Feature |
| Integrated Ports for optional keypads and touchpanels (No additional intermediate hardware servers required) | ● | |
| Over 10,000 3rd party device drivers (FREE) | ● | |
| Programming and Configuration software (FREE) | ● | |

| Expansion Options | Crestron | Savant |
|---|---|---|
| Touchpanels | ● | ● |
| Keypads | ● | ● |
| Shade controller | ● | ✓ |
| Scheduling and management software | ● | |
| Single platform lighting solution | ● | ✓ |
| Single platform HVAC Control | ● | ✓ |
| Crestron Integration Ready (hundreds of Crestron devices) | ● | |
| Digital Media HDMI switching and distribution solution with HDCP support | ● | ✓ |
| Amplifiers | ● | ✓ |
| SDKs available for cross platform compatibility | ● | |

| Pricing | Crestron | | Savant | |
|---|---|---|---|---|
| Wireless control system | AV2 | $2000 | WCS-1000 | $1842 |
| Remote | MLX-2 | $375 (two-way) | RTR-1000 | $210 (one-way) |
| RF receiver | CEN-RFGW-EX | $225 | RFD-1000 | $31 |
| 8GB iPod touch | | $230 (by others) | WIA-4000 | $241 |
| Apple iPhone app | Crestron Mobile | $0 | Rosie App | $199 |
| Mobile device license | | $0 | MDL-1000 | $526 |
| **Total:** | | **$2830** | **Special Stimulus Package: $2200 (Actual pricing $3049)** | |

Crestron Electronics, Inc. 15 Volvo Drive | Rockleigh, NJ 07647

800.237.2041 | crestron.com

All brand names, product names and trademarks are the property of their respective owners. ©2009 Crestron Electronics, Inc.
03.27.09

EXHIBIT H

CRESTRON

# Comparison Guide

**Wireless Interactive Control System**

Crestron vs. Savant







## Savant Comparison Guide:

On the following page is a comparison between a Crestron System and a particular type of system recently "packaged" and specially priced by Savant. These systems have been packaged by Savant and are targeted for lower end smaller/startup types of projects. These comparisons are intended to illustrate in a simplified manner the main reasons why a Crestron System is better, and to show that overall we have more "check marks" than they do. When a system needs to grow larger than the types shown, Savant becomes very expensive.

- Savant is a startup company with no support network (have your dealer ask their Savant Rep to show them some large-scale successful Savant installations, or ask them how many customer/tech-support employees/locations they have?)
- For larger systems, using Savant is an integration nightmare requiring primary and secondary controllers, host servers, and separate touchpanel and keypad server/extender boxes…all done by Crestron in a single unit. This method of infrastructure adds hidden costs to your installation (for the units themselves, as well as the extra wiring/connectors, and labor), not to mention extra troubleshooting headaches due to their being the increased possibility for miswiring and connections to fail. Plus, when you are dealing with a project with multizones and many touchpanels and keypads, think about all the extra real-estate (i.e. where are you going to put all these extra boxes, power supplies, and wires?) and cost/labor required by a Savant system!
- Savant does not have any technology comparable to DigitalMedia
- Unlike what you may have been hearing from Apple Kool-Aid drinkers, Savant programming software and touchpanel graphics are very visually un-sophisticated
- Savant does not have products that offer a whole-house total solution via a single platform… no amplifiers, tuners, lighting, hvac, shade controllers, e-Control, etc.

**Remember, you can't be a Crestron Dealer and also sell Savant products!**



All brand names, product names and trademarks are the property of their respective owners. ©2009 Crestron Electronics, Inc.
03.27.09

# Comparison Guide

**Wireless Interactive Control System**
Crestron vs. Savant

The Crestron solution includes a fully bidirectional/handheld touchpanel remote. With the Savant 1-way RF-Remote, the user is limited to relying on the on-screen display for all user control/feedback. This can be annoying when you are watching a movie, and you simply want to adjust the volume or lighting without the on-screen display always popping up over the video.



Crestron CP2E with TPMC-4XG-B



Savant OSD-1000

| Feature Comparison | Crestron | Savant |
|---|---|---|
| Serial Control Ports | ● | ● |
| IR Control Ports | ● | ● |
| Relay Ports | ● | ● |
| Digital Input Ports | ● | ● |
| Ethernet | ● | ● |
| Wireless 2-Way Remote with complete system control | ● | |
| Wireless 1-way RF Remote with on screen navigation | | ● |
| iPhone Control | ● | ● |
| Xpanel | ● | Equivalent Feature |
| Integrated Ports for optional keypads and touchpanels (No additional intermediate hardware servers required) | ● | |
| Over 10,000 3rd party device drivers (FREE) | ● | |
| Programming and Configuration software (FREE) | ● | |

| Expansion Options | Crestron | Savant |
|---|---|---|
| Touchpanels | ● | ● |
| Keypads | ● | ● |
| Shade controller | ● | ✓ |
| Scheduling and management software | ● | |
| Single platform lighting solution | ● | ✓ |
| Single platform HVAC control | ● | ✓ |
| Crestron Integration Ready (hundreds of Crestron devices) | ● | |
| Digital Media HDMI switching and distribution solution with HDCP support | ● | ✓ |
| Amplifiers | ● | ✓ |
| SDKs available for cross platform compatibility | ● | |

| Pricing | Crestron | | Savant | |
|---|---|---|---|---|
| Control system | AV2 | $1025 | WCS-1000 | $2000 |
| Remote | MLX-2 | $995 (two-way) | RTR-1000 | $210 (one-way) |
| RF receiver | CEN-RFGW-EX | $225 | RFD-1000 | $31 |
| 8GB iPod touch | | $230 (by others) | WIA-4000 | $241 |
| Apple iPhone app | Crestron Mobile | $0 | Rosie App | $199 |
| Mobile device license | | $0 | MDL-1000 | $526 |
| WiFi acces point | CEN-WAP | $250 | | $75 (by others) |
| **Total:** | | **$2500** | **Special Stimulus Package: $2350 (Actual pricing $3282)** | |



All brand names, product names and trademarks are the property of their respective owners. ©2009 Crestron Electronics, Inc.
03.27.09

# EXHIBIT I

# Sales Guide

**Total Home Control**
Crestron vs. Savant

Today, there are many start-up control system companies like Savant who promise a better solution than Crestron. When looked at critically, it is evident that Crestron is the only total end-to-end solution, offering products in all categories of home automation:

**Control | Audio Distribution | Video Distribution | Lighting | Climate | Security**

*"When you buy Savant, you buy Savant–a one-room storefront in Cape Cod–not Apple. When you buy Crestron, you buy 40+ years of industry leading experience, 57 worldwide offices, 24/7 technical support, the best touchpanels, digital video distribution, complete home control and more Apple integration than any other control systems manufacturer. You make the decision."*



| Apple® Features | Crestron | Savant |
|---|---|---|
| **iPhone® / iPod touch® / iPad™ Control**<br>Control entire home, including media, lights, climate & security, from any iPhone or iPod touch within home | ● | ● |
| **System Control from any Mac®, iPhone or iPod Touch Worldwide**<br>Control entire home from any Mac or Apple mobile device (XPanel for Mac, Crestron Mobile Pro®, Mobile Pro G) | ● | |
| **iPod® Integration**<br>Play music or watch videos stored on docked iPods around the home | ● | ● |
| **Sync iTunes library remotely**<br>Leave the iPod in the dock while it automatically gets media updates without connecting to a Mac or PC | ● | |
| **iTunes® Control on any Touchpanel**<br>Access entire iTunes collection on any touchpanel or TV throughout the home, view cover art and album info (metadata) | ● | ● |
| **Apple TV® Control on Touchpanel**<br>Access entire Apple TV collection on any touchpanel or TV throughout the home, view album and movie cover art and info | ● | |
| **Media Server Product with sync-to-iTunes capabilities**<br>Leverage all types of digital media content, including iTunes libraries, online streamed content, HD movies, HD video rentals | ● | Audio & Ripped CDs Only |



**IMPORTANT:**
***Savant has discontinued its line of touch panels.***

| User Interface Features | Crestron | Savant |
|---|---|---|
| **System Control via Touchpanel Powered by Flash®**<br>Control entire home from graphically-rich touchpanels; includes gesture navigation, animated objects, etc. (TPMC-V12/15) | ● | |
| **On-screen Control**<br>Control entire system from any display around the home, overlay graphics on HD video or view PIP (picture-in-picture) | ● | No PIP or multi-window |
| **Gesture Control**<br>Swipe the touchpanel for different system functions; available on both Touchpanels and iPad/iPhone | ● | No Touchpanels |
| **HD Touchpanels**<br>View HDMI content on touchpanel; transform touchpanel into an HDTV display (V-Panels™) | ● | |
| **Touchpanel with Integrated Graphics Engine**<br>Touchpanel and engine packaged in one condensed unit, uses less space and energy | ● | Requires Mac Mini for each touchpanel |


All brand names, product names and trademarks are the property of their respective owners. ©2010 Crestron Electronics, Inc.
08.10

# Sales Guide

## Total Home Control
Crestron vs. Savant



| AV Distribution Features | Crestron | Savant |
|---|---|---|
| **Surround Sound Processor**<br>Audiophile grade surround sound processing equipment, native system integration | ● | Non Professional/ Audiophile |
| **Surround Sound Amplification**<br>Audiophile grade surround sound amplification, native system integration | ● | |
| **Audio Distribution Products**<br>Full matrix audio distribution products for various sized systems | ● | ● |
| **Surround Sound Receiver**<br>High-end surround sound system with integrated amplifier, multiroom audio, and control system | ● | |
| **Video Distribution Products**<br>Full matrix video distribution products, ranging in size; transmit any video signal type to any display over CAT5 or Fiber | ● | HDMI over CAT5 extenders only |
| **HDMI w/HDCP Video Distribution**<br>Distribute protected content from Blu-ray discs and Macs with Mini DisplayPort | ● | |
| **Native Internet Radio Source**<br>Listen to thousands of streaming radio stations from around the globe. (ATC-AUDIONET) | ● | |








| Home Automation Features | Crestron | Savant |
|---|---|---|
| **Lighting Control Products**<br>Natively integrate whole-home lighting control | ● | |
| **Climate Control Products**<br>Natively integrate thermostats, humidistats, and a range of sensors for perfect climate throughout the home | ● | |
| **Security System Native Integration**<br>Ethernet based native security system integration (Sequel ST8) | ● | |
| **Menu-driven Configuration Software for System Setup**<br>Configure complete system using drag-and-drop, menu driven software, without programming | ● | ● |
| **Completely Customizable Touchpanel User Interfaces**<br>Ability to design from the ground-up a fully customized touchpanel or OSD | ● | |


All brand names, product names and trademarks are the property of their respective owners. ©2010 Crestron Electronics, Inc.
08.10

# EXHIBIT K

# Sales Guide

**Total Home Control**
Crestron vs. Savant

Today, there are many start-up control system companies like Savant who promise a better solution than Crestron. When looked at critically, it is evident that Crestron is the only total end-to-end solution, offering products in all categories of home automation: AV distribution, lighting control, climate control and security.

While Savant touts operating on a Mac® based platform, Crestron actually offers more integration with Apple products. In addition, Crestron pioneered the industry's only multi-format HD video distribution system, allowing seamless viewing of HDMI (w/ HDCP) content throughout the home. Its important to consider the various pieces of total-home automation when deciding on a control system manufacturer for a high-end home. Take a look at how Crestron excels in all areas of home automation, truly delivering a complete, scalable solution.



| Apple® Features | Crestron | Savant |
|---|---|---|
| **iPhone® / iPod touch® / iPad™ Control**<br>Control entire home, including media, lights, climate & security, from any iPhone or iPod touch within home or worldwide | ● | ● |
| **iPod® Integration**<br>Play music or watch videos stored on docked iPods around the home | ● | ● |
| **Sync iTunes library remotely**<br>Leave the iPod in the dock while it automatically gets media updates without connecting to a Mac or PC | ● | |
| **System Control from any Mac® Worldwide**<br>Control entire home from any Mac within home or worldwide | ● | ✓ |
| **iTunes® Control on any Touchpanel**<br>Access entire iTunes collection on any touchpanel or TV throughout the home, view cover art and album info (metadata) | ● | ● |
| **Apple TV® Control on Touchpanel**<br>Access entire Apple TV collection on any touchpanel or TV throughout the home, view album and movie cover art and info | ● | ✓ |
| **Media Server Product with sync-to-iTunes capabilities**<br>Leverage all types of digital media content, including iTunes libraries, online streamed content, HD movies, HD video rentals | ● | Audio & Ripped CDs Only |




| User Interface Features | Crestron | Savant |
|---|---|---|
| **System Control via Flash® Interface**<br>Control entire home from any computer within home or worldwide that can run Adobe® Flash® | ● | |
| **On-screen Control**<br>Control entire system from any display around the home, overlay graphics on HD video, PIP | ● | No PIP or multi-window ✓ |
| **Gesture Control**<br>Swipe the touchpanel for different system functions, similar to iPhone | ● | ● |
| **HD Touchpanels**<br>View HDMI content on touchpanel & transform into an HDTV display | ● | ✓ |
| **Touchpanel with Integrated Graphics Engine**<br>Touchpanel and engine packaged in one condensed unit, uses less space and energy | ● | ~~Requires extra box for each touchpanel~~ ✓ |


All brand names, product names and trademarks are the property of their respective owners. ©2010 Crestron Electronics, Inc.
04.10

CRESTRON

# Sales Guide

**Total Home Control**
Crestron vs. Savant





| AV Distribution Features | Crestron | Savant |
|---|---|---|
| **Surround Sound Processor**<br>Audiophile grade surround sound processing equipment, native system integration | ● | ● |
| **Surround Sound Amplification**<br>Audiophile grade surround sound amplification, native system integration | ● | |
| **Audio Distribution Products**<br>Full matrix audio distribution products for various sized systems | ● | ● |
| **Video Distribution Products**<br>Full matrix video distribution products, ranging in size, transmit any video signal type to any display over CAT5 or Fiber | ● | ~~HDMI over CAT5 extenders only~~ ✓ |
| **HDMI w/HDCP Video Distribution**<br>Distribute protected content from Blu-ray discs and Macs with Mini DisplayPort | ● | ✓ |








| Home Automation Features | Crestron | Savant |
|---|---|---|
| **Lighting Control Products**<br>Natively integrate centralized or distributed whole-home lighting control | ● | ✓ |
| **Climate Control Products**<br>Natively integrate thermostats, humidistats, and a range of sensors for perfect climate throughout the home | ● | ✓ |
| **Security System Native Integration**<br>Ethernet based native security system integration | ● | ~~Complex RS-232 systems only~~ ✓ |
| **Menu-driven Configuration Software for System Setup**<br>Configure complete system using drag-and-drop, menu driven software, without programming | ● | ● |
| **Completely Customizable Touchpanel User Interfaces**<br>Ability to design from the ground-up a fully customized touchpanel or OSD | ● | ✓ |


All brand names, product names and trademarks are the property of their respective owners. ©2010 Crestron Electronics, Inc.
04.10

# EXHIBIT O

CRESTRON

# Sales Guide

**Touchpanels**
Crestron vs. Apple®



## The Ultimate Touchpanels

For an end user, the touchpanel is the face of the automation system. As the gateway of total control, that touchpanel must instantly respond and satisfy each request. Over the past few decades, Crestron has defined and refined what the touchpanel is today. Throughout that learning process, valuable information has driven touchpanel technology to new heights, standardizing design elements that are now taken for granted.

## What Sets Crestron Touchpanels Apart

**Elegance.** Crestron touchpanels are designed with both beauty and performance in mind. Technology that resides in a home or boardroom should complement the décor and design of the space. As small appliances destined for daily use, Crestron touchpanels must look good.

**Performance.** Even with all their good looks, Crestron touchpanels are the control gateway for a user. Having to stand up to the demands of some top execs is part of the panel's job description. Constant connectivity and instant responsiveness are engineered into every Crestron panel.

**Robustness.** Not only technically robust, Crestron touchpanels are also physically robust. We believe that its OK to throw around your remote and it not break (within reason). A touchpanel is a workhorse that shouldn't require white-glove treatment.

**Clarity.** Years of real world experience has led Crestron to reduce ambient light reflections and diminish lingering fingerprints to improve touchpanel readability. A device with the word "touch" in its name shouldn't need a daily polish to identify where to touch next.

**Ergonomics.** Every touchpanel's shape and button placement is tactfully designed. Critical attention to materials and weighting makes it possible to hold a handheld touchpanel for extended periods without fatigue.



| Essential Touchpanel Features | Crestron | Apple |
|---|---|---|
| **Instant Connect**<br>When touched, panel immediately connects to control system | ● | |
| **Hard Buttons**<br>Control TV or other AV sources with custom-engraved tactile hard-buttons | ● | |
| **Rugged**<br>Stands up to daily abuse | ● | |
| **Glare and Smudge Free**<br>Resistant to the negative surrounding elements | ● | |
| **User Ergonomics**<br>Handled easily and comfortable for extend periods of use | ● | |


All brand names, product names and trademarks are the property of their respective owners. ©2010 Crestron Electronics, Inc.
04.10

CRESTRON

# Sales Guide

**Touchpanels**
Crestron vs. Apple®

## iPad™ User Experience

*You're sitting down with your family to watch a movie, and getting it going is a pleasure because of the magnificent screen on the iPad. The buttons are large, and the user interface is very intuitive. Fifteen to twenty minutes into the film, the phone rings.*

*You go to press the pause button, but realize all you're pressing is a black screen. The iPad went to sleep.* 2nd ring. *You press the "home" button on the iPad. The screen lights up. "Slide to unlock" greets you.* 3rd ring. *The iPad actually remembers that you were using Crestron Mobile™ (what a relief).* 4th ring. *Finally, you navigate to the pause button and the room goes silent.*

*As you reach over to the coffee table to pick up the phone, you realize that it says "missed call." In the back of your mind, all you hear is your dealer's voice saying, "You really ought to go with the TPMC-3X in the theater instead of the iPad. I think you're going to like the user experience much more."*

*Yeah, next time maybe I should listen to expert advice.*

## Apple Independent

The iPad is an excellent addition to a Crestron system. While embracing and supporting the adoption of the iPad in automation applications, Crestron realizes that it does not replace a touchpanel. That's why Crestron is committed to building the world's finest user interfaces dedicated to system control.

The advantage: with Crestron, you get the best of both worlds.




## Apple Dependent

Start-up control systems company Savant bases their system control on the iPhone, iPod touch, and now iPad. They have a limited selection of touchpanels, and depend on the iPod touch as their only small handheld 2-way device. The story above is applicable to Savant's implementation of the iPad, along with every other control systems manufacturer who offers a control app for Apple devices.




| iPad™ Pros | iPad™ Cons |
|---|---|
| Clean, sleek appearance | No hard buttons for repetitive tasks like volume and channel control |
| Ability to run different apps for different tasks | The touchpanel task is no longer top priority; becomes more like using XPanel on a PC or Mac |
| Device switches to standby mode for increased battery life | Device needs to "wake up," reopen the app, and reconnect to control system |
| Capacitive glass touchscreen | Prone to "accidental" button presses |
| High resolution glossy screen | Susceptible to screen glare from overhead lights and fingerprint smudges |


All brand names, product names and trademarks are the property of their respective owners. ©2010 Crestron Electronics, Inc.
04.10

# EXHIBIT 613

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SAVANT SYSTEMS, LLC<br><br>Plaintiff,<br><br>CRESTRON ELECTRONICS, INC.,<br><br>Defendant<br>v.<br><br>CRESTRON ELECTRONICS, INC.<br><br>Counterclaim-Plaintiff<br><br>SAVANT SYSTEMS, LLC,<br><br>Defendant | ) | Civil Action No. 10-cv-11622-EFH |

**PLAINTIFF SAVANT SYSTEMS, LLC'S FOURTH SUPPLEMENTAL OBJECTIONS AND RESPONSES TO CRESTRON ELECTRONICS, INC.'S FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Massachusetts, Plaintiff, Savant Systems, LLC ("Savant"), provides the following fourth supplemental objections and answers to the First Set of Interrogatories propounded by Defendant, Crestron Electronics, Inc. ("Crestron"), as follows:

## GENERAL OBJECTIONS

1. Savant hereby incorporates by reference the General Objections stated in its earlier Responses.

**ANSWERS TO INTERROGATORIES**

**Interrogatory No. 3:**

Identify all sales and business that Savant has allegedly lost as a result of Crestron's alleged conduct and state the dollar amount of any such losses, as well as the basis for calculating this amount.

**Response to Interrogatory No. 3:**

Without waiving and expressly reserving the foregoing objections, Savant states that it believes that it has lost in excess of $100 million in sales revenue since 2008 as a result of Crestron's conduct. Savant refers Crestron to the spreadsheet of Exhibit B for the basis for calculating this amount. The spreadsheet of Exhibit B is incorporated by reference in this response.

**First Supplemental Response to Interrogatory No. 3:**

Without waiving and expressly reserving the foregoing objections, Savant incorporates by reference herein the Declaration of James W. Carroll filed in this action on August 30, 2011 (Document 56). Savant states that it believes that it has lost in excess of $100 million in sales revenue since 2008 as a result of Crestron's conduct. Savant refers Crestron to the spreadsheet of Exhibit B for the basis for calculating this amount. The spreadsheet of Exhibit B is also incorporated by reference in this response.

**Second Supplemental Response to Interrogatory No. 3:**

Without waiving and expressly reserving the foregoing objections, Savant incorporates by reference herein the Declaration of James W. Carroll filed in this action on August 30, 2011 (Document 56). Savant states that it believes that it has lost in excess of $100 million in sales

revenue since 2008 as a result of Crestron's conduct. Savant refers Crestron to the spreadsheet of Exhibit B for the basis for calculating this amount. The spreadsheet of Exhibit B is also incorporated by reference in this response.

Savant has recent issued subpoenas for the production of documents to numerous dealers whom Savant believes have refrained from offering Savant products due to objections or threats from Crestron. Savant will further supplement its response to this interrogatory when that discovery is complete.

**Third Supplemental Response to Interrogatory No. 3:**

Savant further states that, due to the nature of the Market in which Crestron and Savant compete, it is difficult to identify specific, individual sales and business that Savant lost as a result of Crestron's conduct; and, as such, it is difficult to state the specific dollar amount of any such losses. Instead, the effect of Crestron's conduct has been to significantly slow Savant's ability to sign up dealers and, further, even when dealers do sign up, to dissuade those dealers from pitching Savant as a solution for a given project. As such, Crestron's conduct has tended to reduce Savant's sales across the board, as opposed to in individually identifiable instances. Savant further states that identifying the amount of lost sales is more appropriately the subject of expert reports and testimony following the collection of all discovery.

Notwithstanding the above, Savant refers Crestron to Exhibit C attached hereto, which identifies dealers who delayed signing up with Savant and/or delayed selling Savant products after signing up with Savant due to threats or prompting from Crestron. Such delays caused Savant to lose sales in an amount to be determined. Savant further refers Crestron to Exhibit D attached hereto, which identifies dealers who dropped Savant or stopped specifying projects with Savant due to threats or prompting from Crestron. Such events caused Savant to lose sales in an

amount to be determined. Savant further refers Crestron to Exhibit E attached hereto, which identifies dealers who opted against signing up with Savant due to threats or prompting from Crestron. Such threats and prompting caused Savant to lose sales in an amount to be determined. Savant further identifies Exhibit F attached hereto, which identifies dealers who were terminated by Crestron due to their dealings with Savant, thereby creating an *in terrorem* effect in the Market for those considering Savant. Such events caused Savant to lose sales in an amount to be determined. Savant further identifies Exhibit G attached hereto, which identifies other dealers who were threatened by Crestron with respect to Savant. Such threats caused Savant to lose sales in an amount to be determined. Pursuant to Federal Rule of Civil Procedure 33(d), Savant further refers Crestron to the documents listed in Exhibits C to G. Pursuant to Federal Rule of Civil Procedure 33(d), Savant further refers Crestron to the sales data produced by the parties at Crestron0205244, Crestron0205245 and SAVANT3330289.

**Fourth Supplemental Response to Interrogatory No. 3:**

Savant further states that, due to the nature of the Market in which Crestron and Savant compete, it is difficult to identify specific, individual sales and business that Savant lost as a result of Crestron's conduct; and, as such, it is difficult to state the specific dollar amount of any such losses. Instead, the effect of Crestron's conduct has been to significantly slow Savant's ability to sign up dealers and, further, even when dealers do sign up, to dissuade those dealers from pitching Savant as a solution for a given project. As such, Crestron's conduct has tended to reduce Savant's sales across the board, as opposed to in individually identifiable instances. Savant further states that identifying the amount of lost sales is more appropriately the subject of expert reports and testimony following the collection of all discovery.

Notwithstanding the above, Savant refers Crestron to Exhibit C attached hereto, which identifies dealers who delayed signing up with Savant and/or delayed selling Savant products after signing up with Savant due to threats or prompting from Crestron. Such delays caused Savant to lose sales in an amount to be determined. Savant further refers Crestron to Exhibit D attached hereto, which identifies dealers who dropped Savant or stopped specifying projects with Savant due to threats or prompting from Crestron. Such events caused Savant to lose sales in an amount to be determined. Savant further refers Crestron to Exhibit E attached hereto, which identifies dealers who opted against signing up with Savant due to threats or prompting from Crestron. Such threats and prompting caused Savant to lose sales in an amount to be determined. Savant further identifies Exhibit F attached hereto, which identifies dealers who were terminated by Crestron due to their dealings with Savant, thereby creating an *in terrorem* effect in the Market for those considering Savant. Such events caused Savant to lose sales in an amount to be determined. Savant further identifies Exhibit G attached hereto, which identifies other dealers who were threatened by Crestron with respect to Savant. Such threats caused Savant to lose sales in an amount to be determined. Pursuant to Federal Rule of Civil Procedure 33(d), Savant further refers Crestron to the documents listed in Exhibits C to G. Pursuant to Federal Rule of Civil Procedure 33(d), Savant further refers Crestron to the sales data produced by the parties at Crestron0205244, Crestron0205245 and SAVANT3330289-SAVANT3330593.

**Interrogatory No. 4:**

Identify all jobs or projects that were flipped to Savant from Crestron including, but not limited to, those flipped under the Savant Competitive Flip Program including:

(a) the value of the other manufacturer or manufacturers' contract or contracts for the job;

(b) the value of the Savant contract for the job;

(c) the dealer or dealers connected to the job;

(d) any discounted Savant merchandise provided to dealer or dealers who flipped the job and the value of the discounts.

**Response to Interrogatory No. 4:**

Without waiving and expressly reserving the foregoing objections, Savant states that the information requested in subparts (a) and (b) of this interrogatory is not available to Savant because it does not have contracts per job with dealers and purchase orders from dealers are not generally specific to a given job or dealer/end user agreement. Savant states that it is in the process of preparing a report based on its business records from which the information requested in subparts (c) and (d) of this interrogatory may be derived or ascertained. Savant will produce the report upon its completion.

**First Supplemental Response to Interrogatory No. 4:**

Without waiving and expressly reserving the foregoing objections, Savant states that it has conducted a search of its business records for the information requested in each of the subparts of this Interrogatory, and that the information requested is not available from those records.

**Second Supplemental Response to Interrogatory No. 4:**

Without waiving and expressly reserving the foregoing objections, Savant states that it has conducted a search of its business records for the information requested in each of the

subparts of this Interrogatory, and that the information requested is not available from those records.

Savant states that inquiries have been made of James Carroll and other Savant personnel likely to have the information requested by this interrogatory and such individuals have no specific recollection of the matters requested.

Savant is also in the process of electronically searching the hard drives of several Savant custodians and, specific shares/folders of its central servers, using keywords likely to uncover any documents relating to the matters requested (e.g., “flipped jobs,” “Competitive Flip Program” and “flip”). In the event that any relevant information is obtained from documents uncovered in this searching, Savant will further supplement this response when the searching is completed.

**Third Supplemental Response to Interrogatory No. 4:**

Without waiving and expressly reserving the foregoing objections, pursuant to Federal Rule of Civil Procedure 33(d), Savant refers Crestron to the documents listed in Exhibit H attached hereto. Savant further refers Crestron to the sales data produced by Savant at SAVANT3330289-SAVANT3330593.

DATED this 21st day of October, 2013.

Respectfully submitted,

SAVANT SYSTEMS, INC.
By Its Attorneys,

/s/ *Aaron S. Jacobs*

Thomas C. O'Konski BBO#378265
Michael E. Attaya BBO#548297
Aaron S. Jacobs BBO#677545
William J. Mostyn IV BBO#678869
CESARI and MCKENNA, LLP
88 Black Falcon Avenue
Boston, MA 02210
(617) 951-2500
ajacobs@c-m.com

**Certificate of Service**

I hereby certify that this document(s) was served by-mail with confirmation regular mail on:

Chong S. Park
John J. Kavanagh
Steptoe & Johnson LLP
1330 Connecticut Ave., N.W.
Washington, D.C. 20036-1795

Michael J. Pineault, Esq.
Clements & Pineault, LLP
24 Federal Street
Boston, MA 02110

On this 21st day of October, 2013.

/s/ *Aaron S. Jacobs*

**VERIFICATION OF INTERROGATORY ANSWERS**

I, James W Carroll, am EVP of Savant Systems, LLC, and the Plaintiff in this action. I believe, based on reasonable inquiry, that the foregoing responses are true and correct to the best of my knowledge, information and belief.

I verify under penalty of perjury that the foregoing is true and correct.

[signature]

Executed on this 11 day of June, 2014.

RESTRICTED CONFIDENTIAL – OUTSIDE COUNSEL ONLY

# EXHIBIT B

RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL ONLY

| | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | |
|---|---|---|---|---|---|---|---|
| **Plan** | 0 | 4 | 22 | 35 | 56.4 | 144 | |
| **Actual** | 0.019 | 1.38 | 5.34 | 12.84 | 25.6 | 56 | |
| **Difference** | | -2.62 | -16.66 | -22.16 | -30.8 | -88 | -160.24 Based on Current Modified Plan |
| | | | | | | | |
| **Adj Plan** | | | 35 | 56.4 | 144 | 175 | |
| **Difference** | | -2.62 | -29.66 | -43.56 | -118.4 | -31 | -225.24 Based on claims |
| | | | | | | | |
| **Dealers who purchase** | 29 | 98 | 200 | 190 | 105 | | |
| **Cum Dealers** | 29 | 127 | 327 | 401 | 494 | | |
| | | | 116 | 12 | 37 | | |
| | | | 211 | 389 | 457 | | |
| **Rev./Dealer** | $66 | $1,087 | $2,531 | $3,301 | $5,602 | | |
| | | | | | | | |
| **Dealer Signed up** | 40 | 92 | 197 | 180 | 114 | | |
| | | 132 | 329 | 509 | 623 | | |
| | | | | | 129 | Dealers that went through process but never purchased. | |

**First insight to challenges presented by threats was the 07 dealer conference when several dealers expressed concerns about being photographed Robert Owens, Jason Goetz, Sean Riorden**

# EXHIBIT C

| Dealer | DBA | Crestron's Actions | Signed with Savant | Sales Data |
|---|---|---|---|---|
| **Architectural Electronics, Inc.** | **Audio Video Design & Security Design Consultants** | Crestron0148243<br>Crestron0140472<br>Crestron0172537<br>Crestron0121300<br>Crestron0059205<br>Crestron0138412<br>Crestron0178515<br>Crestron0139498 | SAVANT2619831 | Crestron0060834<br>Crestron0116789<br>Crestron0116857<br>Crestron0132389<br>Crestron0132448<br>Crestron0148244<br>Crestron0170648<br>Crestron0172290<br>Crestron0178515 |
| **Atlanta Home Theater (GA) (Scott Ross)** | | Crestron0122249<br>Crestron0122509<br>Crestron0122509<br>Crestron0122885<br>SAVANT0431047<br>Crestron0178516<br>Crestron0191238 | SAVANT2619831 | Crestron0116857<br>Crestron0117193<br>Crestron0170648<br>Crestron0172290 |
| **Audio Advice (FL, NC)** | | Crestron0191632<br>Crestron0191634<br>Crestron0122982<br>Crestron0119918<br>Crestron0083465 | SAVANT2619831 | Crestron0062205<br>Crestron0116857<br>Crestron0117193<br>Crestron0172290<br>Crestron0191634 |
| **Audio Video Excellence, Inc. (AL)** | **AVX** | Crestron0191632<br>Crestron0191634<br>Crestron0122982 | SAVANT2619831 | Crestron0116857<br>Crestron0117193<br>Crestron0120953<br>Crestron0172290<br>Crestron0191634 |
| **Audition Systems (by Audio Design Group)** | **Aurant, S3** | Crestron0003032<br>Crestron0052188<br>Crestron0052190<br>Crestron0185739 | SAVANT1584453<br>SAVANT2613210<br>SAVANT2619831 | Crestron0003039<br>Crestron0071729<br>Crestron0071729<br>Crestron0090237<br>Crestron0096209<br>Crestron0171096<br>Crestron0185739<br>SAVANT1584453<br>SAVANT2615369 |
| **Best Buy Co. Inc.** | **AudioVisions Inc.** | Crestron0144578<br>Crestron0067359 | Crestron0067723<br>SAVANT2619831<br>SAVANT2613210 | Crestron0117193<br>Crestron0172290<br>Crestron0177364<br>SAVANT1648675<br>SAVANT1657882<br>SAVANT2615369 |
| **Commercial Audio Associates, Inc. (VA)** | **Integrated Media Systems (IMS)** | Crestron0191632<br>Crestron0191634<br>Crestron0122982<br>Crestron0117083 | SAVANT2619831 | Crestron0116857<br>Crestron0117193<br>Crestron0170648<br>Crestron0191634 |

| | | | | |
|---|---|---|---|---|
| **Crescendo Designs Ltd.** | | Crestron0137457<br>Crestron0138251 | SAVANT2619831 | Crestron0116857<br>Crestron0137457<br>Crestron0170648<br>Crestron0172290 |
| **Cyber Sound & Security** | | Crestron0104473<br>Crestron0109291<br>Crestron0110398<br>Crestron0110428<br>Crestron0119571<br>Crestron0119689<br>Crestron0177742<br>SAVANT2731850 | SAVANT2613210<br>SAVANT2619831 | Crestron0090237<br>Crestron0132448<br>Crestron0132448<br>Crestron0145405<br>Crestron0172761<br>Crestron0177771<br>Crestron0177784<br>SAVANT0447873<br>SAVANT1648675<br>SAVANT1657881<br>SAVANT1657882<br>SAVANT2615369<br>SAVANT2615387<br>SAVANT2731751<br>SAVANT3330289 |
| **Definitive Audio, Inc.** | | Crestron0090237<br>Crestron0123560 | SAVANT2613210 | Crestron0090237<br>Crestron0116587<br>Crestron0116869<br>Crestron0170648<br>Crestron0177413<br>SAVANT2615387 |
| **Domes Inc. (VA)** | **Domes Audio Video Environments** | Crestron0191632<br>Crestron0191634<br>Crestron0120592 | SAVANT 2619831 | Crestron0116857<br>Crestron0117193<br>Crestron0191634 |
| **Electronics By Design** | **EBD** | Crestron0003054<br>Crestron0003871 | SAVANT2619831 | Crestron0089182<br>Crestron0096209 |
| **FutureHome Systems & Design** | | Crestron0090237 | SAVANT2619831 | Crestron0090237<br>Crestron0116857<br>Crestron0170648<br>Crestron0132448<br>Crestron0176209<br>SAVANT1648675<br>SAVANT1657882<br>SAVANT2615369<br>SAVANT2615387 |
| **Gramophone, Ltd.** | **Gramophone** | Crestron0191634<br>Crestron0140645 | SAVANT2619831 | Crestron0058233<br>Crestron0116857<br>Crestron0137457<br>Crestron0170648<br>Crestron0191634 |

| | | | | |
|---|---|---|---|---|
| **High Fidelity House (PA)** | **HiFi House** | Crestron0137457<br>Crestron0059083<br>Crestron0024548 | | Crestron0116857<br>Crestron0118046<br>Crestron0137457 |
| **Hi-Tech Integrated Systems Inc.** | | Crestron0191632<br>Crestron0191635 | SAVANT2619831 | Crestron0116857<br>Crestron0170648 |
| **Homeworks Holding Corp** | **Digital Ear** | Crestron0192180<br>Crestron0072203<br>Crestron0137522<br>Crestron0067714 | SAVANT2619831 | Crestron0116857<br>Crestron0118046<br>Crestron0137469 |
| **Intra Home Systems, LLC (NJ)** | | Crestron0119020<br>Crestron0059463 | SAVANT 2619831 | Crestron0116857<br>Crestron0117193<br>Crestron0172290 |
| **JPC Pops Inc.** | **Tune Street** | Crestron0148244<br>Crestron0138319<br>Crestron0122646 | SAVANT0322305<br>SAVANT2619831 | Crestron0116857<br>Crestron0148244<br>Crestron0170648 |
| **Laserdisc Enterprises, Inc.** | **Georgia Home Theater (GA)** | Crestron0191632<br>Crestron0191634 | SAVANT2619831 | Crestron0117193 |
| **Mayer M&J, Inc.** | **Just One Touch / Video & Audio Center** | Crestron0148244 | SAVANT2619831 | Crestron0116857<br>Crestron0144726<br>Crestron0148244<br>Crestron0170648<br>Crestron0177364 |
| **Newport Audio Video Inc. Attack Communications** | | Crestron0144546<br>SAVANT0484583<br>Crestron0177397<br>Crestron0177408 | SAVANT2619831 | Crestron0132448<br>Crestron0137423<br>Crestron0137445<br>Crestron0138198<br>Crestron0170648<br>Crestron0176808 |
| **Paradyme, Inc.** | **Paradyme Sound & Vision** | Crestron0137457<br>Crestron0090237 | SAVANT2619831<br>SAVANT2702806 | Crestron0090237<br>Crestron0116857<br>Crestron0117193<br>Crestron0132448<br>Crestron0137457<br>Crestron0170648 |
| **Paragon Technology Group, LLC** | **Paragon Technology Group** | Crestron0177742<br>SAVANT1667030 | SAVANT2619831<br>SAVANT2613210 | Crestron0116857<br>Crestron0071729<br>Crestron0090237<br>Crestron0116857<br>Crestron0132448<br>Crestron0170648<br>Crestron0176209<br>SAVANT2615369<br>SAVANT2615387 |

| | | | | |
|---|---|---|---|---|
| **Premier Home Technologies LP** | **Premier Technology Group** | Crestron0029419<br>Crestron0097979<br>Crestron0098115<br>Crestron0082463<br>Crestron0098545<br>Crestron0084445 | SAVANT2619831<br>Crestron0084445 | Crestron0061999<br>Crestron0084988<br>Crestron0084988<br>Crestron0097969<br>Crestron0116857<br>Crestron0170648 |
| **Satellite Scanners Inc.** | **Abbott's Audio & Video, Abbott's Technology Design Group** | Crestron0104473<br>Crestron0109542 | SAVANT0243803 | Crestron0050539<br>Crestron0064170<br>Crestron0116857<br>Crestron0117193<br>Crestron0177784 |
| **Sound & Secure, Inc.** | **Eagle Sentry Inc. (Eagle Security)** | Crestron0065268 | SAVANT2619831 | Crestron0065266<br>Crestron0107929<br>Crestron0115410<br>Crestron0117193<br>Crestron0144726<br>Crestron0166212<br>Crestron0171650<br>Crestron0177364 |
| **Sound Around, Inc. (NJ)** | **CSA Audio Design** | Crestron0137456<br>Crestron0137457<br>Crestron0138418 | SAVANT 2619831 | Crestron0116857<br>Crestron0137457 |
| **Sound Components** | | Crestron0191634 | SAVANT2619831 | Crestron0116857<br>Crestron0132448<br>Crestron0135720<br>Crestron0170648<br>Crestron0191634<br>SAVANT1648675<br>SAVANT1657882<br>SAVANT2615369<br>SAVANT2615387 |
| **Sound Image Audio Video Design** | **Sound Image** | Crestron0076012<br>Crestron0077272<br>Crestron0077174<br>Crestron0170323<br>Crestron0081282<br>Crestron0084587 | SAVANT2619831<br>SAVANT0077098 | Crestron0000475<br>Crestron0171561<br>Crestron0061947<br>Crestron0028622<br>Crestron0084988<br>Crestron0116857<br>Crestron0170648<br>Crestron0171561 |
| **Soundvision, Inc. (SoundVision Systems, Inc.)** | **SoundVision-Marin** | Crestron0137457<br>Crestron0090237 | Savant2619831 | Crestron0090237<br>Crestron0116857<br>Crestron0137457<br>Crestron0145803<br>Crestron0170648 |

| | | | | |
|---|---|---|---|---|
| **Stearns Enterprises, Inc.** | **Engineered Environments** | Crestron0090237 | SAVANT1672404<br>SAVANT2731751 | Crestron0090237<br>Crestron0116857<br>Crestron0177413<br>Crestron0170648<br>Crestron0135720<br>SAVANT1648675<br>SAVANT1657882<br>SAVANT2615387<br>SAVANT2731751 |
| **Stephen Gorton, Inc.** | **Synergy Audio Video** | Crestron0137462<br>Crestron0090237<br>Crestron0138198<br>Crestron0137486 | SAVANT2613210<br>Crestron0145152 | Crestron0067885<br>Crestron0090237<br>Crestron0116689<br>Crestron0116857<br>Crestron0170648<br>SAVANT0447873<br>SAVANT1648675<br>SAVANT1657882<br>SAVANT2615369<br>SAVANT2615387 |
| **Stereo Exchange Inc.** | | Crestron0148244<br>Crestron0172642<br>Crestron0172602 | SAVANT2613068 | Crestron0148244<br>Crestron0084488<br>Crestron0116857<br>Crestron0170648 |
| **Wilshire Home Entertainment** | | Crestron0090237 | SAVANT2619831<br>SAVANT2613210<br>Crestron0067728 | Crestron0090237<br>Crestron0116857<br>Crestron0170648<br>Crestron0177364<br>SAVANT1648675<br>SAVANT1657882<br>SAVANT2615369<br>SAVANT2615387 |

# EXHIBIT D

| Dealer | DBA | Signed with Savant | Crestron's Actions | Dealer's Actions | Sales Data |
|---|---|---|---|---|---|
| **American Automation & Communications, Inc.** | | SAVANT2619831 | Crestron0119661<br>Eric Davidson Deposition 25:4-15, 26:2-11, 39:12-40:14<br>Crestron0118996 | | Crestron0116857<br>Crestron0118046<br>Crestron0194027<br>Crestron0195153<br>Crestron0201334 |
| **Audio Command Systems, Inc.** | | SAVANT2619831 | Crestron0085335<br>Crestron0058785<br>Crestron0138340<br>Crestron0059579 | | Crestron0058233<br>Crestron0116857<br>Crestron0119341<br>Crestron0170648 |
| **Audio Video Lifestyles** | **Vatland's Electronics Inc., Sound World** | SAVANT1544180 | David Vatland Deposition 12:23-13:2, 19:13-21:11, 68:21-69:6 | SAVANT2619831<br>SAVANT2613210<br>SAVANT1648675 | Crestron0066687<br>Crestron0084928<br>Crestron0116857<br>Crestron0116863<br>Crestron0132448<br>Crestron0170648<br>SAVANT2613114<br>SAVANT2615369 |
| **AVE Solutions (S3 Entertainment LLC)** | **S3 US** | SAVANT2619831<br>SAVANT2613210 | Crestron0080888<br>Crestron0003191<br>Crestron0170379<br>Crestron0172717 | Crestron0096062<br>Crestron0084981 | Crestron0003039<br>Crestron0071729<br>Crestron0084988<br>Crestron0096209<br>Crestron0171096<br>SAVANT1648675<br>SAVANT1657882<br>SAVANT2615387 |
| **Binacorp, Inc. (CA)** | **La Jolla Home Theater & Automation** | SAVANT2619831 | Otto Benson Dec. ¶ 6<br>Otto Benson Deposition 31:3-32:21, 53:6-20<br>Crestron0137522 | Otto Benson Deposition 53:17-20<br>Crestron0067711 | Crestron0172290<br>Crestron0116857<br>Crestron0117193<br>Benson Depo ¶ 57:13-17, 59:19-20, 64:8-9 |
| **Cocooning Electronics, Ltd.** | **Electronic Environments, Inc.** | SAVANT2619831 | Crestron0138654<br>Crestron0003847 | | Crestron0003862<br>Crestron0062106<br>Crestron0116857<br>Crestron0117193<br>Crestron0172290<br>Crestron0177312 |
| **Custom Home Theater Systems of Sd LLC** | **Custom Home Theater Systems, LLC** | SAVANT2619831 | Crestron0137522<br>Crestron0138186 | | Crestron0116857<br>Crestron0137445<br>Crestron0172290 |

| | | | | | |
|---|---|---|---|---|---|
| **Definitive Electronic Solutions, Inc. (FL)** | | SAVANT 2619831 | Crestron0065651. | | Crestron0065656<br>Crestron0116857<br>Crestron0117193<br>Crestron0172290 |
| **Genesis Home Technologies, Inc** | | SAVANT2619831 | Crestron0137439<br>Crestron0144593<br>Crestron0119689<br>Crestron0111007)<br>Asking about Savant | | Crestron0116857<br>Crestron0117193<br>Crestron0145803<br>Crestron0192175 |
| **Harrison Home Systems, Inc.** | | SAVANT2619831<br>SAVANT2613210<br>SAVANT2615369 | Crestron0003297<br>Crestron0062686 | | Crestron0084988<br>Crestron0096209<br>Crestron0116857<br>Crestron0132448<br>Crestron0135720<br>Crestron0171096<br>SAVANT1648675<br>SAVANT1657882<br>SAVANT2615369<br>SAVANT2615387 |
| **Integrated Lifestyles, Inc.** | **American Home Technology** | SAVANT2619831<br>SAVANT2652601 | Crestron0178143<br>Crestron0178106 | | Crestron0066522<br>Crestron0066687<br>Crestron0116857<br>Crestron0132448<br>Crestron0170648<br>Crestron0178140<br>Crestron0178142<br>Crestron0178143 |
| **Intelect Integrated Electronics** | | SAVANT1735318 | Sean Riordan Depo 57:13-25<br>Crestron0118963 | | Crestron0065656<br>Crestron0116857<br>Crestron0135720<br>Crestron0172761<br>SAVANT0213338<br>SAVANT0778602<br>SAVANT1657882 |
| **Jerry's Audio-Video (AZ)** | | SAVANT2648486 | Crestron0048099 | | Crestron0045057<br>Crestron0172210 |
| **Jobe Systems, Inc.** | **Jobe Systems** | SAVANT2619831 | Crestron0075963<br>Crestron0076196<br>Jason Jobe Declaration ¶¶ 4-6, Jason Jobe Deposition 11:22-13:24, 14:5-15:19, 20:19-23, 46:17-21 | Crestron0078506 | Crestron0076015<br>Crestron0078506<br>Crestron0084988<br>Crestron0116863<br>SAVANT1648675<br>SAVANT1657881<br>SAVANT1657882<br>SAVANT2615387 |

| | | | | | |
|---|---|---|---|---|---|
| **LP Trading, LLC (FL)** | **Bang & Olufsen** | SAVANT 2619831 | Crestron0065651 | | Crestron0065656<br>Crestron0067934<br>Crestron0116857<br>Crestron0117193<br>Crestron0172290 |
| **Modern Home Technologies** | | SAVANT2619831 | Crestron0138829<br>Crestron0138866<br>Crestron0138868 | | Crestron0117193<br>Crestron0132448<br>Crestron0170648<br>Crestron0176209<br>SAVANT0036758<br>SAVANT1648675<br>SAVANT1657881<br>SAVANT1657882<br>SAVANT2615369<br>SAVANT2615387<br>SAVANT2731751 |
| **Newman Hardin, Inc.** | **The Phonograph** | | Crestron0083063<br>Crestron0170371<br>Crestron0084195 | | Crestron0061912<br>Crestron0071729<br>Crestron0084988<br>Crestron0116857<br>Crestron0125587<br>Crestron0170648<br>Crestron0189769 |
| **Plug and Play Media** | | SAVANT2619831<br>SAVANT2613210 | Crestron0050539<br>Crestron0109345<br>Crestron0192523<br>Crestron0110164 | | Crestron0064167<br>Crestron0067874<br>Crestron0116857<br>Crestron0171652<br>Crestron0177784<br>SAVANT1648675<br>SAVANT1657882<br>SAVANT2615369<br>SAVANT2731751 |
| **Pro Design LLC** | | SAVANT2619831 | Crestron0003788<br>Brian Moffett Deposition 18:8-22:20, 51:11-52:6<br>See also Brian Moffett Declaration ¶¶ 6-7<br>Crestron0003788 | | Crestron0067913<br>Crestron0084488<br>Crestron0116857<br>Crestron0170648 |
| **SoCal Smart Home, Inc.** | **ARC Sound + Vision, Inc.** | SAVANT2613210<br>SAVANT1735318<br>SAVANT1544180 | Crestron0138196<br>Crestron0000632<br>Jonathan Lane Deposition 15:19-18:11, 18:23-19:3, 37:4-13, 157:23-158:2<br>SAVANT0419160 | SAVANT2619831 | Crestron0067874<br>Crestron0116857<br>Crestron0132448<br>Crestron0170648<br>Crestron0176048<br>SAVANT1657882<br>SAVANT2615369<br>SAVANT2615387 |
| **Stereo and Video Integrators Inc.** | **SVI** | SAVANT2619831 | Crestron0172505<br>Crestron0099308<br>Crestron0138922<br>Crestron0061332 | Crestron0138922 | Crestron0116857<br>Crestron0132448<br>Crestron0170648<br>Crestron0177163 |

| | | | | | |
|---|---|---|---|---|---|
| **Stereo One, Inc.** | **Stereo One** | SAVANT2619831 | Crestron0170271<br>John Selby Depo. 23:7-24:4<br>Crestron0119657 | Selby Dep. 14:13-23 | Crestron0000268<br>Crestron0116857<br>Crestron0132448<br>Crestron0170648<br>SAVANT1648675<br>SAVANT1657881<br>SAVANT1657882<br>SAVANT2731751 |
| **Steve's Creative Stereo and Security Systems, Inc.** | **Creative Systems** | SAVANT2619831 | Crestron0120498<br>Crestron0059542 | | Crestron0116857<br>Crestron0116857<br>Crestron0170648<br>Crestron0177220 |
| **Thul, Inc.** | **Thul Electronics, Inc.** | SAVANT2619831 | Crestron0079082<br>Crestron0079178<br>Crestron0189444 | Crestron0189444 | Crestron0003039<br>Crestron0071729<br>Crestron0084988<br>Crestron0116857<br>Crestron0145809<br>SAVANT0964074<br>SAVANT1648675<br>SAVANT1657882<br>SAVANT2615369<br>SAVANT2615387 |

RESTRICTED CONFIDENTIAL – OUTSIDE COUNSEL ONLY

# EXHIBIT E

| Dealer | DBA | Crestron's Actions | Sales Data |
|---|---|---|---|
| **Audio Dimensions, Inc.** | | Crestron0137457<br>Crestron0076214<br>Crestron0077673 | Crestron0061912<br>Crestron0079409<br>Crestron0116857<br>Crestron0117193<br>Crestron0137457<br>Crestron0170648 |
| **Audio Video Environments, LLC (TN)** | | Crestron0191632<br>Crestron0191634 | Crestron0116857<br>Crestron0117193<br>Crestron0170648<br>Crestron0172290<br>Crestron0191634 |
| **Barney Miller's, Inc.** | | Crestron0137456<br>Crestron0137457 | Crestron0084928<br>Crestron0116857<br>Crestron0117193<br>Crestron0170648<br>Crestron0178143 |
| **Century Stereo** | | Crestron0137456<br>Crestron0137457 | Crestron0058233<br>Crestron0116857<br>Crestron0117193<br>Crestron0170648 |
| **Hargate Theatre Vision** | | Crestron0090237<br>Crestron0178598 | Crestron0067874<br>Crestron0084488<br>Crestron0116857<br>Crestron0170648<br>Crestron0177364 |
| **Kukuk's Warehouse Stereo Inc.** | **Wow Electronics** | Crestron0090237<br>Crestron0104473<br>Crestron0109291 | Crestron0064167<br>Crestron0065246<br>Crestron0090237<br>Crestron0107929<br>Crestron0116857<br>Crestron0117193<br>Crestron0144726<br>Crestron0177364<br>Crestron0177771<br>Crestron0177784 |
| **Pacific Sound and Video, Tmv Properties, Inc.** | **Pacific Sound & Video** | Crestron0137457<br>Crestron0172513 | Crestron0066687<br>Crestron0116857<br>Crestron0137457<br>Crestron0170648 |
| **Paulson's Audio & Video** | | Crestron0148244<br>Crestron0170271)<br>Crestron0178181 | Crestron0116857<br>Crestron0116857<br>Crestron0137457<br>Crestron0178143<br>Crestron017818 |

| | | | |
|---|---|---|---|
| **Shimek's Audio (Shimek & Co, Inc.)** | **Shimek's Audio Video** | Crestron0090237 | Crestron0067874<br>Crestron0090237<br>Crestron0116689<br>Crestron0116857 |
| **Stereo East Home Theater** | **Stereo East** | Crestron0137457<br>Crestron0076211<br>Crestron0076214<br>Crestron0084117<br>Crestron0063268 | Crestron0061912<br>Crestron0062205<br>Crestron0116857<br>Crestron0137457<br>Crestron0170648 |
| **Summit Technology Group, Inc. (Audio Video Showroom, Probst Inc.)** | **Summit Electric, Summit Electronic Systems, Summit Solar** | Crestron0090237 | Crestron0090237<br>Crestron0116857<br>Crestron0116863<br>Crestron0170648 |
| **The J Edison Group** | | Crestron0178107<br>Crestron0070307<br>SAVANT0716285<br>SAVANT1545718 | Crestron0084928<br>Crestron0117193 |
| **The Sound Room** | | Crestron1037457<br>Crestron0178146 | Crestron0116857<br>Crestron0137457<br>Crestron0170648 |

# EXHIBIT F

| Dealer | DBA | Approved by Savant | Crestron's Actions | Sales Data |
|---|---|---|---|---|
| **Acadian Custom Installations** | | SAVANT2619831 | Crestron0185482<br>Crestron0170277<br>Crestron0170383 | Crestron0061912<br>Crestron0084988<br>Crestron0116857<br>Crestron0132448<br>Crestron0185482<br>SAVANT1648675<br>SAVANT1657882<br>SAVANT2615369<br>SAVANT2615387<br>SAVANT2731751 |
| **Blu Note AV** | **Blu Note Audio and Home Theater** | SAVANT2619831 | Crestron0003084<br>Crestron0062106<br>Crestron0062113<br>Crestron0171093<br>Crestron0084454<br>Crestron0084488 | Crestron0084490<br>Crestron0116857<br>Crestron0117193<br>Crestron0170648 |
| **J.R. Goold Enterprises, Inc.** | **Pacific Digital Home** | SAVANT2619831 | Crestron0138213<br>Crestron0137970<br>Crestron0138047 | Crestron0116857<br>Crestron0117193<br>Crestron0132448<br>Crestron0137434<br>Crestron0137474<br>Crestron0144546<br>Crestron0176808 |
| **NuSystems, Inc. (Nu-Systems, Inc.)** | | SAVANT2619831 | Joseph Arceo Deposition 17:14-25, 18:22-24, 20:20-21:5, 59:21-60:21, 63:2-9<br>ANSR0000123<br>Crestron0065266 | Crestron0065266<br>Crestron0067874<br>Crestron0084488<br>Crestron0116857<br>Crestron0132448<br>Crestron0144726<br>Crestron0170648<br>Crestron0177364 |

RESTRICTED CONFIDENTIAL – OUTSIDE COUNSEL ONLY

# EXHIBIT G

| Dealer | DBA | Approved by Savant | Crestron's Actions | Dealer's Actions | Sales Data |
|---|---|---|---|---|---|
| **Barrett's Inc.** | **Barrett's Home Theater** | | Crestron0137456<br>Crestron0137457<br>Crestron0178163 | | Crestron0116857<br>Crestron0170648<br>Crestron0178138 |
| **Electronics Design Group Inc.** | **EDG** | SAVANT2619831 | Crestron0137457<br>Crestron0058756<br>Crestron0001489 | Crestron0151688<br>Crestron0058987 | Crestron0116857<br>Crestron0137457<br>Crestron0170648 |
| **Elliston Systems & Design Inc. (TX)** | | SAVANT2648477 | Crestron0079033 | | Crestron0116857<br>Crestron0117193<br>Crestron0185479 |
| **Global Sight and Sound (WI)** | | SAVANT2619831 | Crestron0193917<br>Crestron0178163 | | Crestron0066687 |
| **Green Balance Inc** | **Atlantic Smart Technologies, Inc.** | SAVANT2619831 | Crestron0116404 | | Crestron0065656<br>Crestron0116857<br>Crestron0170648<br>Crestron0172290 |
| **Guenther-Vorrucken, Inc.** | **Advanced Audio Design** | SAVANT2619831 | Crestron0137456<br>Crestron0137457<br>Crestron0116647<br>Crestron0119840 | | Crestron0058233<br>Crestron0116857<br>Crestron0170648 |
| **Home Media, Inc.** | **Home Media** | SAVANT2619831 | Crestron0003881<br>Crestron0185642<br>Crestron0082441<br>Crestron0003291<br>Crestron0170385<br>Crestron0083855 | Crestron0003342 | Crestron0084988<br>Crestron0096209<br>Crestron0116857<br>Crestron0170648<br>Crestron0171096<br>Crestron0171147 |
| **Kozi Media Design, Inc.** | | SAVANT2619831 | Crestron0178145 | | Crestron0178143<br>Crestron0178139<br>Crestron0116857<br>Crestron0170648<br>Crestron0084928 |
| **Safe and Sound Systems, Inc.** | | SAVANT2619831 | Crestron0171147<br>Craig Stulce Deposition 25:15-26:16, 44:5-21, 45:12-46:2<br>SAVANT0430540<br>Crestron0095687 | | Crestron0084488<br>Crestron0096209<br>Crestron0116857<br>Crestron0145803<br>Crestron0170648 |
| **Suess Electronics Inc.** | | | Crestron0137457<br>Crestron0178138<br>Crestron0178163 | | Crestron0066687<br>Crestron0116857<br>Crestron0137457<br>Crestron0170648<br>Crestron0178144<br>Crestron0193696 |

RESTRICTED CONFIDENTIAL – OUTSIDE COUNSEL ONLY

# EXHIBIT H

RESTRICTED CONFIDENTIAL – OUTSIDE COUNSEL ONLY

| | | | |
|---|---|---|---|
| SAVANT0008432 | SAVANT0090851 | SAVANT0146425 | SAVANT0219593 |
| SAVANT0008437 | SAVANT0098288 | SAVANT0146432 | SAVANT0226297 |
| SAVANT0008438 | SAVANT0104126 | SAVANT0146478 | SAVANT0226302 |
| SAVANT0009937 | SAVANT0109667 | SAVANT0146485 | SAVANT0226306 |
| SAVANT0009939 | SAVANT0109669 | SAVANT0147722 | SAVANT0226309 |
| SAVANT0010941 | SAVANT0110658 | SAVANT0147916 | SAVANT0227148 |
| SAVANT0010943 | SAVANT0110659 | SAVANT0148003 | SAVANT0227471 |
| SAVANT0013962 | SAVANT0110748 | SAVANT0148641 | SAVANT0231621 |
| SAVANT0013964 | SAVANT0110984 | SAVANT0148643 | SAVANT0240145 |
| SAVANT0029811 | SAVANT0118342 | SAVANT0148644 | SAVANT0242194 |
| SAVANT0029813 | SAVANT0118346 | SAVANT0148645 | SAVANT0242299 |
| SAVANT0036600 | SAVANT0118904 | SAVANT0148648 | SAVANT0244646 |
| SAVANT0039171 | SAVANT0118967 | SAVANT0148653 | SAVANT0250775 |
| SAVANT0043171 | SAVANT0119463 | SAVANT0148657 | SAVANT0250803 |
| SAVANT0046713 | SAVANT0119760 | SAVANT0148663 | SAVANT0250807 |
| SAVANT0046715 | SAVANT0119794 | SAVANT0148706 | SAVANT0250810 |
| SAVANT0046926 | SAVANT0120249 | SAVANT0148721 | SAVANT0250820 |
| SAVANT0050402 | SAVANT0120258 | SAVANT0148754 | SAVANT0250824 |
| SAVANT0053502 | SAVANT0120655 | SAVANT0148757 | SAVANT0251486 |
| SAVANT0055109 | SAVANT0120658 | SAVANT0148762 | SAVANT0252913 |
| SAVANT0055112 | SAVANT0120659 | SAVANT0148771 | SAVANT0252974 |
| SAVANT0071692 | SAVANT0121852 | SAVANT0153830 | SAVANT0252984 |
| SAVANT0073834 | SAVANT0123083 | SAVANT0153832 | SAVANT0252993 |
| SAVANT0074292 | SAVANT0124439 | SAVANT0153913 | SAVANT0253006 |
| SAVANT0074555 | SAVANT0124840 | SAVANT0153922 | SAVANT0253013 |
| SAVANT0074973 | SAVANT0124843 | SAVANT0155168 | SAVANT0254145 |
| SAVANT0075591 | SAVANT0125522 | SAVANT0155208 | SAVANT0255044 |
| SAVANT0075641 | SAVANT0125523 | SAVANT0156616 | SAVANT0255055 |
| SAVANT0075928 | SAVANT0125524 | SAVANT0156627 | SAVANT0255756 |
| SAVANT0075939 | SAVANT0125526 | SAVANT0159935 | SAVANT0261320 |
| SAVANT0076189 | SAVANT0125528 | SAVANT0186971 | SAVANT0261822 |
| SAVANT0076360 | SAVANT0125531 | SAVANT0186973 | SAVANT0262319 |
| SAVANT0076645 | SAVANT0125534 | SAVANT0186976 | SAVANT0262322 |
| SAVANT0076720 | SAVANT0125804 | SAVANT0186983 | SAVANT0262368 |
| SAVANT0076725 | SAVANT0125805 | SAVANT0187005 | SAVANT0262378 |
| SAVANT0077601 | SAVANT0126231 | SAVANT0187008 | SAVANT0262951 |
| SAVANT0078319 | SAVANT0126281 | SAVANT0187010 | SAVANT0262953 |
| SAVANT0078324 | SAVANT0126288 | SAVANT0192230 | SAVANT0262955 |
| SAVANT0078623 | SAVANT0126399 | SAVANT0216535 | SAVANT0263004 |
| SAVANT0078638 | SAVANT0126403 | SAVANT0216539 | SAVANT0263324 |
| SAVANT0078647 | SAVANT0127333 | SAVANT0216543 | SAVANT0263336 |
| SAVANT0078657 | SAVANT0134131 | SAVANT0219567 | SAVANT0263507 |
| SAVANT0082034 | SAVANT0139745 | SAVANT0219569 | SAVANT0263509 |
| SAVANT0086957 | SAVANT0141639 | SAVANT0219588 | SAVANT0263511 |
| SAVANT0086962 | SAVANT0141641 | SAVANT0219591 | SAVANT0263527 |

| | | | |
|---|---|---|---|
| SAVANT0263545 | SAVANT0283893 | SAVANT0313778 | SAVANT0331420 |
| SAVANT0263552 | SAVANT0284841 | SAVANT0314872 | SAVANT0331422 |
| SAVANT0263557 | SAVANT0285953 | SAVANT0314875 | SAVANT0331499 |
| SAVANT0263711 | SAVANT0287391 | SAVANT0314886 | SAVANT0331500 |
| SAVANT0263717 | SAVANT0289009 | SAVANT0316729 | SAVANT0332829 |
| SAVANT0263729 | SAVANT0289011 | SAVANT0319051 | SAVANT0333946 |
| SAVANT0263731 | SAVANT0289537 | SAVANT0319100 | SAVANT0335677 |
| SAVANT0264701 | SAVANT0289540 | SAVANT0319115 | SAVANT0335964 |
| SAVANT0264899 | SAVANT0294443 | SAVANT0319806 | SAVANT0337891 |
| SAVANT0265236 | SAVANT0295570 | SAVANT0319860 | SAVANT0341897 |
| SAVANT0265239 | SAVANT0295586 | SAVANT0319871 | SAVANT0344080 |
| SAVANT0265247 | SAVANT0295703 | SAVANT0321175 | SAVANT0344645 |
| SAVANT0265249 | SAVANT0297677 | SAVANT0321360 | SAVANT0344646 |
| SAVANT0266180 | SAVANT0297687 | SAVANT0321882 | SAVANT0344654 |
| SAVANT0267005 | SAVANT0297690 | SAVANT0322379 | SAVANT0344658 |
| SAVANT0267055 | SAVANT0297823 | SAVANT0322715 | SAVANT0344950 |
| SAVANT0268993 | SAVANT0297828 | SAVANT0323551 | SAVANT0347694 |
| SAVANT0268995 | SAVANT0297831 | SAVANT0323553 | SAVANT0347992 |
| SAVANT0273801 | SAVANT0297834 | SAVANT0323675 | SAVANT0348020 |
| SAVANT0275277 | SAVANT0297836 | SAVANT0324420 | SAVANT0348023 |
| SAVANT0276327 | SAVANT0297841 | SAVANT0325314 | SAVANT0348137 |
| SAVANT0276449 | SAVANT0304048 | SAVANT0325608 | SAVANT0349013 |
| SAVANT0276457 | SAVANT0304091 | SAVANT0325918 | SAVANT0350615 |
| SAVANT0277385 | SAVANT0306024 | SAVANT0329894 | SAVANT0350618 |
| SAVANT0277928 | SAVANT0306298 | SAVANT0329901 | SAVANT0350620 |
| SAVANT0278937 | SAVANT0307631 | SAVANT0329903 | SAVANT0350658 |
| SAVANT0280459 | SAVANT0308105 | SAVANT0329924 | SAVANT0351585 |
| SAVANT0280464 | SAVANT0308353 | SAVANT0329929 | SAVANT0351586 |
| SAVANT0280471 | SAVANT0308455 | SAVANT0330153 | SAVANT0351588 |
| SAVANT0280476 | SAVANT0308457 | SAVANT0330154 | SAVANT0351590 |
| SAVANT0280652 | SAVANT0308462 | SAVANT0330161 | SAVANT0353829 |
| SAVANT0280738 | SAVANT0308464 | SAVANT0330171 | SAVANT0354021 |
| SAVANT0280801 | SAVANT0308522 | SAVANT0330173 | SAVANT0354022 |
| SAVANT0281004 | SAVANT0308524 | SAVANT0330223 | SAVANT0354266 |
| SAVANT0281007 | SAVANT0308726 | SAVANT0330266 | SAVANT0355569 |
| SAVANT0281014 | SAVANT0308728 | SAVANT0330570 | SAVANT0357151 |
| SAVANT0281026 | SAVANT0308823 | SAVANT0330574 | SAVANT0358342 |
| SAVANT0281458 | SAVANT0308829 | SAVANT0330580 | SAVANT0360431 |
| SAVANT0283218 | SAVANT0308830 | SAVANT0330585 | SAVANT0360432 |
| SAVANT0283221 | SAVANT0308835 | SAVANT0330603 | SAVANT0360435 |
| SAVANT0283223 | SAVANT0308863 | SAVANT0330611 | SAVANT0361442 |
| SAVANT0283225 | SAVANT0308870 | SAVANT0330612 | SAVANT0361443 |
| SAVANT0283882 | SAVANT0312112 | SAVANT0330617 | SAVANT0361446 |
| SAVANT0283886 | SAVANT0312840 | SAVANT0331323 | SAVANT0363346 |
| SAVANT0283889 | SAVANT0313759 | SAVANT0331419 | SAVANT0363348 |

RESTRICTED CONFIDENTIAL – OUTSIDE COUNSEL ONLY

SAVANT0363360
SAVANT0364250
SAVANT0365392
SAVANT0365397
SAVANT0365450
SAVANT0366796
SAVANT0372601
SAVANT0372602
SAVANT0372604
SAVANT0372606
SAVANT0372609
SAVANT0372612
SAVANT0372613
SAVANT0372615
SAVANT0372720
SAVANT0372722
SAVANT0372971
SAVANT0372973
SAVANT0373134
SAVANT0373136
SAVANT0373138
SAVANT0373319
SAVANT0373674
SAVANT0374388
SAVANT0374390
SAVANT0374645
SAVANT0376832
SAVANT0377077
SAVANT0377214
SAVANT0378034
SAVANT0380582
SAVANT0381703
SAVANT0381706
SAVANT0388584
SAVANT0395870
SAVANT0395872
SAVANT0399379
SAVANT0400684
SAVANT0403041
SAVANT0403045
SAVANT0403047
SAVANT0403049
SAVANT0403052
SAVANT0403057
SAVANT0403088
SAVANT0403091
SAVANT0403100
SAVANT0406384
SAVANT0410013
SAVANT0414431
SAVANT0414495
SAVANT0419233
SAVANT0419235
SAVANT0419237
SAVANT0419240
SAVANT0420441
SAVANT0424643
SAVANT0424911
SAVANT0426009
SAVANT0426391
SAVANT0427601
SAVANT0427609
SAVANT0427612
SAVANT0427664
SAVANT0427698
SAVANT0427701
SAVANT0427867
SAVANT0427912
SAVANT0427928
SAVANT0427935
SAVANT0428905
SAVANT0429582
SAVANT0430893
SAVANT0434333
SAVANT0437072
SAVANT0437073
SAVANT0437120
SAVANT0437122
SAVANT0437250
SAVANT0437252
SAVANT0444820
SAVANT0451348
SAVANT0452161
SAVANT0452162
SAVANT0456049
SAVANT0458528
SAVANT0458531
SAVANT0458586
SAVANT0460373
SAVANT0460375
SAVANT0460454
SAVANT0473109
SAVANT0473122
SAVANT0485574
SAVANT0485575
SAVANT0485580
SAVANT0485582
SAVANT0486308
SAVANT0488310
SAVANT0490573
SAVANT0492787
SAVANT0492788
SAVANT0492789
SAVANT0517785
SAVANT0517870
SAVANT0518120
SAVANT0518141
SAVANT0518145
SAVANT0518626
SAVANT0518628
SAVANT0518630
SAVANT0518962
SAVANT0519418
SAVANT0519419
SAVANT0523141
SAVANT0523147
SAVANT0523151
SAVANT0523815
SAVANT0523819
SAVANT0524599
SAVANT0524606
SAVANT0524642
SAVANT0525262
SAVANT0525636
SAVANT0525661
SAVANT0525663
SAVANT0525673
SAVANT0525701
SAVANT0525972
SAVANT0526482
SAVANT0526986
SAVANT0526992
SAVANT0527141
SAVANT0528079
SAVANT0528207
SAVANT0528209
SAVANT0528457
SAVANT0528458
SAVANT0528460
SAVANT0528463
SAVANT0528466
SAVANT0529210
SAVANT0529216
SAVANT0529224
SAVANT0530359
SAVANT0530361
SAVANT0530370
SAVANT0531023
SAVANT0531053
SAVANT0532659
SAVANT0532715
SAVANT0549386
SAVANT0553080
SAVANT0556559
SAVANT0559036
SAVANT0562116
SAVANT0562180
SAVANT0563029
SAVANT0573607
SAVANT0573610
SAVANT0578462
SAVANT0578466
SAVANT0578491
SAVANT0578493
SAVANT0581173
SAVANT0581176
SAVANT0581179
SAVANT0581184
SAVANT0583068
SAVANT0587088
SAVANT0590547
SAVANT0590549
SAVANT0590759
SAVANT0591404
SAVANT0591406
SAVANT0591409
SAVANT0594138
SAVANT0598738
SAVANT0598739
SAVANT0598740

RESTRICTED CONFIDENTIAL – OUTSIDE COUNSEL ONLY

| | | | |
|---|---|---|---|
| SAVANT0608347 | SAVANT0759965 | SAVANT0940390 | SAVANT1234925 |
| SAVANT0608349 | SAVANT0768699 | SAVANT0940548 | SAVANT1235899 |
| SAVANT0637218 | SAVANT0768949 | SAVANT0940549 | SAVANT1250801 |
| SAVANT0637313 | SAVANT0769195 | SAVANT0944117 | SAVANT1251073 |
| SAVANT0637460 | SAVANT0777134 | SAVANT0946569 | SAVANT1253218 |
| SAVANT0641133 | SAVANT0777135 | SAVANT0948548 | SAVANT1253389 |
| SAVANT0641135 | SAVANT0777887 | SAVANT0958333 | SAVANT1254264 |
| SAVANT0642856 | SAVANT0777894 | SAVANT0958367 | SAVANT1256636 |
| SAVANT0648909 | SAVANT0777904 | SAVANT0958370 | SAVANT1320607 |
| SAVANT0662494 | SAVANT0777905 | SAVANT0960387 | SAVANT1320609 |
| SAVANT0667114 | SAVANT0777910 | SAVANT0960391 | SAVANT1320629 |
| SAVANT0672873 | SAVANT0777912 | SAVANT0960398 | SAVANT1324205 |
| SAVANT0672874 | SAVANT0777913 | SAVANT0960405 | SAVANT1324212 |
| SAVANT0672877 | SAVANT0777919 | SAVANT0968463 | SAVANT1325328 |
| SAVANT0678450 | SAVANT0778153 | SAVANT0970808 | SAVANT1325331 |
| SAVANT0683850 | SAVANT0779192 | SAVANT0973387 | SAVANT1325336 |
| SAVANT0699200 | SAVANT0779195 | SAVANT0975622 | SAVANT1325339 |
| SAVANT0699681 | SAVANT0779205 | SAVANT0984684 | SAVANT1326120 |
| SAVANT0701377 | SAVANT0780837 | SAVANT0986776 | SAVANT1326121 |
| SAVANT0702696 | SAVANT0780844 | SAVANT0987508 | SAVANT1326123 |
| SAVANT0702697 | SAVANT0780846 | SAVANT0989252 | SAVANT1334544 |
| SAVANT0703747 | SAVANT0788313 | SAVANT0989369 | SAVANT1348588 |
| SAVANT0703748 | SAVANT0790638 | SAVANT0989414 | SAVANT1348834 |
| SAVANT0706345 | SAVANT0790654 | SAVANT0989521 | SAVANT1348872 |
| SAVANT0707540 | SAVANT0808986 | SAVANT0992180 | SAVANT1349024 |
| SAVANT0709641 | SAVANT0835078 | SAVANT0992831 | SAVANT1507484 |
| SAVANT0710788 | SAVANT0841631 | SAVANT0993490 | SAVANT1507595 |
| SAVANT0710789 | SAVANT0856237 | SAVANT0994173 | SAVANT1510022 |
| SAVANT0710798 | SAVANT0867240 | SAVANT1011004 | SAVANT1537936 |
| SAVANT0716317 | SAVANT0876764 | SAVANT1011007 | SAVANT1544469 |
| SAVANT0716318 | SAVANT0876775 | SAVANT1011011 | SAVANT1550631 |
| SAVANT0716320 | SAVANT0877540 | SAVANT1025420 | SAVANT1551885 |
| SAVANT0716359 | SAVANT0878256 | SAVANT1025423 | SAVANT1552039 |
| SAVANT0716360 | SAVANT0902268 | SAVANT1128136 | SAVANT1552040 |
| SAVANT0716361 | SAVANT0902825 | SAVANT1128138 | SAVANT1577145 |
| SAVANT0716385 | SAVANT0902853 | SAVANT1153596 | SAVANT1577882 |
| SAVANT0716386 | SAVANT0904921 | SAVANT1153895 | SAVANT1580339 |
| SAVANT0716387 | SAVANT0905055 | SAVANT1160872 | SAVANT1585533 |
| SAVANT0716388 | SAVANT0918726 | SAVANT1161059 | SAVANT1585535 |
| SAVANT0716603 | SAVANT0922905 | SAVANT1189536 | SAVANT1585537 |
| SAVANT0726875 | SAVANT0928448 | SAVANT1205418 | SAVANT1585538 |
| SAVANT0731388 | SAVANT0930499 | SAVANT1232612 | SAVANT1602880 |
| SAVANT0731400 | SAVANT0932727 | SAVANT1234913 | SAVANT1602933 |
| SAVANT0731401 | SAVANT0935870 | SAVANT1234916 | SAVANT1619959 |
| SAVANT0748996 | SAVANT0938590 | SAVANT1234922 | SAVANT1619961 |

RESTRICTED CONFIDENTIAL – OUTSIDE COUNSEL ONLY

SAVANT1619963
SAVANT1620068
SAVANT1620069
SAVANT1622366
SAVANT1623961
SAVANT1624009
SAVANT1627247
SAVANT1627250
SAVANT1630102
SAVANT1639309
SAVANT1643679
SAVANT1648667
SAVANT1648843
SAVANT1649250
SAVANT1653635
SAVANT1653685
SAVANT1653687
SAVANT1653689
SAVANT1653690
SAVANT1653691
SAVANT1657722
SAVANT1661060
SAVANT1676713
SAVANT1725507
SAVANT2005439
SAVANT2399394
SAVANT2476685
SAVANT2509583
SAVANT2603134
SAVANT2603807
SAVANT2603809
SAVANT2697838
SAVANT2700358
SAVANT2705474
SAVANT2706579
SAVANT2706581
SAVANT2706584
SAVANT2708350
SAVANT2708352
SAVANT2709936
SAVANT2718939
SAVANT2720094
SAVANT2720112
SAVANT2737433
SAVANT2737435
SAVANT2737437
SAVANT2739233
SAVANT2758738
SAVANT2758747
SAVANT2761217
SAVANT2761220
SAVANT2761223
SAVANT2761227
SAVANT2765075
SAVANT2765077
SAVANT2765080
SAVANT2765092
SAVANT2765097
SAVANT2768011
SAVANT2883951
SAVANT2887033
SAVANT3051119
SAVANT3051120
SAVANT3052754
SAVANT3052756
SAVANT3052758
SAVANT3053484
SAVANT3074646
SAVANT3074650
SAVANT3074654
SAVANT3074656

# EXHIBIT 614

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAVANT SYSTEMS, LLC<br>Plaintiff,<br><br>v.<br><br>CRESTRON ELECTRONICS, INC.<br>Defendant<br><br>CRESTRON ELECTRONICS, INC.<br>Counterclaim-Plaintiff,<br>v.<br><br>SAVANT SYSTEMS, LLC<br>Counterclaim-Defendant | ) Civil Action No. 10-cv-11622-EFH |

**SAVANT SYSTEMS, LLC'S RESPONSES TO CRESTRON ELECTRONICS, INC.'S SECOND SET OF REQUESTS FOR ADMISSION**

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Massachusetts, Plaintiff, Savant Systems, LLC ("Savant"), provides the following responses to Defendant and Counterclaim Plaintiff Crestron Electronics, Inc.'s ("Crestron's") Second Set of Requests for Admission, as follows.

**GENERAL OBJECTIONS**

The following objections are incorporated by reference into each of Savant's responses below as if set forth therein in full.

1. Savant objects to the "Definitions" and "Instructions" to the extent that they impose discovery burdens or obligations on Savant which are greater than or different from those

imposed by the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the District of Massachusetts, including, without limitation, Local Rule 26.5 ("Uniform Definitions in Discovery Requests"). Savant will respond to each request in accordance with the ordinary definitions and common usages of the terms used therein.

2. Savant objects to each request to the extent it seeks information protected from disclosure by the attorney-client privilege, the work product doctrine or any other privilege, immunity or protection. In the event any response by Savant contains privileged or protected information, its disclosure is inadvertent and does not constitute a waiver of any privilege or protection with respect to the divulged information or any other information.

3. Savant objects to each request to the extent it seeks information that is already in the possession of Crestron and/or is as readily accessible to Crestron as Savant, or that is beyond the scope of the material necessary for litigation of the issues raised in the pleadings, on the ground that such demand seeks to impose an overly broad and undue burden on Savant.

4. Savant objects to each request to the extent it seeks information that is irrelevant to the issues raised in the pleadings or that is not reasonably calculated to lead to the discovery of admissible evidence.

5. Savant objects to each request to the extent it seeks information which is not in the possession, custody or control of Savant and is therefore outside the permissible scope of discovery.

6. Savant objects to each request to the extent that it is duplicative of any other request or other discovery propounded by Crestron and, where such duplication occurs, Savant will respond once.

7. Savant objects to each request to the extent it seeks disclosure of confidential

trade secrets, proprietary knowledge, and/or confidential research, development, commercial or business information of Savant. Any response containing such information is made in strict accordance with the terms of the Protective Order for the Exchange of Confidential Information entered by the Court in this case.

8. Savant objects to each request to the extent that it seeks confidential trade secrets, proprietary knowledge, and/or confidential research, development, commercial or business information of third parties that Savant is barred from producing by law and/or contract. Savant will seek permission from third parties to release any information that might be subject to confidentiality agreements or otherwise restricted by law.

9. Savant objects to each request to the extent that it is overly broad, unnecessarily burdensome, vague, indefinite and/or calling for information neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

10. Savant objects to each request to the extent it seeks information from Savant that may be in possession of third parties. Savant has no obligation to provide information that is not in its possession or under its control.

11. Savant objects to each request to the extent it is not limited in time and calls for information from a time frame that unreasonably exceeds the relevant time frame of the dispute.

12. Savant objects to each request to the extent it seeks information that is subject to any applicable court order barring disclosure, including, but not limited to, any court-entered protective order.

13. Savant's willingness to provide written responses to any of the requests is not a concession that the subject matter of the particular request is discoverable, relevant to this action, or admissible as evidence.

14. Savant's responses set forth herein are made without waiving any of the foregoing General Objections or any of the following specific objections.

15. These responses reflect Savant's current understanding, belief and knowledge regarding the matters about which inquiry is made. Savant's discovery, investigation and preparation for trial have not yet been completed as of the date of these responses. Savant reserves the right to conduct further discovery and investigation which may develop information that, if presently within its knowledge, would have been included in these responses. Discovery is on-going and Savant reserves the right to offer into evidence in this action other information at trial or any pretrial proceeding which may have been discovered subsequent to the date of these responses, or to more fully explain these responses. Savant therefore reserves the right, at any time, to revise, amend, correct, supplement, modify or clarify its responses set forth below to the extent required by Fed. R. Civ. P. 26(e).

## SPECIFIC OBJECTIONS AND RESPONSES

**REQUEST NO. 4:**

Admit that You have never received revenue directly from use of the copyright registered work having Federal Copyright Registration No. VA17428963.

**RESPONSE TO REQUEST NO. 4:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Admitted, insofar as Savant has neither right to nor ownership of said copyright registered work.

**REQUEST NO.5:**

Admit that You have never received revenue directly from use of the copyright registered work having Federal Copyright Registration No. VA17428966.

**RESPONSE TO REQUEST NO. 5:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Admitted, insofar as Savant has neither right to nor ownership of said copyright registered work.

**REQUEST NO.6:**

Admit that You have never received revenue directly from use of the Federal Copyright Registration No. VA17428968.

**RESPONSE TO REQUEST NO. 6:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Admitted, insofar as Savant has neither right to nor ownership of said copyright registered work.

**REQUEST NO.7:**

Admit that You have not attempted to monetize the copyright registered work having Federal Copyright Registration No. VA17428963.

**RESPONSE TO REQUEST NO. 7:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Admitted, insofar as Savant has neither right to nor ownership of said copyright registered work.

**REQUEST NO.8:**

Admit that You have not attempted to monetize the copyright registered work having Federal Copyright Registration No. VA17428966.

**RESPONSE TO REQUEST NO. 8:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Admitted, insofar as Savant has neither right to nor ownership of said copyright registered work.

**REQUEST NO.9:**

Admit that You have not attempted to monetize the copyright registered work having Federal Copyright Registration No. VA17428968.

**RESPONSE TO REQUEST NO. 9:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Admitted, insofar as Savant has neither right to nor ownership of said copyright registered work.

**REQUEST NO. 10:**

Admit that no one has inquired about licensing the copyright registered work having Federal Copyright Registration No. VA17428963.

**RESPONSE TO REQUEST NO. 10:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Admitted, insofar as Savant has neither right to nor ownership of said copyright registered work.

**REQUEST NO. 11:**

Admit that no one has inquired about licensing the copyright registered work having Federal Copyright Registration No. VAl7428966.

**RESPONSE TO REQUEST NO. 11:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant

to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Admitted, insofar as Savant has neither right to nor ownership of said copyright registered work.

**REQUEST NO. 12:**

Admit that no one has inquired about licensing the copyright registered work having Federal Copyright Registration No. VA17428968.

**RESPONSE TO REQUEST NO. 12:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Admitted, insofar as Savant has neither right to nor ownership of said copyright registered work.

**REQUEST NO. 13:**

Admit that You are not aware of a market to monetize the copyright registered work having Federal Copyright Registration No. VA17428963.

**RESPONSE TO REQUEST NO. 13:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Admitted, insofar as Savant has neither right to nor ownership of said copyright registered work.

**REQUEST NO. 14:**

Admit that You are not aware of a market to monetize the copyright registered work having Federal Copyright Registration No. VA17428966.

**RESPONSE TO REQUEST NO. 14:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Admitted, insofar as Savant has neither right to nor ownership of said copyright registered work.

**REQUEST NO. 15:**

Admit that You are not aware of a market to monetize the copyright registered work having Federal Copyright Registration No. VA17428968.

**RESPONSE TO REQUEST NO. 15:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Admitted, insofar as Savant has neither right to nor ownership of said copyright registered work.

**REQUEST NO. 16:**

Admit that Federal Copyright Registration Nos. VA1742893, VA1742896 and VA1742898 were not issued until October 28, 2010, after Savant filed its Complaint in this litigation on September 22, 2010.

**RESPONSE TO REQUEST NO. 16:**

Without waiving and expressly reserving the foregoing General Objections, Savant states the following:

Admitted, insofar as the effective registration date of each of said Copyright Registration Nos. is October 28, 2010, and Savant filed its Complaint in this litigation on September 22, 2010. Except as admitted in this response, Savant denies this request.

**REQUEST NO. 17:**

Admit that Savant has displayed, without authorization, one or more Apple logos on its website.

**RESPONSE TO REQUEST NO. 17:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Admitted, insofar as Savant briefly used an Apple logo that was not one of the logos specifically approved by Apple for use on Apple's vendors' websites. Savant was authorized to use approved Apple logos on its website. The difference was one of appearance, not substance. Except as admitted in this response, Savant denies this request.

**REQUEST NO. 18:**

Admit that Savant has displayed, without authorization, one or more Apple logos on its website in order to represent to potential consumers a close connection to Apple.

**RESPONSE TO REQUEST NO. 18:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Denied.

**REQUEST NO. 19:**

Admit that Apple-based home automation and commercial control systems existed before 2005.

**RESPONSE TO REQUEST NO. 19:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information. Savant also objects to this request on the ground that it mischaracterizes the evidence.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Denied, insofar as Savant is unaware of an Apple-based home automation and commercial control system that has been confirmed to exist before 2005. Savant further denies this request insofar as Crestron appears to be mischaracterizing the evidence, misquoting statements by Savant and/or taking such statements out of context. For example, Savant stated: "Featuring *the industry's* only Apple®-based control and automation solution, Savant unifies all of your whole house audio and video, lighting control systems, security, climate, communications, internet and ancillary services into one easy-to-use, seamless experience." SAVANT0781084 (emphasis added). The reference to "the industry" was with respect to

CEDIA systems marketed through and installed by professional dealers. Similarly, Savant stated: "Savant systems, having delivered the first *complete* Apple®-based *home automation and commercial control system* . . . ." SAVANT1554701. The reference to "complete" was with respect to a whole-home or business automation system installed by professional dealers. The reference to "home automation and commercial control system" was with respect to a system that could be installed at both homes and commercial offices, as opposed to just one or the other.

**REQUEST NO. 20:**

Admit that one or more companies offered for purchase Apple-based home automation and commercial control systems before 2005.

**RESPONSE TO REQUEST NO. 20:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information. Savant also objects to this request on the ground that it mischaracterizes the evidence.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Denied, insofar as Savant is unaware of one or more companies that offered for purchase Apple-based home automation and commercial control systems that have been confirmed to exist before 2005. Savant further denies this request insofar as Crestron appears to be mischaracterizing the evidence, misquoting statements by Savant and/or taking such statements out of context. For example, Savant stated: "Featuring *the industry's* only Apple®-based

control and automation solution, Savant unifies all of your whole house audio and video, lighting control systems, security, climate, communications, internet and ancillary services into one easy-to-use, seamless experience." SAVANT0781084 (emphasis added). The reference to "the industry" was with respect to CEDIA systems marketed through and installed by professional dealers. Similarly, Savant stated: "Savant systems, having delivered the first *complete* Apple®-based *home automation and commercial* control system . . . ." SAVANT1554701. The reference to "complete" was with respect to a whole-home or business automation system installed by professional dealers. The reference to "home automation and commercial control system" was with respect to a system that could be installed at both homes and commercial offices, as opposed to just one or the other.

**REQUEST NO. 21:**

Admit that Savant did not deliver the first Apple-based home automation and commercial control system.

**RESPONSE TO REQUEST NO. 21:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery of admissible information. Savant also objects to this request on the ground that it mischaracterizes the evidence.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Denied, insofar as Savant is unaware of another company that delivered an Apple-based home automation and commercial control system prior to Savant's first sale of such a system. Savant further denies this request insofar as Crestron appears to be mischaracterizing the evidence, misquoting statements by Savant and/or taking such statements out of context. For example, Savant stated: "Featuring *the industry's* only Apple®-based control and automation solution, Savant unifies all of your whole house audio and video, lighting control systems, security, climate, communications, internet and ancillary services into one easy-to-use, seamless experience." SAVANT0781084 (emphasis added). The reference to "the industry" was with respect to CEDIA systems marketed through and installed by professional dealers. Similarly, Savant stated: "Savant systems, having delivered the first *complete* Apple®-based *home automation and commercial* control system . . . ." SAVANT1554701. The reference to "complete" was with respect to a whole-home or business automation system installed by professional dealers. The reference to "home automation and commercial control system" was with respect to a system that could be installed at both homes and commercial offices, as opposed to just one or the other.

**REQUEST NO. 22:**

Admit that Savant did not deliver the first Apple-based system that can be used for home automation and commercial control.

**RESPONSE TO REQUEST NO. 22:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to any claim or defense asserted in this action nor reasonably calculated to lead to the discovery

of admissible information. Savant also objects to this request on the ground that it mischaracterizes the evidence.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Denied, insofar as Savant is unaware of another company that delivered an Apple-based system that can be used for home automation and commercial control prior to Savant's first sale of such a system. Savant further denies this request insofar as Crestron appears to be mischaracterizing the evidence, misquoting statements by Savant and/or taking such statements out of context. For example, Savant stated: "Featuring *the industry's* only Apple®-based control and automation solution, Savant unifies all of your whole house audio and video, lighting control systems, security, climate, communications, internet and ancillary services into one easy-to-use, seamless experience." SAVANT0781084 (emphasis added). The reference to "the industry" was with respect to CEDIA systems marketed through and installed by professional dealers. Similarly, Savant stated: "Savant systems, having delivered the first *complete* Apple®-based *home automation and commercial* control system . . . ." SAVANT1554701. The reference to "complete" was with respect to a whole-home or business automation system installed by professional dealers. The reference to "home automation and commercial control system" was with respect to a system that could be installed at both homes and commercial offices, as opposed to just one or the other.

**REQUEST NO. 23:**

Admit that, in the Spring of 2010, Savant was still formulating, and had not implemented, a business model for its residential product offerings.

**RESPONSE TO REQUEST NO. 23:**

Denied.

**REQUEST NO. 24:**

Admit that, in the Spring of 2010, Savant was still formulating, and had not fully implemented, a marketing strategy for its residential product offerings.

**RESPONSE TO REQUEST NO. 24:**

Denied.

**REQUEST NO. 25:**

Admit that Savant concluded that a large residential "dealer base count" was not required for Savant to achieve financial success.

**RESPONSE TO REQUEST NO. 25:**

Denied, insofar as the statement is taken out of context. Page 6 of a PowerPoint slide deck produced at SAVANT0983822, appeared as follows:

RESTRICTED CONFIDENTIAL - OUTSIDE COUNSEL ONLY

## Premise of Business Plan

- All market segments are limited based on legacy control technology shortcomings-
  - No standards for interoperability
  - Proprietary low level programming
  - Lack of coding standards
  - Supportability of systems
- Dealers can do more jobs with current levels of staff (maybe reduced) in a larger geographic area than is possible with legacy control
- Large Resi dealer base count is not required in high-end
- Broader Resi markets can be serviced through more traditional craft trades (Alarm/Security and Electricians)

Savant Systems Company Confidential

savant

As this slide, and the remainder of the slides and the accompanying in-person presentation, made clear, Savant concluded that it did not need to sign every single automation and control dealer across the United States. In particular, the statement that "Large Resi dealer base count is not required in high-end" was with reference to Tier 3 dealers, which dealers have revenues of less than $100,000 paid to control and automation product manufacturers for their products per year. Such dealers are, almost by their nature, outside of the "high-end" market, insofar as high-end automation and control systems are those sold by manufacturers, like Crestron or Savant, to dealers or integrators for twenty-five thousand dollars or more. Savant did conclude that it required (and requires) a significant number of dealers capable of installing high-end automation and control systems. Savant continues to seek and sign such dealers

notwithstanding Crestron's efforts to prevent its dealers from signing with Savant, such as seen on page 48 of the slide deck:




**REQUEST NO. 26:**

Admit that the document produced at SAVANT0009895 is an authentic official business record that was created and maintained in the ordinary course of Savant's business.

**RESPONSE TO REQUEST NO. 26:**

Denied.

**REQUEST NO. 27:**

Admit that the document produced at SA V ANT0833134 is an authentic official business record that was created and maintained in the ordinary course of Savant's business.

**RESPONSE TO REQUEST NO. 27:**

Denied.

**REQUEST NO. 28:**

Admit that Savant cannot identify any instance in which Savant lost a sale as a result of any alleged use of the Sales and Comparison Guides produced as Exhibits to Savant's Amended Complaint.

**RESPONSE TO REQUEST NO. 28:**

In addition to its General Objections, Savant specifically objects to this request on the grounds that it is vague and ambiguous as to "use of the Sales and Comparison Guides." Savant also objects to this request to the extent it suggests that it is possible to trace a particular lost sale to a single document or set of documents, or solely the "use" thereof.

Without waiving and expressly reserving the foregoing General and Specific Objections, Savant states the following:

Admitted, insofar as Savant is not aware at this time of a particular lost sale due solely to the "use" of one or more of the Sales and Comparison Guides produced as Exhibits to Savant's Amended Complaint. However, the Sales and Comparison Guides poisoned the market and mislead dealers, and might have served as one reason why a given sale was lost by Savant. Except as admitted in this response, Savant denies this request.

Dated: January 10, 2013

Respectfully submitted,

SAVANT SYSTEMS, LLC
By Its Attorneys,

/s/ Aaron S. Jacobs
Thomas C. O'Konski BBO# 378265
Martin J. O'Donnell BBO# 377475
Michael E. Attaya BBO#548297
Aaron S. Jacobs BBO# 677545
William J. Mostyn IV BBO# 678869
CESARI and MCKENNA, LLP
88 Black Falcon Avenue
Boston, MA 02210
(617) 951-2500

Certificate of Service

I hereby certify that this document(s) was served by e-mail with confirmation regular mail on:

Chong S. Park
John J. Kavanagh
Steptoe & Johnson LLP
1330 Connecticut Ave., N.W.
Washington, D.C. 20036-1795

Michael J. Pineault, Esq.
Clements & Pineault, LLP
24 Federal Street
Boston, MA 02110

on this 10th day of January, 2013.

/s/ Aaron S. Jacobs
Aaron S. Jacobs